## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                                    BKY 15-42460
                                                          ADV 17-04076
PAUL HANSMEIER,

     Debtor.

---

PAUL HANSMEIER, Debtor,

     Plaintiff,

v.

DAN BOOTH, PAUL GODFREAD and JASON SWEET,

     Defendants.

---

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT

---

### STATEMENT

Debtor Paul Hansmeier ("Debtor") was admitted to practice law in Minnesota in 2007 and suspended from practice in 2016 upon admitting to copious acts of misconduct, including making false and misleading statements, testifying in a false and misleading manner, making false statements to the court, perpetrating a fraud upon the court, and bringing several actions that were, respectively, in bad faith, without a basis in law or fact, without merit, and frivolous. In those actions and related cases, Debtor and his now-disbarred partner John Steele ("Steele") were found to be operating and controlling various alter-ego shell companies, including their now-defunct law firm Prenda Law, Inc. ("Prenda") and their straw plaintiff AF Holdings LLC ("AF") (collectively, "Alter Egos"). The Defendants, Minnesota attorney Paul Godfread ("Godfread") and Massachusetts attorneys Dan Booth ("Booth") and Jason Sweet ("Sweet") (collectively, "Defendants"), obtained the judgments and awards at issue in the course of litigating against Debtor and his Alter Egos.

Debtor maintains his untenable approach to litigation in this action. His Motion for Partial Summary Judgment ("Motion") could be granted only if he showed that "there is no genuine dispute as to any material fact" and that he "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Debtor cannot make either showing, so the Motion must be denied.

## RELEVANT FACTS & PROCEDURAL HISTORY

Debtor moves for "partial summary judgment pursuant to 11 U.S.C. § 105" against Godfread and Sweet for a judgment of "contempt of court for knowingly filing false Proofs of Claims in Debtor's bankruptcy case." Motion ¶¶ 1, 8, 10. Debtor also moves for partial summary judgment against Booth and Sweet for a judgment holding that they "willfully violated the automatic stay imposed by 11 U.S.C. § 362." *Id.* ¶¶ 2, 8, 10.

The alleged violation of the automatic stay was an unserved motion filed on behalf of Booth and Sweet's client Sandipan Chowdhury ("Chowdhury") in the United States District Court for the District of Massachusetts in *AF Holdings, LLC v. Chowdhury*, Case No. 12-cv-12105 ("*Chowdhury*"). Complaint Exhibit 10. AF, through Prenda, filed the *Chowdhury* complaint on November 13, 2012. Defendants' Statement of Additional Material Facts ("SOF") ¶ 1; Declaration of Jason Sweet in Support of Defendants' Statement of Additional Material Facts ("Sweet Decl.") ¶ 1. Chowdhury answered and raised counterclaims on January 4, 2013. *Id.*

The disputed Proofs of Claims are for Claims 9, 10, and 11. Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment ("Memo") pp. 1-4. Sweet filed Claims 9 and 10 on behalf of claimants Godfread and Alan Cooper ("Cooper") in the amount of $678,865.97 pursuant to a judgment that arose out of two related cases in the U.S. District Court for the Northern District of Illinois: *Paul Duffy and Prenda Law, Inc. v. Paul Godfread, Alan Cooper, and John Does 1-10*, Case No. 13-cv-1569 ("*Duffy v. Godfread*"); and *Prenda Law, Inc. v. Paul Godfread, Alan Cooper, and John Does 1-10*, Case No. 13-cv-4341 ("*Prenda v. Godfread*"). Memo pp. 2-3; SOF ¶ 2; Sweet Decl. ¶ 13. Godfread filed Claim 11 on behalf of Cooper in the amount of $255,000 pursuant to a judgment entered in a case in the Minnesota District Court for Hennepin County, *Alan Cooper v. John Lawrence Steele and Prenda Law, Inc.*, Case No. 27-Cv-13-3463 ("*Cooper v. Steele*"). Memo pp. 3-4; Complaint Exhibit 8; Declaration of Paul Godfread in Support of Defendants' Statement of Additional Material Facts ("Godfread Decl.") ¶ 2.

On February 26, 2013, Cooper filed the *Cooper v. Steele* complaint, raising misappropriation and veil piercing claims against defendants including Prenda. SOF ¶ 3; Godfread Decl. ¶ 4. Debtor appeared on behalf of Prenda in that proceeding. SOF ¶ 16; Godfread Decl. ¶ 7.

On May 6, 2013, Debtor, Prenda, AF, and others were sanctioned in a related case in the United States District Court for the Central District of California, *Ingenuity 13 LLC v. Doe*, Case No. 12-cv-8333 ("*Ingenuity*"). SOF ¶ 4 & SOF Exhibit 1. The *Ingenuity* court found that Debtor and

other lawyers had conspired to create and operate Prenda, AF, and other shell companies whose litigation they controlled as the principals. *Id*. The Ninth Circuit has affirmed the *Ingenuity* order. *Ingenuity13 LLC v. Doe*, 651 Fed. App'x. 716 (9th Cir. June 10, 2016); SOF ¶ __. The Seventh Circuit has adopted the *Ingenuity* order's findings of fact about Debtor's ownership and control of Prenda: "For our purposes the relevant fact is that the district court there found that Steele, Hansmeier, and Duffy owned and controlled Prenda Law." *Lightspeed Media Corp. v. Smith*, 761 F. 3d 699, 703 (7th Cir. 2014); SOF ¶ 6; Sweet Decl. ¶ 18.

The *Ingenuity* order was filed in *Cooper v. Steele* on May 7, 2013. SOF ¶ 7; Godfread Decl. ¶ 6. Cooper filed a motion for default judgment against Prenda on May 6, 2013 that was heard on May 21, 2013, but denied as premature because Prenda had since filed an answer. SOF ¶ 8; Godfread Decl. ¶ 5. The *Ingenuity* order was also filed in *Chowdhury* by AF's local counsel on behalf of Prenda on August 14, 2013. SOF ¶ 9; Sweet Decl. ¶ 5.

On September 16, 2013, in another related case in the United States District Court for the Northern District of California, *AF Holdings LLC v. Navasca*, Case No. 12-cv-02396 ("*Navasca*"), the court adopted the *Ingenuity* court's findings of fact that Debtor uses AF as an alter ego, and determined that the findings were preclusive. SOF ¶ 10 & SOF Exhibit 2. Those

> findings (which AF, Steele and Hansmeier are precluded from re-litigating) establish that Steele and Hansmeier are the alter egos of AF … They share a unity of interest and ownership; they acted as attorneys for AF behind the scenes and dictated all litigation decisions; AF was undercapitalized (indeed, it had no assets as the settlement proceeds never left Steele and Hansmeier's accounts); they kept all litigation proceeds AF "earned"; and AF was a mere shell created to shield Hansmeier and Steele from liability.

SOF Exhibit 2 at *33; SOF ¶ 11. The *Navasca* court further found that Debtor and Steele were Prenda's principals, and directed its litigation, and that "AF is an empty shell created by Steele and Hansmeier." *Id.* at *34; SOF ¶ 12.

On September 23, 2013, the *Navasca* order was filed in *Chowdhury*. SOF ¶ 13; Sweet Decl. ¶ 6. On September 30, 2013, the *Chowdhury* court allowed without opposition Chowdhury's motion for default judgment against AF on one of his counterclaims. SOF ¶ 14; Sweet Decl. ¶ 7. On October 22, 2013, again without opposition, the court re-entered the judgment, for $64,180.80, jointly and severally against AF, Prenda, Debtor, Steele, and Paul Duffy. SOF ¶ 15 & SOF Exhibit 3; Sweet Decl. ¶ 8.

On July 13, 2015, the Debtor filed a voluntary Chapter 13 Petition. Complaint ¶¶ 1, 10.

In *Cooper v. Steele*, Debtor withdrew as counsel for Prenda and was not replaced. SOF ¶ 16; Godfread Decl. ¶ 7. This led to entry of an order for judgment against Prenda on all claims, including the veil-piercing claim, on July 15, 2015. Complaint Exhibit 8; Memo p. 3; SOF ¶ 17; Godfread Decl. ¶¶ 7-9.

On August 20, 2015, Sweet obtained a judgment on behalf of his clients Godfread and Cooper against Prenda in *Prenda v. Godfread*. SOF ¶ 19 & Exhibit 4; Sweet Decl. ¶ 15.  The court relied on the *Ingenuity* order's findings of fact that Debtor is a principal of Prenda and established AF as a "shell plaintiff." Exhibit 4 at pp. 8-9. The *Prenda v. Godfread* court entered a Final Judgment and Order on October 17, 2016. SOF ¶ 20 & SOF Exhibit 5; Sweet Decl. ¶ 15.

On September 16, 2015, Debtor submitted a modified plan proposal. No. 15-42460, Doc. 39. SOF ¶ 21.

On October 28, 2015, the Minnesota Office of Lawyers Professional Responsibility filed a petition for disciplinary action alleging multiple counts of misconduct against Debtor including, in *Navasca*, "testifying in a false and misleading manner as to his affiliation with Prenda" as AF's designated Rule 30(b)(6) deponent, and "perpetrating a fraud upon the court." *In re Paul Robert Hansmeier*, ¶¶ 117-119 & 129, File No. A5-1885 (Minn. filed Oct. 28, 2015).

On November 9, 2015, Sweet submitted Proofs of Claim for Claims 9 and 10 in Debtor's bankruptcy case on behalf of Godfread and Cooper, respectively. Complaint ¶ 14 & Exhibits 1-2. Debtor objected to Cooper's proof of claim on November 16, 2015, and to Godfread's on the next day. No. 15-42460, Docs. 37 & 38. SOF ¶ 22. The objections were set to be heard on December 17, 2015. Godfread filed a Proof of Claim for Claim 11 on behalf of Cooper on November 10, 2015. Complaint ¶ 19 & Exhibit 3.

On November 12, 2015, the United States Trustee moved to convert Debtor's case from Ch. 13 to Ch. 7. No. 15-42460, Doc. 32. SOF ¶ 24. The Trustee sought conversion based on several grounds: 1) Debtor's bad faith both pre-petition and post-petition; 2) Debtor's plan did not comply with § 1322(a)(1); 3) the plan was not proposed in good faith under 11 U.S.C. § 1325(a)(3); 4) the plan did not comply with § 1325(a)(4); 5) Debtor did not have an ability to make payments under 11 U.S.C. § 1325(a)(6); 6) Debtor did not file his petition in good faith under 11 U.S.C. § 1325(a)(7); and 7) failure to obtain confirmation under 11 U.S.C. § 1307(c)(5). SOF ¶ 25.

On November 18, 2015, Debtor withdrew his modified plan and submitted an amended plan. No. 15-42460, Doc. 40. SOF ¶ 24.

On December 3, 2015, the Court converted Debtor's bankruptcy case to one under Chapter 7. Complaint ¶ 1. The Court determined to convert upon finding that the bankruptcy had been designed only to thwart the collection efforts of creditors, and that Debtor, post-petition, "filed misleading or false documents in this case and provided potentially false testimony at his Rule 2004 examination." No. 15-42460, Doc. 110 at p. 9.

On December 10, 2015, Debtor withdrew his objections to Godfread and Cooper's claims. No. 15-42460, Doc. 68. SOF ¶ 27.

On January 19, 2016, Sweet received notice to again file his clients' claims. No. 15-42460, Doc. 100. SOF ¶ 28. When refiled, they were identified as Claims 15 and 16. SOF ¶ 29.

On July 1, 2016, Debtor's stipulation to disciplinary action, in which he "unconditionally admits the allegations of the petition" for discipline, was filed in Minnesota Supreme Court. Stipulation For Discipline, *In re Hansmeier*, File No. A15-1885.

On August 4, 2016, the First Circuit vacated the *Chowdhury* judgment as to Debtor, Steele, and Paul Duffy, and remanded the matter on a procedural issue. SOF ¶ 30 & Exhibit 6; Sweet Decl. ¶ 9. Chowdhury's judgment against AF and Prenda still stands. SOF ¶ 31. On remand, the *Chowdhury* court ordered Chowdhury to "file a proposed Amended Judgment no later than September 29, 2016." SOF ¶ 32 & Exhibit 7; Sweet Decl. ¶ 10. On September 29, 2016, the disputed motion was filed in *Chowdhury*. Complaint Exhibit 10; Memo pp. 4-5. The motion was to add or substitute Steele and Debtor as counterdefendants pursuant to Federal Rule of Civil Procedure 25(c) in addition to or in place of their alter ego AF. SOF ¶ 33; Sweet Decl. ¶ 10. The motion was never served on Debtor. SOF ¶ 34; Sweet Decl. ¶ 11. Steele filed an opposition to Chowdhury's motion on October 18, 2016. SOF ¶ 35; Sweet Decl. ¶ 11. In support, Steele filed a three-paragraph declaration by Debtor. SOF ¶ 26 & Exhibit 8; Sweet Decl. ¶ 11. Debtor declared that he had not been served or otherwise received a copy of the disputed motion from Chowdhury or his counsel. SOF ¶ 37; SOF Exhibit 8 ¶ 2; Sweet. Decl. ¶ 11. Two days later, on October 20, 2016, the *Chowdhury* court denied the motion for substitution without prejudice. Sweet Decl. ¶ 12.

On November 16, 2016 the United States Trustee objected to Claims 9, 10, 15, and 16. No. 15-42460, Doc. 178. SOF ¶ 38. On November 30, 2016, Godfread and Cooper withdrew Claims 9 & 10. No. 15-42460, Doc. 184. SOF ¶ 39. On December 20, 2016, Godfread and Cooper requested to stay the Chapter 7 Trustee's objections to Claims 15 and 16 pending a determination on the Joint Motion for Findings of Fact or in the alternative for relief from the stay. No. 15-42460, Doc. 193.

SOF ¶ 40. The next day, December 21, 2016, the Court granted the Trustee's objections. No. 15-42460, Doc. 195. SOF ¶ 41.

On July 6, 2017, Debtor opened this adversary proceeding. Complaint. Debtor moved for summary judgment on July 12, 2017. Motion.

## STANDARD OF REVIEW

Federal Rule of Bankruptcy Procedure 7056 provides that Federal Rule of Civil Procedure 56 applies in adversary proceedings. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden to establish that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Vaughn v. Roadway Express, Inc.*, 164 F.3d 1087, 1089 (8th Cir. 1998).

The burden then shifts to the non-moving party to demonstrate the presence of a genuine issue for trial. See *Beyer v. Firstar Bank, N.A.*, 447 F.3d 1106, 1108 (8th Cir. 2006). When ruling on a summary judgment motion, the court must view the facts in the light most favorable to the non-moving party and allow that party the benefit of all reasonable inferences to be drawn from the evidence. *Ferguson v. Cape Girardeau Cty.,* 88 F.3d 647, 650 (8th Cir. 1996).

## ARGUMENT

### I.   The Motion for Summary Judgment is not Properly Before the Court.

On July 6, 2017, Debtor filed his complaint invoking 11 U.S.C. §§ 105 and 362 as conferring private causes of action for "contempt, sanctions and damages" against the Defendants. Complaint ¶ 2. Defendants' response to the complaint is due August 7, 2017.

Six days later, and before Defendants could respond, Debtor moved for summary judgment on July 12, 2017.[1] Motion. The Court scheduled Defendants' response to the Motion as due July, 21, 2017—only 9 days after the Motion was filed. *Id.* ¶ 4. The Court has set a hearing on the Motion for July 26, 2017, before Defendants' response to the Complaint is due. *Id.* ¶ 3.

It is inefficient and unduly prejudicial to hold a hearing requiring argument on a dispositive motion when the responding party is given an insufficient amount of time to adequately brief its opposition. Local Rule 7.1(c), made applicable pursuant to Fed. R. Bankr. P. 7056 and Fed. R. Civ. P.

---

[1] Defendants received notice of the complaint via ECF. However, the Defendants have never received ECF notification from the Court of the summary judgment filing or hearing.

56, allows 21 days for a defendant to respond to a dispositive motion—not 9 days. D. Minn. LR 7.1(c)(2). Pursuant to that rule, the Defendants' response is due no sooner than August 2, 2017.

More importantly, if as here, "a motion for summary judgment is filed before a responsive pleading is due from a party affected by the motion, *the time for responding to the motion is 21 days after the responsive pleading is due.*" Fed. R. Civ. P. 56 advisory comm. note (2009) (emphasis added); *Billingsley v. Centaur Bldg. Servs., Southeast, Inc.*, No. 11-cv-521, 2012 U.S. Dist. LEXIS 164155, *10 (M.D. Ala. Sept. 6, 2012). Defendants' response is therefore not due until at least August 28, 2017, though Defendants' filing of a motion to dismiss or other such motion under Fed. R. Civ. P. 12 would further stay their time to respond. Debtor's dispositive motion cannot be granted before Defendants have time to formulate a complete response, and Defendants object that its consideration on this expedited schedule is premature. On procedural grounds, the Court should deny the Motion with leave to renew, or extend Defendants' time to respond to the Motion until 21 days after their answer to the complaint is due.

However, if the Court determines to take up the Motion on the merits at this preliminary stage, a review of Debtor's complaint shows that his Motion should be denied and the complaint dismissed with prejudice.

## II.  Summary Judgment Cannot be Granted on a Complaint that Fails to State a Claim.

Debtor fails to show that the Complaint states a valid claim. He contends, but fails to show, that "there are no genuine issues of material fact." Memo p. 5. He does not even claim that he is entitled to judgment as a matter of law on the counts alleged—and he is decidedly not.

Where, as here, the Court is needlessly forced to decide issues so lacking in merit that even Debtor cannot provide citations to support them in a summary judgment motion, these arguments must fail. *United States v. Acosta*, 619 F.3d 956, 962 (8th Cir. 2010) (citing *United States v. Stuckey*, 255 F.3d 528, 531 (8th Cir. 2001) ("[W]e regularly decline to consider cursory or summary arguments that are unsupported by citations to legal authorities.")). Similarly, when the record citations are not in the motion, neither the Court nor Defendants have a duty to search through the record for instances of the alleged facts and then attempt to controvert them because facts without citations to the record need no response. See e.g. *In re Vaughan*, 471 B.R. 263, 280 (Bankr. D.N.M. Mar. 28, 2012). Debtor has not supported the Motion with anything beyond the Complaint and its exhibits. That paltry record is insufficient to demonstrate that any relief is warranted.

### A. 11 U.S.C. § 105 does not Provide Debtor a Private Right of Action.

The Debtor seeks damages and sanctions for "filing [] false proof[s] of claim[s]" pursuant to § 105. Complaint ¶ 9. The claims filed by Godfread and Sweet are neither false nor fraudulent. As a matter of procedure, Debtor cannot seek contempt for any alleged violation of § 105 in an adversary proceeding. See *In re Frambes*, 454 B.R. 437 (Bankr. E.D. Ky. May 25, 2011). A contempt action in a bankruptcy case is a contested matter initiated by the filing of a motion. See Fed. R. Bankr. P. 9020 ("Rule 9014 governs a motion for contempt …"). Debtor cannot use the Motion to sidestep the procedural requirements of a motion for sanctions. Fed. R. Bankr. P. 9011(c); *see Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1029-30 (8th Cir. 2003). And as several courts have concluded, § 105 does not provide a private cause of action for the purpose of sanctions. *In re Anthony*, 481 B.R. 602, 627 (D. Neb. Sept. 11, 2012).

As a matter of law, the Debtor does not have a private right of action under §105 against the Defendants, even had the claims been determined to be false. *In re Dunbar*, 446 B.R. 306, 310-311 (Bankr. E.D. Ark. Jan. 21, 2011). Section 105(a) empowers bankruptcy courts to issue any orders or judgments necessary or appropriate to carry out provisions of the Bankruptcy Code. It does not empower courts to create or recognize a private right of action unless another Bankruptcy Code provision creates substantive relief. See *In re Joubert*, 411 F.3d 452, 455 (3d Cir. 2005) (§ 105(a) cannot be used to imply a private remedy for a debtor harmed as a result of the mortgagee's improperly charging fees in violation of 11 U.S.C. § 506(b)); *Walls v. Wells Fargo Bank, N.A.*, 276 F. 3d 502, 509 n.3 (9th Cir. 2003) ("If Congress had understood §105 as permitting a private cause of action, the 1984 amendment creating one for violations of § 362 would have been superfluous"); *Pertuso v. Ford Motor Credit*, 233 F.3d 417, 421-22 (6th Cir. 2000) (declining to find private right of action under § 524 either directly or through § 105(a) for post-discharge injunction violation); *In re Stooksbury*, Case No. 07-33959, 2008 Bankr. LEXIS 1626, *9 (Bankr. E.D. Tenn. May 22, 2008) ("§ 105(a) is not without limits, may not be used to circumvent the Bankruptcy Code, and does not create a private cause of action unless it is invoked in connection with another section of the Bankruptcy Code") (quoting *In re Rose*, 314 B.R. 663, 681 n. 11 (Bankr. E.D. Tenn. 2004)).

It is hornbook law that the bankruptcy courts may not use their equitable powers under § 105(a) as a warrant to create new remedies that would  "contravene specific statutory provisions" of the Bankruptcy Code. *Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014); *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). The Bankruptcy Code establishes specific relief for claims that

may be subject to valid defenses, claim objection, and adjudication of the allowance or disallowance of the subject claim. *See generally* 11 U.S.C. § 502; Fed. R. Bankr. P. 3002. Specifically, Debtor's remedy was to file an objection under § 502, which he did. He then withdrew his objections. He may not employ § 105 as a means to any additional relief untethered to another provision of the Code.

### 1. Debtor Fails to Properly Plead a Claim for Fraud.

As an initial matter, Debtor's § 105 argument in his Motion fails to substantiate the alleged fraud claims raised in the complaint. Memo pp. 5-6. He offers nothing beyond the bare allegation that Godfread and Sweet's claims were false to suggest that they were fraudulent. That cannot suffice. See, e.g., *Murr Plumbing v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1068 (8th Cir. 1995) (conclusory allegations of fraud do not satisfy the requirements of Rule 9(b)).

Under Minnesota law, the Debtor must prove five elements to succeed in a fraud action: (1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) the representation proximately caused action in reliance thereon; and (5) pecuniary damages as a result of the reliance. *Meecorp Capital Mkts., LLC v. Oliver*, 776 F.3d 557, 560 (8th Cir. 2015). Fraud may also be established by concealment of the truth. *Id*. The Debtor has the burden of proving these elements by a preponderance of the evidence. *S. Bancorp S. v. Richmond*, 430 B.R. 846, 863 (Bankr. E.D. Ark. 2010). He has not even tried to satisfy the elements, and cannot.

Godfread and Sweet filed claims against the Debtor upon valid judgments entered against Debtor's Alter Egos. Those claims were not false, and surely not knowingly so.  And if as alleged, the claims were fraudulent, Debtor fails to assert or show any reasonable reliance upon them. A finding of justifiable reliance can not be made where "the falsity of the representation is known or obvious to the listener …" *In re Duke and King Acquisition Corp.*, 508 B.R. 107, 143 (Bankr. D. Minn. Mar. 31, 2014) (citations omitted); *In re Schaefer,* BKY 4-94-2124, 1995 Bankr. LEXIS 963, *1 (Bankr. D. Minn. July 11, 1995) ("a fraud claim requires a claimant to establish not only a misrepresentation but reliance thereon and damages resulting therefrom."). Godfread and Sweet's claims facially indicate the circumstances under which they were incurred; there was no attempt to obfuscate. Instead, Debtor's allegations establish that he did not believe or rely upon Godfread or Sweet's alleged misrepresentations. *Cregan v. Mortg. One Corp.*, 2016 U.S. Dist. LEXIS 71098, *7-9 (E.D. Mo. June 1, 2016) (debtor's objection to claim demonstrates lack of reliance and failure to state a claim for

fraud); *cf.* Complaint ¶ 25 ("On November 16 and 17, Hansmeier filed objections to Proofs of Claims 9, 10 and 11."). Without evidence of reliance, there can be no fraud. See, e.g., *Murr Plumbing*, 48 F. 3d at 1070 (court may enter summary judgment dismissing a complaint alleging fraud if the complaint fails to satisfy the requirements of Rule 9(b)) (citing *Varnberg v. Minnick,* 760 F. Supp. 315, 326-327 (S.D.N.Y. 1991)); *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991) (court has the power to *sua sponte* dismiss a complaint or cause of action for failure to state a claim). Because Debtor failed to plead even the elements of fraud, the Court should dismiss the claims *sua sponte* or at least, deny his Motion.

### 2.   A Successful Defense does not Render Defendants' Claims Fraudulent.

Debtor's allegations of fraud are premised, at least in part, on the Court's denial of Godfread and Sweet's claims. Complaint ¶ 34. That denial shows that the Court also did not rely on the claims. Further, the claims were not found false, much less fraudulent. Rather, the Court found them unenforceable against Debtor in these proceedings. No. 15-42460, Doc. 195. Debtor glosses over this distinction and in doing so gives further reason to deny the Motion.

The mere denial of a claim does not render the claim false or fraudulent. See *In re Anthony*, 481 B.R. at 627 (citing *In re Fordu*, 201 F.3d 693, 711 (6th Cir. 1999)). A claim can be asserted by a creditor in good faith even if the claim was later disallowed by the bankruptcy court. *Id.*[2]

By the time Sweet filed Claims 9 & 10 on November 9, 2015, and Godfread filed Claim No. 11 the next day, the following had already occurred:

1) The *Ingenuity 13* court found that Prenda was "owned and controlled by the Principals," defined to include Debtor, and found the factual predicates of an alter ego relationship with AF. SOF Exhibit 1 at *6.

2) The *Navasca* court adopted, and found preclusive, the findings in *Ingenuity 13* about the alter ego relationship between the Debtor, Prenda, and AF. SOF Exhibit 2 at *18 ("Issue preclusion bars AF, Steele, and Hansmeier from re-litigating the findings of fact Judge Wright made in *Ingenuity 13* regarding their alter ego relationship..."). See also *AF Holdings, LLC v. Patel*, 2015 U.S. Dist. LEXIS 93524, *11-15 (N.D. Ga. July 8, 2015) (same).

---

[2] Debtor also accuses Godfread and Sweet of perjury. Complaint ¶¶ 14, 18, 23. As with civil sanctions, the reckless charge would require proof that any statement was both false and knowingly false. *In re Anthony*, 481 B.R. 627 (D. Neb. 2012) (citing *Aronofsky v. Bostian*, 133 F.2d 290, 292 (8th Cir. 1943)). Even if such proof existed—and it is not to be found in this record, because it does not exist—there is no private cause of action for perjury, and Debtor cannot obtain relief by raising its specter. *Id.*

3)  The Minnesota LPRB initiated disciplinary proceedings against the Debtor alleging:

2.  [Debtor], Steele, and Duffy … brought the suits through various law firms in which they had an interest. These firms included Steele Hansmeier, [P]LLC; Prenda Law, Inc. (Prenda); and Alpha Law Firm, LLC (Alpha).; and

3.  3. The "clients" represented by [Debtor], Steele, and Duffy in the various litigations included AF Holdings, Inc.; … Guava, LLC; … Ingenuity 13 … and others.

*In re Paul Robert Hansmeier*, File No. A5-1885 (Minn. filed Oct. 28, 2015). The petition for discipline further alleged that Debtor had given false testimony as AF's Rule 30(b)(6) deponent in *Navasca* as to his affiliation with Prenda and financial involvement in Prenda. *Id.* ¶¶ 118-119 & 129. Debtor later "unconditionally admit[ted] the allegations of the petition" on July 1, 2016.

4)  The Seventh Circuit—the situs where Claims 9 & 10 arose—adopted the *Ingenuity 13* court's findings of fact: "For our purposes the relevant fact is that the district court there found that Steele, Hansmeier, and Duffy owned and controlled Prenda Law." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 703 (7th Cir. 2014); SOF ¶ 6.

5)  Judgment entered against Prenda in the actions giving rise to Claims 9, 10, and 11. Sweet Decl. ¶ 13; Godfread Decl. ¶ 2.

Debtor's contention that the issue of his liability was foreclosed or rendered fraudulent by the *Prenda v. Godfread* court's April 9, 2015 order is without merit. Memo p. 2. Under Illinois law, a party who prevails over a corporation is "entitled to pierce the corporate veil and levy on the owners' personal assets to the full extent of his judgment; in the jargon of corporate law, the corporation was not a separate entity from its owners but merely their 'alter ego.'" *Brandon v. Anesthesia & Pain Mgmt. Assocs., Inc.*, 419 F.3d 594, 597-98 (7th Cir. 2005). "The owners' liability to [the prevailing party] is, moreover, joint and several." *Id.* at 598. In other words, a controlling owner and his corporate alter ego are one and the same as a matter of law. At the time Sweet and Godfread filed the disputed claims, their clients had prevailed over Prenda and AF, which had been found to be corporate alter egos of Debtor. For these reasons, Sweet and Godfread had a well-founded, good faith belief that Prenda and AF's liabilities would be applied to Debtor in these proceedings as well.

### 3.  Debtor Fails to Plead a Claim for Contempt.

To seek an order of civil contempt, the Debtor must show by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the Defendants, and 3) that the Defendants failed to comply with the court's order. *Koehler v. Grant*, 213 B.R. 567, 570

(B.A.P. 8th Cir. 1997). Civil contempt is available only where a court order exists and can properly be enforced. *Russell v. Sullivan*, 887 F.2d 170 (8th Cir. 1989); *In re Fischer*, 501 B.R. 346, 350 (B.A.P. 8th Cir. 2013). Filing of a proof of claim or interest is not done in compliance with a court order—it is a permissive act, and no creditor or interest holder is ever required to file one. *In re Pool*, 35 B.R. 748, 750 (Bankr. D. Minn. 1983). The rationale for requiring the filing of a formal proof of claim or interest in accordance with 11 U.S.C. § 501 is to ensure "that all those involved in the proceeding will be made aware of the claims against the debtor's estate and will have an opportunity to contest those claims." *In re PCH Assocs.*, 949 F.2d 585, 605 (2d Cir. 1991) (citing 3 *Collier on Bankruptcy* ¶¶ 501.01 - 501.04).

> In jumping to a conviction of [Defendants] and seeking to have the court hold [them] in contempt, the Plaintiff-Debtor[] appear[s] to forget that [he is a party] in a judicial proceeding - the bankruptcy case. [He has] certain rights and responsibilities to prosecuting that case. These include objecting to claims in the event that [he] believe[s] the claim to be excessive, misstated, or not an obligation owed by the Plaintiff-Debtor[]. The Bankruptcy Code and federal procedure does not elevate [Debtor] to a special status in which all other parties in interest will be held in contempt if the Plaintiff-Debtor[] disagree[s] with that party in interest.

*In re Sanchez*, 2011 Bankr. LEXIS 5602, *26-28 (Bankr. E.D. Cal. Dec. 15, 2011). Debtor does not show as matter of law that contempt is a proper remedy for filing a disputed proof of claim; and does not show that there is no material factual dispute that any Defendant's conduct constituted contempt.

### 4.   Debtor has not Stated a Claim as to Claims 15, 16 & 18.

Debtor states that Claims 9, 10, 11, 15, 16, & 18 are all "within the scope of this Motion." Memo p. 1. However, Debtor contends that Godfread and Sweet's three initial claims[3] were the sole reason his case was converted to Chapter 7. Complaint ¶¶ 9, 24; Memo p. 13 ("This is particularly true given the instrumental role that Godfread and Sweet's false Proofs of Claims played in the Court's decision to convert Hansmeier's Chapter 13 case to Chapter 7."). That is not so for any claim; Debtor's fraud on the Court was the decisive factor supporting conversion. SOF ¶ 25. Yet Debtor further alleged that such conversion was the proximate cause of his damages. Complaint ¶ 36. Claims 9, 10 & 11 were filed in November 2015 and Debtor's case was converted on December 3, 2015. Although the complaint provides amounts and generalized attributions of alleged damages resulting from the claims pre-conversion, Debtor has not alleged that any damages were incurred

---

[3] Combined, the claims totaled less than $935,000—not "$1.6 million" [Complaint ¶ 24] or "$1.8 million" [Memo p. 13] as Debtor contends.

after the conversion—when Claims 15, 16 & 18 were filed. Claims 15, 16 & 18 cannot support any causes of action.

**5.   Debtor's Abuse of Process Claim is Impermissible.**

Debtor raises for the first time an abuse of process claim in his Motion. Memo pp. 6-10. A party certainly cannot seek summary judgment for himself on a new claim that has not been pled in his complaint. *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1056-57 (8th Cir. 2004) (district court was correct to disregard argument raised for first time in summary judgment proceedings); *King v. United States*, 417 Fed. App'x. 609, 609 (8th Cir. May 18, 2011); *Kidquest, Inc. v. Selig*, 2012 U.S. Dist. LEXIS 138972, *8 (W.D. Ark. Sept. 27, 2012) (liberal pleading standard for civil complaints "does not require that, at the judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint") (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. Sept. 3, 2004)). It is simply not possible for Debtor to prevail with regard to claims that are not in the Complaint. Moreover, Debtor has not shown, or attempted to show, that he could make out the elements of the claim.

**B.   Contempt is not a Remedy Under § 362.**

Debtor's Motion asserts that Booth and Sweet should be held in contempt and ordered to pay Debtor actual and punitive damages in seeking the contempt for violating § 362(a). Memo p. 12. However, even if Booth and Sweet did violate § 362(a), contempt is not an appropriate remedy. *In re Calstar, Inc.*, 159 B.R. 247, 257-258 (Bankr. D. Minn. 1993). Booth and Sweet are not alleged to have violated any court order, but instead, a statutory provision. Complaint ¶ 57. "Contempt is a remedy for violating court orders, not statutes." *In re Just Brakes Corporate Sys., Inc.*, 108 F.3d 881, 885 (8th Cir. 1997); *In re Gray*, 519 B.R. 767, 771 (B.A.P. 8th Cir. 2014); *Calstar*, 159 B.R. at 257-58; *In re James*, 257 B.R. 673, 677-679 (B.A.P. 8th Cir. 2001). "If there was a violation of the automatic stay, the remedy must be found elsewhere." *In re James*, 257 B.R. at678. See also *In re Sori*, 513 B.R. 728, 732 n. 2 (Bankr. N.D. Ill. 2014) (collecting cases) (actions brought to recover damages for stay violations are brought by motion, not adversary proceedings); *In re Ballard*, 502 B.R. 311, 321 (Bankr. S.D. Ohio 2013).

Moreover, there is no violation alleged. Proceedings brought against a debtor are automatically stayed pursuant to 11 U.S.C. § 362. The *Chowdhury* case, however, was not an action or proceeding brought against a debtor. It was brought by Debtor's Alter Ego AF. The automatic stay does not apply to judicial proceedings that are initiated by debtors. *Brown v. Armstrong*, 949 F.2d

13

1007, 1009 (8th Cir. 1991). As the plain language of the statute suggests, and as no less than six circuits have concluded, the Code's automatic stay "does not prevent a plaintiff/debtor from continuing to prosecute its own claims nor does it prevent a defendant from protecting its interests against claims brought by the debtor. This is true, even if the defendant's successful defense will result in the loss of an allegedly valuable claim asserted by the debtor." *Renewable Energy SD, LLC v. Polaris Am.*, LLC, 2013 U.S. Dist. LEXIS 145147, *5-6 n. 1 (D. Minn. Oct. 8, 2013) (quoting *In re Palmdale Hills Property, LLC*, 654 F.3d 868, 875 (9th Cir. 2011)); *Marquis Yachts v. Allied Marine Group, Inc.*, 2010 U.S. Dist. LEXIS 31878, *7-8 (D. Minn. Mar. 31, 2010). Furthermore, the disputed motion in *Chowdhury* was never served and was dismissed upon Steele's opposition, without requiring a response from Debtor.

## CONCLUSION

Central to Debtor's claims is the tenet that he is not liable for judgments held by creditors in the names of his Alter Egos. This issue is common to the majority of the creditors in this bankruptcy case, and one that should have been dealt with at the outset. The sheer volume of evidence and case law to definitively establish the Debtor's liability on these judgments is expansive. The facts and preclusive judgments establishing Debtor's alter ego relationship with Prenda and AF, and the law establishing that a claim against a corporate alter ego lies against the controlling owner, cannot be disposed on a motion for summary judgment that blithely ignores the issue.

Yet creditors such as Defendants find themselves in limbo after years of litigation with the Debtor, stayed from moving forward in the courts where they obtained the judgments and unable to enforce them here. Debtor has taken advantage of this stasis, filing claims he should be precluded from raising against his creditors.

As a matter of law, as an issue of fact, and as a basic principle of equity, Debtor cannot be allowed to prevail on his Motion. For the reasons stated herein, Defendants respectfully requests this Court deny Debtor's motion for summary judgement and dismiss his complaint with prejudice.


Dated: July 21, 2017                           /s/ Paul Godfread
                                               Paul Godfread (389316)
                                               **GODFREAD LAW FIRM, P.C.**
                                               6043 Hudson Road, Suite 305
                                               Woodbury, MN 55125
                                               Telephone:  (612) 284-7325
                                               paul@godfreadlaw.com

/s/ Jason Sweet (with consent)
Jason E. Sweet (BBO# 668596)
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com


/s/ Dan Booth (with consent)
Daniel G. Booth (BBO# 672090)
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Telephone: (617) 250-8602
Facsimile: (617) 250-8883
dbooth@boothsweet.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                                    BKY 15-42460
                                                          ADV 17-04076
PAUL HANSMEIER,

      Debtor.

---

PAUL HANSMEIER, Debtor,

      Plaintiff,

v.

DAN BOOTH, PAUL GODFREAD and JASON SWEET,

      Defendants.

---

### D. MINN. LR 7.1(f) WORD COUNT COMPLIANCE CERTIFICATE

---

    I, Paul Godfread, certify that Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment complies with Local Rule 7.1(f).

    I further certify that, in preparation of this memorandum, that this word processing program Pages, has been applied specifically to include all text, including headings, footnotes, and quotations in the following word count. I further certify that the above referenced memorandum contains 6,326 words.

Dated: July 21, 2017

                    /s/ Paul Godfread
                    Paul Godfread (389316)
                    **GODFREAD LAW FIRM, P.C.**
                    6043 Hudson Road, Suite 305
                    Woodbury, MN 55125
                    Telephone:  (612) 284-7325
                    paul@godfreadlaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

_____

In re:                                                                          BKY 15-42460
                                                                                ADV 17-04076
PAUL HANSMEIER,

      Debtor.

_____

PAUL HANSMEIER, Debtor,

      Plaintiff,

v.

DAN BOOTH, PAUL GODFREAD and JASON SWEET,

      Defendants.

_____

**D. MINN. LR 7.1(f) WORD COUNT COMPLIANCE CERTIFICATE**

_____

      I hereby certify that on July 21, 2017, I caused the following documents:

**— *Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment;***
**— *Declaration of Paul Godfread;***
**— *Declaration of Jason Sweet;***
**— *Statement of Additional Facts;***
**— *Exhibits 1-9; and***
**— *Order* (*proposed*)**

to be filed electronically with the Clerk of Court through ECF, and that the above documents will be

delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice

pursuant to Local Rule 9006-1(a).

Dated: July 21, 2017                                    /s/ Paul Godfread

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                                          BKY 15-42460
                                                                ADV 17-04076
PAUL HANSMEIER,

      Debtor.

---

PAUL HANSMEIER, Debtor,

      Plaintiff,

v.

DAN BOOTH, PAUL GODFREAD and JASON SWEET,

      Defendants.

---

### ORDER

---

      This case is before the Court on the Plaintiff's Motion for Summary Judgment.

      Upon the motion and the files,

      IT IS ORDERED:

1. The Plaintiff's request for summary judgment is denied;

2. The Plaintiff's complaint is dismissed for failure to state a claim;

3. The dismissal of Plaintiff's complaint be *with* prejudice.


Dated:                                    _____
                                          Kathleen H. Sanberg
                                          United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:                                                    BKY 15-42460
                                                          ADV 17-04076
PAUL HANSMEIER,

        Debtor.

---

PAUL HANSMEIER, Debtor,

        Plaintiff,

v.

DAN BOOTH, PAUL GODFREAD and JASON SWEET,

        Defendants.

---

**DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS**

---

Pursuant to Fed. R. Civ. P 56(f)(1) and LR 56.1, The Defendants, Minnesota attorney Paul Godfread ("Godfread") and Massachusetts attorneys Dan Booth ("Booth") and Jason Sweet ("Sweet") (collectively, "Defendants"), file this Statement of Additional Material Facts ("SOF") as to which they contend there is no genuine dispute or supported claim enabling the Court to grant the Debtor's summary judgment.

1.  The alleged violation of the automatic stay was a motion filed on behalf of Booth and Sweet's client Sandipan Chowdhury ("Chowdhury") in the United States District Court for the District of Massachusetts in *AF Holdings, LLC v. Chowdhury*, Case No. 12-cv-12105 ("*Chowdhury*"). Complaint Exhibit 10. AF, through Prenda, filed the *Chowdhury* complaint on November 13, 2012.

2.  Sweet filed Claims 9 and 10 on behalf of claimants Godfread and Alan Cooper ("Cooper") in the amount of $678,865.97 pursuant to a judgment that arose out of two related cases in the U.S. District Court for the Northern District of Illinois: *Paul Duffy and Prenda Law, Inc. v. Paul Godfread, Alan Cooper, and John Does 1-10*, Case No. 13-cv-1569 ("*Duffy v. Godfread*"); and *Prenda Law, Inc. v. Paul Godfread, Alan Cooper, and John Does 1-10*, Case No. 13-cv-4341 ("*Prenda v. Godfread*").

3.  On February 26, 2013, Cooper filed the *Cooper v. Steele* complaint, raising misappropriation and veil piercing claims against defendants including Prenda.

4.  On May 6, 2013, Debtor, Prenda, AF, and others were sanctioned in a related case in the United States District Court for the Central District of California, *Ingenuity 13 LLC v. Doe*, Case No. 12-cv-8333 ("*Ingenuity*"). Exhibit 1 hereto.

5.  The *Ingenuity* court found that Debtor and other lawyers had conspired to create and operate Prenda, AF, and other shell companies whose litigation they controlled as the principals. Exhibit 1 pp. 3-4. The Ninth Circuit has affirmed the *Ingenuity* order. *Ingenuity13 LLC v. Doe*, 651 Fed. App'x. 716 (9th Cir. June 10, 2016).

6.  The Seventh Circuit has adopted the *Ingenuity* order's findings of fact  about Debtor's ownership and control of Prenda: "For our purposes the relevant fact is that the district court there found that Steele, Hansmeier, and Duffy owned and controlled Prenda Law." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 703 (7th Cir. 2014).

7.  The *Ingenuity* order was filed in the Hennepin County case on May 7, 2013.

8.  Cooper filed a motion for default judgment against Prenda that was heard on May 21, 2013, but denied as premature.

9.  The *Ingenuity* order was also filed in *Chowdhury* by AF's local counsel, on behalf of Prenda, on August 14, 2013.

10. On September 16, 2013, in another related case in the United States District Court for the Northern District of California, *AF Holdings LLC v. Navasca*, Case No. 12-cv-02396 ("*Navasca*"), the court adopted the *Ingenuity* court's findings of fact that Debtor uses AF as an alter ego, and determined that the findings were preclusive. Exhibit 2 hereto at p. 10.

11. The *Navasca* court found that those "findings (which AF, Steele and Hansmeier are precluded from re-litigating) establish that Steele and Hansmeier are the alter egos of AF … They share a unity of interest and ownership; they acted as attorneys for AF behind the scenes and dictated all litigation decisions; AF was undercapitalized (indeed, it had no assets as the settlement proceeds never left Steele and Hansmeier's accounts); they kept all litigation proceeds AF "earned"; and AF was a mere shell created to shield Hansmeier and Steele from liability." Exhibit 2 p. 17.

12. The *Navasca* court further found that Debtor was one of Prenda's two principals, and directed its litigation, and that "AF is an empty shell created by Steele and Hansmeier." Exhibit 2 p. 18.

13. On September 23, 2013, the *Navasca* order was filed in *Chowdhury*.

14. On September 30, 2013, the *Chowdhury* court allowed without opposition Chowdhury's motion for default judgment against AF on one of his counterclaims.

15. On October 22, 2013, without opposition, the court re-entered the judgment, for $64,180.80 jointly and severally against AF, Prenda, Debtor, Steele, and Paul Duffy. Exhibit 3 hereto.

16. In the Hennepin County case, Debtor withdrew as counsel for Prenda and was not replaced.

17. This led to entry of default judgment against Prenda on all claims, including the veil-piercing claim, on July 15, 2015.

18. On July 17, 2015, an order for judgment was entered against Prenda for $255,000.

19. On August 20, 2015, Sweet obtained a judgment on behalf of his clients Godfread and Cooper against Prenda in *Prenda v. Godfread*. Exhibit 4 hereto.

20. The *Prenda v. Godfread* court entered a Final Judgment and Order on October 17, 2016. Exhibit 5 hereto.

21. On September 16, 2015, Debtor submitted a modified plan proposal.

22. Debtor objected to Cooper's proof of claim on November 16, 2015, and to Godfread's on the next day.

23. The objections were set to be heard on December 17, 2015.

24. On November 12, 2015, the United States Trustee moved to convert Debtor's case from Ch. 13 to Ch. 7.

25. The Trustee sought conversion based on several grounds: 1) Debtor's bad faith both pre-petition and post-petition; 2) Debtor's plan did not comply with § 1322(a)(1); 3) the plan was not proposed in good faith under 11 U.S.C. § 1325(a)(3); 4) the plan did not comply with § 1325(a)(4); 5) Debtor did not have an ability to make payments under 11 U.S.C. § 1325(a)(6); 6) Debtor did not file his petition in good faith under 11 U.S.C. § 1325(a)(7); and 7) failure to obtain confirmation under 11 U.S.C. § 1307(c)(5).

26. On November 18, 2015, Debtor withdrew his modified plan and submitted an amended plan.

27. On December 10, 2015, Debtor withdrew his objections to Godfread and Cooper's claims.

28. On January 19, 2016, Sweet received notice to again file his clients' claims.

29. When refiled, they were identified as Claims 15 and 16.

30. On August 4, 2016, the First Circuit vacated the *Chowdhury* judgment as to Debtor, Steele and Paul Duffy, and remanded the matter on a procedural issue. Judgment, *AF Holdings, LLC v. Chowdhury*, No. 13-2535 (1st Cir. Aug. 4, 2016); Exhibit 6 hereto.

31. Chowdhury's judgment against AF and Prenda still stands.

32. On remand, the *Chowdhury* court ordered Chowdhury to "file a proposed Amended Judgment no later than September 29, 2016." Order on Remand, *AF Holdings, LLC v. Chowdhury*, No. 12-cv-12105-IT (D. Mass. Sept. 8, 2016); Exhibit 7 hereto.

33. The motion was to add or substitute Steele and Debtor as counterdefendants pursuant to Federal Rule of Civil Procedure 25(c) in addition to or in place of their alter ego AF.

34. The motion was never served on Hansmeier.

35. Steele filed an opposition to Chowdhury's motion on October 18, 2016.

36. In support, Steele filed a three-paragraph declaration by Debtor. Declaration of Paul R. Hansmeier, *AF Holdings, LLC v. Chowdhury*, No. 12-cv-12105-IT (D. Mass. filed Oct. 18, 2016); Exhibit 8 hereto.

37. Debtor declared that he had not been served or otherwise received a copy of the disputed motion from Chowdhury or his counsel. Exhibit 8 ¶ 2.

38. On November 16, 2016 the United States Trustee objected to Claims 9, 10, 15, and 16.

39. On November 30, 2016, Godfread and Cooper withdrew Claims 9 & 10.

40. On December 20, 2016, Godfread and Cooper requested to stay the Chapter 7 Trustee's objections to Claims 15 and 16 pending a determination on the Joint Motion for Findings of Fact or in the alternative for relief from the stay.

41. The next day, December 21, 2016, the Court granted the United States Trustee's objection.

Dated: July 21, 2017

/s/ Paul Godfread
Paul Godfread (389316)
**GODFREAD LAW FIRM, P.C.**
6043 Hudson Road, Suite 305
Woodbury, MN 55125
Telephone:  (612) 284-7325
paul@godfreadlaw.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                                                    BKY 15-42460
                                                                          ADV 17-04076
PAUL HANSMEIER,

     Debtor.

---

PAUL HANSMEIER, Debtor,

     Plaintiff,

v.

DAN BOOTH, PAUL GODFREAD and JASON SWEET,

     Defendants.

---

## DECLARATION OF PAUL GODFREAD

---

I, Paul Godfread, state under penalty of perjury that the following is true and based on personal

knowledge.

1.     I am one of the Defendants in this adversary proceeding. I have personal knowledge of the matters in this affidavit.

2.     I am an attorney. I was counsel of record for the plaintiff Alan Cooper for the entirety of the *Cooper v. Steele, et al.*, case in the Minnesota District Court for Hennepin County, Case No. 27-Cv-13-3463 ("*Cooper v. Steele*"), which resulted in the order for judgment making up the $255,000 claim filed as Claim 11 in Paul Hansmeier's bankruptcy case.

3.     I have also reviewed the case docket for *Cooper v. Steele* before making this declaration.

4.     Cooper's complaint in *Cooper v. Steele* was filed on February 26, 2013. The claims made against Prenda Law, Inc. in *Cooper v. Steele* included veil piercing claims (Count V).

5.     I filed the first motion for default against Prenda Law, Inc. on May 6, 2013, which was heard and denied on May 21, 2013 because Prenda Law, Inc. had since filed an Answer.

6.     I filed a copy of the May 6, 2013 order from *Ingenuity13 v. Doe,* which found that Debtor Paul Hansmeier was a principal of Prenda Law, Inc. with the Hennepin County court on May 7, 2013.

7.      Paul Hansmeier appeared on behalf of Prenda Law, Inc. in Hennepin County for the May 21, 2013 hearing. He then later withdrew and Prenda Law, Inc. did not offer a substitute counsel.

8.      I filed a renewed motion for default on behalf of Cooper against Prenda Law, Inc. which was heard on June 10, 2015.

9.      That renewed motion for default resulted in a $255,000 order for judgement against Prenda Law, Inc. on July 15, 2015. I filed Claim 11 on behalf of Cooper in that amount pursuant to that judgment on November 10, 2015.

10.     At no time was a motion for default against Hansmeier ever made in the *Cooper v. Steele* case as claimed by Hansmeier in his declaration at paragraph 4.

11.     Because there have been numerous courts which have found Hansmeier to be a principal of Prenda Law, Inc. or found that Prenda Law, Inc. is an alter ego of Hansmeier and that Cooper's claims against Prenda Law, Inc. included veil piercing claims, I believe in good faith that Cooper's judgment of $255,000 is enforceable against Hansmeier.

12.     I believed that at the time I filed Claim No. 11 and continue to believe that Claim No. 11 should be enforceable against Hansmeier under veil piercing or alter-ego theories of liability, even though the judgment is nominally against Prenda Law, Inc.

13.     I based these beliefs not only on the findings by the court in *Cooper v. Steele*, but by the related findings in *Ingenuity 13 v. Doe, AF Holdings v. Navasca*, and other cases. To my knowledge, none of these findings of fact have been overturned or challenged.


Dated: July 21, 2017              By: s/   Paul Godfread
                                     Paul Godfread (389316)
                                     **GODFREAD LAW FIRM, P.C.**
                                     6043 Hudson Road, Suite 305
                                     Woodbury, MN 55125
                                     Telephone:  (612) 284-7325
                                     paul@godfreadlaw.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                                    BKY 15-42460
                                                          ADV 17-04076
PAUL HANSMEIER,

      Debtor.

---

PAUL HANSMEIER, Debtor,

      Plaintiff,

v.

DAN BOOTH, PAUL GODFREAD and JASON SWEET,

      Defendants.

---

## DECLARATION OF JASON SWEET

---

      I, Jason Sweet, state under penalty of perjury that the following is true and based on personal knowledge.

1.  I am one of the Defendants in this adversary proceeding. I have personal knowledge of the matters in this affidavit.

2.  I am an attorney. I was counsel of record for the defendant Sandipan Chowdhury for the entirety of the *AF Holdings, LLC v. Chowdhury* case in the District Court for Massachusetts, Case No. 12-cv-12105 ("*Chowdhury*"), in which a motion filed on behalf of my firm's client resulted in the alleged violation of the automatic stay in Paul Hansmeier's bankruptcy case.

3.  I have reviewed the case docket for *Chowdhury* before making this declaration.

4.  Daniel Ruggiero appeared on behalf of AF Holdings ("AF") in *Chowdhury*. He then later withdrew and AF Holdings did not offer a substitute counsel.

5.  Daniel Ruggiero filed a copy of the May 6, 2013 order from *Ingenuity13 v. Doe,* which found that Debtor Paul Hansmeier was a principal of Prenda Law, Inc. and AF with the *Chowdhury* court on August 14, 2013.

6.  I filed a copy of the September 16, 2013 report and recommendation from *Navasca* with the *Chowdhury* court on September 23, 2013.

7.  I filed a motion for default judgment against AF in the *Chowdhury* court on September 13, 2013, which was granted without opposition on September 30, 2013.

8.  On October 17, 2013, I filed a motion for final approval of the default judgment in the *Chowdhury* court to include AF, Prenda, Debtor, Steele, and Paul Duffy. On October 22, 2013,

without opposition, the court re-entered the judgment, for $64,180.80 jointly and severally against AF, Prenda, Debtor, Steele, and Paul Duffy.

9. The Debtor, Steele and Paul Duffy, filed a notice of appeal in *Chowdhury* on December 16, 2013, disputing the final form of the default judgment granted by the court. On August 4, 2016, the First Circuit vacated the *Chowdhury* judgment as to Debtor, Steele and Duffy, and remanded the matter on a procedural issue.

10. On remand, the *Chowdhury* court ordered my client to "file a proposed Amended Judgment no later than September 29, 2016." On that date, I filed the disputed motion to add or substitute Steele and Debtor as counterdefendants pursuant to Federal Rule of Civil Procedure 25(c) in addition to or in place of their alter ego AF.

11. Steele filed an opposition to Chowdhury's motion on October 18, 2016. In support, Steele filed a three-paragraph declaration by the Debtor. Debtor declared that he had not been served or otherwise received a copy of the disputed motion from Chowdhury or his counsel.

12. Two days later, on October 20, 2016, the *Chowdhury* court denied the motion for substitution without prejudice on procedural issues with instructions to re-file. Each month I am required by the *Chowdhury* court to file a status report concerning the stay in Debtor's bankruptcy case or risk dismissal.

13. I was also counsel of record for the defendants Paul Godfread and Alan Cooper for the entirety of the two related cases in the U.S. District Court for the Northern District of Illinois: *Paul Duffy and Prenda Law, Inc. v. Paul Godfread, Alan Cooper, and John Does 1-10*, Case No. 13-cv-1569 ("*Duffy v. Godfread*"); and *Prenda Law, Inc. v. Paul Godfread, Alan Cooper, and John Does 1-10*, Case No. 13-cv-4341 ("*Prenda v. Godfread*") which resulted in the order for judgment making up the $678,865.97 claim filed as Claims 9 and 10 in Paul Hansmeier's bankruptcy case.

14. I have reviewed the case dockets for *Duffy v. Godfread* and *Prenda v. Godfread* before making this declaration.

15. On August 20, 2015, the *Prenda v. Godfread* court granted a judgment on behalf of my clients Godfread and Cooper against Prenda. The court relied on the *Ingenuity* order's findings of fact that Debtor is a principal of Prenda and established AF as a "shell plaintiff." The *Prenda v. Godfread* court entered a Final Judgment and Order on October 17, 2016.

16. Because there have been numerous courts which have found the Debtor to be a principal of Prenda Law, Inc. or found that Prenda Law, Inc. is an alter ego of the Debtor and that Cooper's claims against Prenda Law, Inc. included veil piercing claims, I believe in good faith that Cooper's judgment of $678,865.97 is enforceable against the Debtor.

17. I believed that at the time I filed Claims 9 and 10 and continue to believe that those claims should be enforceable against the Debtor under veil piercing or alter-ego theories of liability, even though the judgment is nominally against Prenda Law, Inc.

18. I based these beliefs not only on the findings by the court in *Prenda v. Godfread*, but by the related findings in *Ingenuity 13 v. Doe, AF Holdings v. Navasca, Lightspeed Media v. Smith,* and other cases. To my knowledge, none of these findings of fact have been overturned or challenged.

Dated: July 21, 2017

By:    /s/ Jason Sweet
Jason E. Sweet (BBO# 668596)

BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

⚠️ Caution
As of: July 22, 2017 12:50 AM Z

# Exhibit 1

## *Ingenuity 13 LLC v. Doe*

United States District Court for the Central District of California

May 6, 2013, Decided; May 6, 2013, Filed

Case No. 2:12-cv-8333-ODW(JCx)

**Reporter**

2013 U.S. Dist. LEXIS 64564 *; 107 U.S.P.Q.2D (BNA) 1241 **; Copy. L. Rep. (CCH) P30,423; 2013 WL 1898633

INGENUITY 13 LLC, Plaintiff, v. JOHN DOE, Defendant.

**Subsequent History:** Affirmed by *Ingenuity13 LLC v. Doe, 2016 U.S. App. LEXIS 10557 (9th Cir. Cal., June 10, 2016)*

**Prior History:** *Ingenuity 13 LLC v. Doe, 2013 U.S. Dist. LEXIS 17693 (C.D. Cal., Feb. 7, 2013)*

## Core Terms

sanctions, attorneys, Cooper, cases, settlement, parties, financial interest, attorney's fees, downloading, subscriber, lawsuits, costs, inherent authority, individuals, entities, requests

**Counsel:** [*1] For Ingenuity13 LLC, Plaintiff: Brett Langdon Gibbs, Prenda Law Inc, Mill Valley, CA.

For John Steele, Movant: David M Majchrzak, LEAD ATTORNEY, Klinedinst PC, San Diego, CA; Heather Rosing, LEAD ATTORNEY, Klinedinst Law Offices, San Diego, CA; Thomas P Mazzucco, Timothy J Halloran, LEAD ATTORNEYS, Murphy Pearson Bradley and Feeney, San Francisco, CA.

For Paul Hansmeier, Paul Duffy, Angela Van Den Hemel, Prenda Law, Inc., Movants: David M Majchrzak, LEAD ATTORNEY, Klinedinst PC, San Diego, CA; Heather Rosing, LEAD ATTORNEY, Klinedinst Law Offices, San Diego, CA.

For John Doe, Defendant: Morgan E Pietz, LEAD ATTORNEY, The Pietz Law Firm, Manhattan Beach, CA; Nicholas R Ranallo, Nicholas Ranallo Law Offices, Boulder Creek, CA.

**Judges:** OTIS D. WRIGHT, II, UNITED STATES DISTRICT JUDGE.

**Opinion by:** OTIS D. WRIGHT, II

## Opinion

[**1241]  ORDER ISSUING SANCTIONS

"The needs of the many outweigh the needs of the few."

—Spock, *Star Trek II: The Wrath of Khan* (1982).

### I. INTRODUCTION

Plaintiffs [1] have outmaneuvered the legal system. [2] They've discovered the nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs. And they exploit this anomaly by accusing individuals of illegally downloading a single pornographic [*2] video. Then they offer to settle—for a sum calculated to be just below the cost of a bare-bones defense. For these individuals, resistance is futile;

---

[1] The term "Plaintiffs" used in this order refers to AF Holdings LLC, Ingenuity 13 LLC, as well as related entities, individuals, and attorneys that collaborated in the underlying scheme fronted by AF Holdings and Ingenuity 13.

[2] This order concerns conduct committed in the following related cases: *AF Holdings LLC v. Doe*, No. 2:12-cv-6636-ODW(JCx) (C.D. Cal. filed Aug. 1, 2012); *AF Holdings LLC v. Doe*, No. 2:12-cv-6669-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6662-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-6668-ODW(JCx) (C.D. Cal. filed Aug. 2, 2012); *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012).

2013 U.S. Dist. LEXIS 64564, *2; 107 U.S.P.Q.2D (BNA) 1241, **1241

# Exhibit 1

most reluctantly pay rather than have their names associated with illegally downloading porn. So now, copyright laws originally designed to compensate starving artists allow, starving attorneys in this electronic-media era to plunder the citizenry.

Plaintiffs do have a right to assert their intellectual-property rights, so long as they do [*3] it right. But Plaintiffs' filing of cases using the same boilerplate complaint against dozens of defendants raised the Court's alert. It was when the Court realized Plaintiffs engaged their cloak of shell companies and fraud that the Court went to battlestations.

## II. PROCEDURAL HISTORY

The Court issued its February 7, 2013 Order to Show Cause re Sanctions to allow [**1242] counsel, Brett Gibbs, to explain why he ignored the Court's discovery-stay Order, filed complaints without reasonable investigation, and defrauded the Court by asserting a copyright assignment secured with a stolen identity. (ECF No. 48.) As evidence materialized, it turned out that Gibbs was just a redshirt.

Gibbs's behavior in the porno-trolling collective was controlled by several attorneys, under whom other individuals also took their orders. Because it was conceivable that these attorneys (and others) were culpable for Gibbs's conduct, the Court ordered these parties to appear.

The following additional parties were ordered to appear: (a) John Steele, of Steele Hansmeier PLLC, Prenda Law, Inc., and/or Livewire Holdings LLC; (b) Paul Hansmeier, of Steele Hansmeier PLLC and/or Livewire Holdings LLC; (c) Paul Duffy, of Prenda [*4] Law, Inc.; (d) Angela Van Den Hemel, of Prenda Law, Inc.; (e) Mark Lutz, of Prenda Law, Inc., AF Holdings LLC, and/or Ingenuity 13 LLC; (f) Alan Cooper, of AF Holdings LLC; (g) Peter Hansemeier, of 6881 Forensics, LLC; (h) Prenda Law, Inc.; (i) Livewire Holdings LLC; (j) Steele Hansmeier PLLC; (k) AF Holdings LLC; (l) Ingenuity 13 LLC; (m) 6881 Forensics, LLC; and (n) Alan Cooper, of 2170 Highway 47 North, Isle, MN 56342. (ECF Nos. 66, 86.) These parties were ordered to show cause why they should not be sanctioned for their behind-the-scenes role in the conduct facially perpetrated by Gibbs. These parties were also ordered to explain the nature of their operations, relationships, and financial interests.

## III. LEGAL STANDARD

The Court has a duty to supervise the conduct of attorneys appearing before it. *Erickson v. Newmar Corp., 87 F.3d 298, 301 (9th Cir. 1996)*. The power to punish contempt and to coerce compliance with issued orders is based on statutes and the Court's inherent authority. *Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 831, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994)*. Though this power must be exercised with restraint, the Court has wide latitude in fashioning appropriate sanctions to fit [*5] the conduct. *See Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-65, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980)*.

Under the Court's inherent authority, parties and their lawyers may be sanctioned for improper conduct. *Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001)*. This inherent power extends to a full range of litigation abuses, the litigant must have engaged in bad faith or willful disobedience of a court's order. *Id. at 992*. Sanctions under the Court's inherent authority are particularly appropriate for fraud perpetrated on the court. *See Chambers v. NASCO, Inc., 501 U.S. 32, 54, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)*.

## IV. DISCUSSION

### A. Findings of fact

Based on the evidence presented on the papers and through sworn testimony, the Court finds the following facts, including those based on adverse inferences drawn from Steele, Hansmeier, Duffy, and Van Den Hemel's blanket refusal to testify. [3]

1. Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this [*6] enterprise and formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for the sole purpose of litigating copyright-infringement lawsuits. They created

---

[3] Even if their refusal was based on the *Fifth Amendment* privilege against self-incrimination, the Court may still draw adverse inferences against them in this civil proceeding. *Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976)*.

Case 17-04076   Doc 7   Filed 07/21/17   Entered 07/21/17 23:24:55   Desc Main
Document        Page 30 of 60

Page 3 of 6

2013 U.S. Dist. LEXIS 64564, *6; 107 U.S.P.Q.2D (BNA) 1241, **1242

# Exhibit 1

these entities to shield the Principals from potential liability and to give an appearance of legitimacy.

2. AF Holdings and Ingenuity 13 have no assets other than several copyrights to pornographic movies. There are no official owners or officers for these two offshore entities, but the Principals are the de facto owners and officers.

3. The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law, which was also owned and controlled by the Principals. Their litigation strategy consisted of monitoring BitTorrent download activity of their copyrighted pornographic movies, recording IP addresses of the computers downloading the movies, filing suit in federal court to subpoena Internet Service Providers ("ISPs") for the identity of the subscribers to these IP addresses, and sending cease-and-desist letters to the subscribers, offering to settle each copyright-infringement claim for about $4,000.

4. This nationwide strategy was highly successful because of statutory-copyright damages, **[*7]** the pornographic subject matter, and the high cost of litigation. Most defendants settled with the Principals, resulting in proceeds of millions of dollars due to the numerosity of defendants. These settlement funds resided in **[**1243]** the Principals' accounts and not in accounts belonging to AF Holdings or Ingenuity 13. No taxes have been paid on this income.

5. For defendants that refused to settle, the Principals engaged in vexatious litigation designed to coerce settlement. These lawsuits were filed using boilerplate complaints based on a modicum of evidence, calculated to maximize settlement profits by minimizing costs and effort.

6. The Principals have shown little desire to proceed in these lawsuits when faced with a determined defendant. Instead of litigating, they dismiss the case. When pressed for discovery, the Principals offer only disinformation—even to the Court.

7. The Principals have hired willing attorneys, like Gibbs, to prosecute these cases. Though Gibbs is culpable for his own conduct before the Court, the Principals directed his actions. In some instances, Gibbs operated within narrow parameters given to him by the Principals, whom he called "senior attorneys."

8. The Principals **[*8]** maintained full control over the entire copyright-litigation operation. The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case.

9. The Principals stole the identity of Alan Cooper (of 2170 Highway 47 North, Isle, MN 56342). The Principals fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings. Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for Steele. There is no other person named Alan Cooper related to AF Holdings or Ingenuity 13.

10. The Principals ordered Gibbs to commit the following acts before this Court: file copyright-infringement complaints based on a single snapshot of Internet activity; name individuals as defendants based on a statistical guess; and assert a copyright assignment with a fraudulent signature. The Principals also instructed Gibbs to prosecute these lawsuits only if they remained **[*9]** profitable; and to dismiss them otherwise.

11. Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies. But this deception was calculated so that the Court would grant Plaintiffs' early-discovery requests, thereby allowing Plaintiffs to identify defendants and exact settlement proceeds from them. With these granted requests, Plaintiffs borrow the authority of the Court to pressure settlement.

**B. Sanctions**

Although the Court originally notified the parties that sanctions would be imposed under *Federal Rule of Civil Procedure 11(b)(3)* and *Local Rule 83-3*, the Court finds it more appropriate to sanction the parties under its inherent authority. *See In re DeVille, 361 F.3d 539, 550 (9th Cir. 2004)* ("[T]he bankruptcy court's failure to

2013 U.S. Dist. LEXIS 64564, *9; 107 U.S.P.Q.2D (BNA) 1241, **1243

# Exhibit 1

specify, in advance of the disciplinary proceedings, that its inherent power was a basis for those proceedings, did not serve to undercut its sanctioning authority."). The sanctions for Plaintiffs' misconduct are as follows.

## 1. Rule 11 sanctions

The **[*10]** Court maintains that its prior analysis of Plaintiffs' _Rule 11_ violations is accurate. (ECF No. 48.) Plaintiffs can only show that someone, using an IP address belonging to the subscriber, was seen online in a torrent swarm. But Plaintiffs did not conduct a sufficient investigation to determine whether that person actually downloaded enough data (or even anything at all) to produce a viewable video. Further, Plaintiffs cannot conclude whether that person spoofed the IP address, is the subscriber of that IP address, or is someone else using that subscriber's Internet access. Without better technology, prosecuting illegal BitTorrent activity requires substantial effort in order to make a case. It is simply not economically viable to _properly_ prosecute the illegal download of a single copyrighted video.

Enter Plaintiffs and their cottage-industry lawsuits. Even so, the Court is not as troubled by their lack of reasonable investigation as by their cover-up. Gibbs argued that a deep inquiry was performed _prior_ to filing. Yet these arguments are not credible and do not support Gibbs's conclusions. Instead, Gibbs's arguments suggest a hasty after-the-fact investigation, and a shoddy one at **[*11]** that.

For instance, Gibbs characterized Marvin Denton's property as "a very large estate consisting of a gate for entry and multiple separate houses/structures on the property." (ECF **[**1244]** No. 49, at 19.) He stated this to demonstrate the improbability that Denton's Wi-Fi signal could be received by someone outside the residence. But Denton's property is not a large estate; it is a small house in a closely packed residential neighborhood. There are also no gates visible.



Gibbs's statement is a blatant lie. His statement resembles other statements given by Plaintiffs in this and their other cases: statements that sound reasonable but lack truth. Thus, the Court concludes that Gibbs, even in the face of sanctions, continued to make factual misrepresentations to the Court.

Nevertheless, _Rule 11_ sanctions are inappropriate here because it is the wrong sanctions vehicle at this stage of litigation. The cases have already been dismissed and monetary sanctions are not available. _Fed. R. Civ. P 11(c)(5)(B)_ (a court cannot impose a monetary sanction on its own unless it issued the show-cause order before voluntary dismissal). The more appropriate sanction for these _Rule 11_ violations is what the Court **[*12]** had already imposed: denial of requests for early discovery. (ECF No. 28.)

## 2. Sanctions under the Court's inherent authority

In addition to Gibbs's misrepresentations, there is the matter of the ignored Court Order vacating early discovery. (ECF No. 28.) The evidence does not show that the Order was ignored because of miscommunication among Plaintiffs. The Order was purposely ignored—hoping that the ISPs were unaware of the vacatur and would turn over the requested subscriber information.

Then there is the Alan Cooper forgery. Although a recipient of a copyright assignment need not sign the document, a forgery is still a forgery. And trying to pass that forged document by the Court smacks of fraud. Unfortunately, other than these specific instances of **[**1245]** fraud, the Court cannot make more detailed findings of fraud.

2013 U.S. Dist. LEXIS 64564, *12; 107 U.S.P.Q.2D (BNA) 1241, **1245

# Exhibit 1

Nevertheless, it is clear that the Principals' enterprise relies on deception. Part of that ploy requires cooperation from the courts, which could only be achieved through deception. In other words, if the Principals assigned the copyright to themselves, brought suit in their own names, and disclosed that they had the sole financial interest in the suit, a court would scrutinize [*13] their conduct from the outset. But by being less than forthcoming, they defrauded the Court. They anticipated that the Court would blindly approve their early-discovery requests, thereby opening the door to more settlement proceeds.

The Principals also obfuscate other facts, especially those concerning their operations, relationships, and financial interests. The Principals' web of disinformation is so vast that the Principals cannot keep track—their explanations of their operations, relationships, and financial interests constantly vary. This makes it difficult for the Court to make a concrete determination.

Still, the Court adopts as its finding the following chart detailing Plaintiffs' relationships. Though incomplete, this chart is about as accurate as possible given Plaintiffs' obfuscation.



As for Van Den Hemel, Lutz, and Hansemeier, they are not without fault even though they acted under orders from the Principals. They were not merely assimilated; they knowingly participated in this scheme, reaping the benefits when the going was good. Even so, their status as non-attorneys *and* non-parties severely limits the sanctions that could be levied against them.

Despite these findings, the [*14] Court deems these findings insufficient to support a large monetary sanction—a seven-digit sanction adequate to deter

Plaintiffs from continuing their profitable enterprise. Even if the Court enters such a sanction, it is certain that Plaintiffs will [**1246] transfer out their settlement proceeds and plead paucity. Yet Plaintiffs' bad-faith conduct supports other more fitting sanctions.

First, an award of attorney's fees to Defendants is appropriate. This award compensates them for expenses incurred in this vexatious lawsuit, especially for their efforts in countering and revealing the fraud perpetrated by Plaintiffs.

So far, only Morgan Pietz and Nicholas Ranallo have appeared. [4] Upon review, the Court finds Pietz's expenditure of 120.5 hours at an hourly rate of $300 reasonable based on his experience, work quality, and quantity of necessary papers filed with the Court. (ECF No. 102.) Although many of these hours were spent after the case was dismissed, these hours were spent in connection with the sanction hearings—time well spent. Similarly, the attorney's fees and costs incurred by Ranallo also appear reasonable.

Therefore, the Court awards attorney's fees and costs in the sum of $40,659.86 to Doe: $36,150.00 for Pietz's attorney's fees; $1,950.00 for Ranallo's attorney's fees; $2,226.26 for Pietz's costs; and $333.60 for Ranallo's costs. As a punitive measure, the Court doubles this award, yielding $81,319.72. [5] This punitive multiplier is justified by Plaintiffs' brazen misconduct and relentless fraud. The Principals, AF Holdings, Ingenuity 13, Prenda Law, and Gibbs are liable for this sum jointly and severally, and shall pay this sum within 14 days of this order.

Second, there is little doubt that that Steele, Hansmeier, Duffy, Gibbs suffer from a form of moral turpitude unbecoming of an officer of the court. To this end, the Court will refer them to their respective state and federal bars.

Third, though Plaintiffs boldly probe the outskirts of law, the only enterprise they resemble is RICO. The federal agency eleven decks up is familiar with their

---

[4] They appeared on behalf of the Doe Defendant in the case *Ingenuity 13 LLC [*15] v. Doe*, No. 2:12-cv-8333-ODW(JCx) (C.D. Cal. filed Sept. 27, 2012).

[5] This punitive portion is calculated to be just below the cost of an effective appeal.

2013 U.S. Dist. LEXIS 64564, *15; 107 U.S.P.Q.2D (BNA) 1241, **1246

**Exhibit 1**

prime directive and will gladly refit them for their next voyage. The Court will refer this **[*16]** matter to the United States Attorney for the Central District of California. The will also refer this matter to the Criminal Investigation Division of the Internal Revenue Service and will notify all judges before whom these attorneys have pending cases. For the sake of completeness, the Court requests Pietz to assist by filing a report, within 14 days, containing contact information for: (1) every bar (state and federal) where these attorneys are admitted to practice; and (2) every judge before whom these attorneys have pending cases.

*4. Local Rule 83-3 sanctions*

For the same reasons stated above, the Court will refer Duffy and Gibbs to the Standing Committee on Discipline (for this District) under *Local Rule 83-3*.

**V. CONCLUSION**

Steele, Hansmeier, Duffy, Gibbs, Prenda Law, AF Holdings, and Ingenuity 13 shall pay, within 14 days of this order, attorney's fees and costs totaling $81,319.72 to Doe. The Court enters additional nonmonetary sanctions in accordance with the discussion above.

**IT IS SO ORDERED.**

May 6, 2013

/s/ Otis D. Wright, II

**OTIS D. WRIGHT, II**

**UNITED STATES DISTRICT JUDGE**

◆ Positive
As of: July 22, 2017 12:50 AM Z

# Exhibit 2

## *AF Holdings LLC v. Navasca*

United States District Court for the Northern District of California, Eureka Division

September 16, 2013, Decided; September 16, 2013, Filed

Case No. 12-cv-02396-EMC (NJV)

**Reporter**

2013 U.S. Dist. LEXIS 149156 *

AF HOLDINGS LLC, Plaintiff, v. JOE NAVASCA, Defendants.

**Subsequent History:** Adopted by, Sanctions allowed by *AF Holdings LLC v. Navasca, 2013 U.S. Dist. LEXIS 149169 (N.D. Cal., Oct. 16, 2013)*

**Prior History:** [*1] Re: Dkt. No. 93.

*AF Holdings LLC v. Navasca, 2013 U.S. Dist. LEXIS 15617 (N.D. Cal., Feb. 5, 2013)*

## Core Terms

undersigned, attorneys, district court, Principals, sanctions, evidentiary hearing, Holdings, settlement, litigated, recording, entities, Video, cases, recommends, lawsuits, issues, rebut, motion for sanctions, judgment debtor, fees and costs, individuals, downloaded, documents, parties, rights, adult, phone, ego, report and recommendation, copyright infringement

**Counsel:** For AF Holdings LLC, Plaintiff: Paul Duffy, LEAD ATTORNEY, Law Offices of Paul Duffy, Chicago, IL.

For Joe Navasca, Defendant: Morgan E. Pietz, The Pietz Law Firm, Manhattan Beach, CA; Nicholas Ranallo, Attorney at Law, Boulder Creek, CA.

For Putative John Doe in Related Case, Miscellaneous: Morgan E. Pietz, The Pietz Law Firm, Manhattan Beach, CA.

**Judges:** NANDOR J. VADAS, United States Magistrate Judge.

**Opinion by:** NANDOR J. VADAS

## Opinion

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SANCTIONS

The district court referred defendant Joe Navasca's motion for sanctions against attorneys John Steele and Paul Hansmeier to the undersigned for a report and recommendation. Doc. No. 96. Based on the papers filed in this matter, the arguments of the parties, and the evidence produced at the hearing, and for the reasons set forth below, the court recommends denying Navasca's motion for sanctions and issuing an order to show cause why the judgment for attorneys' fees and costs should not be amended to add Steele and Hansmeier as debtors.

### BACKGROUND

Plaintiff AF Holdings LLC ("AF") is an entity that purports to own the copyrights to various adult films. Some of these adult films have been uploaded to BitTorrent, [*2] a file-sharing site, and then reposted and/or downloaded by others. AF has filed hundreds of copyright infringement lawsuits against thousands of John Does whom (AF alleges) illegally downloaded its copyrighted property. Judge Wright, who presided over one of these infringement actions in the Central District of California, made the following findings of fact:

> 1. Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this enterprise and formed the AF Holdings and Ingenuity 13 entities (among other fungible entities) for the sole purpose

of litigating copyright infringement lawsuits. They created the entities to shield the Principals from potential liability and to give an appearance of legitimacy.

2. AF Holdings and Ingenuity 13 have no assets other than several copyrights to pornographic movies. There are no official owners or officers for these two offshore entities, but the Principals are the de facto owners and officers.

4. . . . . Most defendants settled with the Principals, resulting in proceeds of millions of dollars due to the numerosity of defendants. These settlement funds resided in the Principals' [*3] accounts and not in accounts belonging to AF Holdings or Ingenuity 13. No taxes have been paid on this income.

5. For defendants that refused to settle, the Principals engaged in vexatious litigation designed to coerce settlement. . .

6. The Principals have shown little desire to proceed in these lawsuits when faced with a determined defendant. Instead of litigating, they dismiss the case. When pressed for discovery, the Principals offer only disinformation — even to the Court . . .

8. The Principals maintained full control over the entire copyright-litigation operation. The Principals dictated the strategy to employ in each case, ordered their hired lawyers and witnesses to provide disinformation about the cases and the nature of their operation, and possessed all financial interests in the outcome of each case.

9. The Principals stole the identity of Alan Cooper . . . The Principals fraudulently signed the copyright assignment for "Popular Demand" using Alan Cooper's signature without his authorization, holding him out to be an officer of AF Holdings. Alan Cooper is not an officer of AF Holdings and has no affiliation with Plaintiffs other than his employment as a groundskeeper for Steele. [*4] There is no other person named Alan Cooper related to AF Holdings or Ingenuity 13.

11. Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to

misstatements to outright lies. . .

*Ingenuity 13 v. Doe, 2013 U.S. Dist. LEXIS 64564 at \*2-3 (C.D. Cal. May 6, 2013)* ("*Ingenuity 13*"). As discussed further below, the undersigned adopts Judge Wright's findings. *See infra* at 10-12.

AF filed the case at bar, asserting it was the "exclusive holder of the relevant rights with respect to" an adult video title (the "Video"), "after receiving the rights to this Video pursuant to an assignment agreement, a true and correct copy of which" AF attached to its complaint. Doc. No. 1, ¶¶ 2-3, 19 & Ex. B. The assignment agreement was entered into between Heartbeat Digital LLC (the assignor) and "Alan Cooper", as assignee on behalf of AF. *Id*., Ex. B. Based on the assignment, AF asserted it had standing to pursue this copyright action. AF obtained early discovery and identified "Jovino Navasca" ("Jovino") as the ISP subscriber [*5] associated with the IP address that AF had determined illegally downloaded the Video. *See* Doc. No. 22 at 8. AF originally sent two letters to Jovino, demanding thousands of dollars as payment to avoid litigation. *Id*. When Jovino refused to settle, AF sent a third settlement letter to Jovino's son, Joe Navasca ("Navasca"). *Id*. When Navasca refused to settle, AF filed the Amended Complaint, identifying Navasca as the alleged infringer. Doc. No. 13. The Amended Complaint restates the allegations that AF "is the exclusive rights holder with respect to BitTorrent-based reproduction and distribution of the Video;" and that Plaintiff received the rights to this Video pursuant to an assignment agreement, a true and correct copy of which" AF attached as Exhibit B to the Amended Complaint. Doc. No. 13, ¶¶ 18-19, Ex. B. Both the original and the Amended Complaint were signed by Brett Gibbs, attorney for AF.

AF filed a Corporate Party Disclosure and Certificate of Interested Entities pursuant to *Civil Local Rule 7.1*, in which it represented that no such interested entities existed. Doc. No. 2.

Navasca answered the complaint, denying the allegations, and also filed a motion to require AF to post [*6] an undertaking under *California Code of Civil Procedure § 1030*. *See* Doc. Nos. 20, 22. Pursuant to *Section 1030*, "[w]hen the plaintiff in an action or special proceeding resides out of state, or is a foreign corporation, the defendant may at any time apply... for

an order requiring the plaintiff to file an undertaking to secure an award of costs and attorney's fees" the defendant may be entitled to an order requiring security if "there is a reasonable possibility that the moving defendant will obtain judgment in the action." AF is a foreign corporation, and the district court found there was a reasonable possibility Navasca would obtain judgment. Navasca supported his motion with an affidavit by Alan Cooper filed in another case, who explained how he knew Steele, denied performing any role in or on behalf of AF, and denied ever allowing Steele to use his name or sign documents on his behalf. Doc. No. 22-7 (Ex. G); *see also* Doc. No. 22-6 (Ex. F (letter from Cooper's attorney)); *see also* Doc. No. 84-2 at 19:23-25, 21:6-37:15 (testimony of Alan Cooper in *Ingenuity 13*). Finding that AF's evidence of infringement was "weak," the district court granted the motion and required AF to post a  [*7] $50,000 bond. Doc. No. 51 at 11. However, the district court stayed its ruling to allow AF to file a motion for reconsideration on the order requiring an undertaking.

Instead of moving for reconsideration or providing the required undertaking, AF moved to dismiss the action, without prejudice. Doc. No. 62. Navasca opposed that motion, asking the district court to dismiss the action with prejudice. Doc. No. 66. Judge Chen dismissed AF's action with prejudice because a dismissal without prejudice would be unfair to Navasca. Doc. No. 76. He found that AF was "seeking to dismiss the case in order to avoid an adverse determination on the merits as well as the effect of other unfavorable, though not necessarily, dispositive rulings of this Court." *Id*. at 5. Judge Chen also reiterated some of the more glaring weaknesses in AF's case, including the "Alan Cooper problem," and AF's vexatious use of discovery motions.

Navasca then moved to recover his attorneys' fees and costs. In his motion for attorneys' fees, Navasca offered evidence that the "Alan Cooper" assignment was forged. AF argued there was no forgery but declined to offer anything but "sheer speculation" to support its position. Doc.  [*8] No. 100 at 3. The district court found that Navasca "completely prevailed in the instant case"; the case was "frivolous and objectively unreasonable"; AF apparently lacked standing to bring suit and its pre-filing investigation was inadequate; and that AF developed a "business model that is not intended to protect copyrighted work but instead designed to generate revenues through suits and coerced settlements." Doc. No. 100. Judge Chen awarded Navasca $19,420 in fees and $3,112 in costs. *Id*. at 9. As of the August 28, 2013 evidentiary hearing, AF had not paid these fees and costs.

Navasca filed the instant motion for sanctions, asking that Steele and Hansmeier be held liable for the full sum awarded by the district court. Navasca served Steele and Hansmeier with courtesy copies of the motion papers by mail and also by email. Doc. No. 93 at 25. The district court referred the matter to the undersigned for a report and recommendation. Doc. No. 96. The undersigned scheduled an evidentiary hearing and issued an order directing the parties to be prepared to address and present evidence regarding certain topics. Doc. No. 103.

**FINDINGS OF FACT**

On August 28, 2013, the undersigned held an evidentiary  [*9] hearing.

Paul Duffy appeared as counsel for AF. Although Duffy informed the court that AF's CEO, Mark Lutz, would appear to testify, Lutz did not appear. Nor did any other witness appear for AF. AF presented limited documentary evidence. Duffy interpreted these documents to suggest that Brett Gibbs (former attorney for AF) was the *eminence grise* behind AF's extortion scheme, and attempted to use the evidence to attack Gibbs' character and rebut his testimony.

Nicholas Ranallo appeared as counsel for Navasca, and presented two witnesses: Gibbs and Delvan Neville. Neville was hired by Navasca as an expert in another case. Given the procedural posture of this case, however, Neville was never qualified as an expert witness in this matter. The undersigned accordingly limited Neville's testimony to that of a lay witness. Navasca presented evidence establishing the following facts:

(1) Paul Hansmeier and John Steele are attorneys, former partners in Steele Hansmeier and "principals" of Prenda Law, Inc. For all material purposes here, Prenda Law, Inc. is a mere continuation of Steele Hansmeier. (Steele Hansmeier formally dissolved and Prenda attorneys entered substitutions of counsel in active  [*10] cases.) Brett Gibbs testified that Hansmeier

# Exhibit 2

and Steele continue to perform the same roles at Prenda that they had performed at Steele Hansmeier, and that business continued to operate in the same manner. *See also* Defendant's Ex. H (Notice of Firm Name Change filed in another case in this district, which informs the court that "Plaintiff's counsel's law firm has changed names from 'Steele Hansmeier PLLC' to 'Prenda Law Inc.'. . . all other identifying information associated with Plaintiff's counsel, Brett L. Gibbs - i.e. his physical address, email address, and phone number - remains the same"). This is also one of the findings Judge Wright made (*see supra, no. 1*).

(2) Gibbs testified that Steele Hansmeier and Prenda Law originally represented actual producers of adult films in copyright infringement cases. In 2012, Steele told Gibbs that he wanted to become a company that would solely enforce copyright claims for its own intellectual property holdings. Steele told Gibbs that AF and Ingenuity 13 would be owned by "Livewire" and would file their own copyright infringement cases. Gibbs testified that, as time went on, he was instructed to file more cases on behalf of AF and Ingenuity [*11] 13 than any other producer of adult films which Steele and Hansmeier had previously represented. Gibbs further testified that it was "common practice" for AF to file lawsuits and obtain summonses, while it was rare for the other producers he represented.

(3) Gibbs was "Of Counsel" for Prenda Law, Inc., and represented AF in this action until February 26, 2013, when Duffy substituted in as counsel. *See* Doc. No. 64. Gibbs testified that Steele and Hansmeier directed his litigation activities in cases filed by AF, including this one. *See also* Doc. No. 94 (Gibbs Decl.) at ¶ 3. Judge Wright made the same finding (*see supra, no. 8*). Gibbs testified that he conferred weekly with Steele and Hansmeier to discuss active AF cases. Navasca introduced evidence of hundreds of phone calls between Gibbs, Steele and Hansmeier starting in December 2011 and ending in March 2013, supporting this testimony (Defendant's Exs. A & B). Gibbs confirmed that the phone numbers appearing in the exhibits were his and the phone numbers of Steele and Hansmeier. Gibbs also highlighted several phone calls with Hansmeier on November 30, 2012,

which coincided with the date of the Case Management Conference held in this [*12] matter (*see* Doc. No. 21), and confirmed that he spoke with Hansmeier about the case. AF attempted to attack Gibbs' testimony by presenting an affidavit he had filed in another case, where Gibbs represented himself as an attorney who worked "Of Counsel" for Prenda; litigated copyright lawsuits for Prenda Law; and advised and educated other attorneys working with Prenda Law, as well as Prenda's clients. Plaintiff's Ex. 1. AF also introduced affidavits filed by other attorneys who represented AF and described Gibbs as their point of contact for AF. Plaintiff's Exs. 2, 4. However, these declarations do not rebut Gibbs' testimony that Steele and Hansmeier alone communicated with their purported client, and that they directed Gibbs' litigation strategy. The declarations actually corroborate Gibbs' testimony: he communicated with local counsel for AF, essentially acting as a go-between for Steele and Hansmeier. AF further attempted to attack Gibbs' testimony by pointing out that Gibbs and Hansmeier were friends from college, and therefore must have spoken on the phone about personal matters. And finally, AF attempted to undercut Gibbs' credibility by offering "evidence" that Gibbs had "cut [*13] a deal" with defendants in various AF cases and thus could not be trusted. The undersigned is not at all persuaded by AF's arguments and finds that Gibbs' testimony is credible, supported by the record, and supported by the evidence admitted during the evidentiary hearing.

(4) AF's standing in this action is based solely on an assignment by Heartbreaker Digital LLC of certain rights in the Video to AF, which was purportedly executed by Alan Cooper on behalf of AF. Doc. No. 1, Ex. B (the "Assignment"). The Assignment is dated December 20, 2011. *Id*.

(5) Navasca introduced into evidence the testimony of Alan Cooper in *Ingenuity 13* (Defendant's Ex. L). Cooper denied acting in any capacity on behalf of AF, or signing the Assignment. *Id*. at 27-29.

(6) Gibbs testified that when the "Alan Cooper" issue first arose in November 2012, he asked Hansmeier for an explanation. He testified that Hansmeier reassured him, and told him the

2013 U.S. Dist. LEXIS 149136; *13

# Exhibit 2

brouhaha was just "conspiracy theories." *See also* Doc. No. 94, ¶ 6. Gibbs testified that Hansmeier also stated that "even if there was an issue" with [*14] Alan Cooper, it was not a problem because the assignee of the copyright did not need to sign to make the assignment effective.

(7) Navasca introduced evidence of two audio recordings, which were played during the hearing. The first was a recording produced by GoDaddy.com, which registered the domain name for dangerousxxx.com. *See* Defendant's Ex. D. The caller identifies himself in the recording as "Alan Cooper" and asks the customer service representative for help in resetting the password to his account; he eventually asks the customer service representative to send the password reset information to johnlsteele@gmail.com, an address on the account. Gibbs testified that the voice of the caller is in fact that of Steele, whom he knows personally and whose voice he recognizes. Gibbs testified he had used that email address from his Prenda Law firm account to contact Steele. In the second recording, the caller identifies himself as "Mark Lutz," but once again, Gibbs testified that the caller was in fact Steele. Defendant's Ex. E. AF objected to the introduction of the audio recordings and to Gibbs' testimony thereon, but the undersigned found Gibbs laid a sufficient foundation and could [*15] testify as a lay witness that he recognized the voice as that of Steele. The copies of the audio recordings were also authenticated by GoDaddy (Defendant's Ex. C (certificate of authenticity)).

(8) Based on Alan Cooper's testimony, which the undersigned admitted into evidence, and on the evidence that Steele impersonated Cooper in the GoDaddy recording, the undersigned finds that Steele impersonated Cooper to further the copyright litigation scheme. Judge Wright also found that Steele and/or Hansmeier stole the identity of Alan Cooper (*see supra, no. 9*).

(9) In its Corporate Party Disclosure, AF represented there were no persons or entities that had a financial interest in the matter being litigated. Doc. No. 2. But AF is in fact wholly owned by Salt Marsh, a St. Kitts and Nevis trust. Doc. No. 80. At the hearing, Duffy represented (but did not testify)

that Lutz was the sole managing member of Salt Marsh, and that the trust had undefined beneficiaries (Lutz's non-existing children). Duffy surmised that AF did not disclose any interested parties because the trust was not a company or individual for purposes of corporate disclosures. Judge Wright found that the Principals are de facto [*16] owners and officers of AF Holdings (*see supra, no. 2*).

(10) Gibbs signed ADR disclosures in this case on behalf of Salt Marsh after being told by Hansmeier that Salt Marsh was AF's client and had reviewed the documents. Gibbs testified that he asked Hansmeier whether Salt Marsh was a real person, and that Hansmeier assured him Salt Marsh was. *See also* Doc. No. 94, ¶ 5.

(11) AF served its *Rule 26* disclosure in this case on December 3, 2012. AF identified Lutz as an individual having "knowledge of the assignment agreement attached as an exhibit to the complaint, distribution, and infringement of Plaintiff's works." Doc. No. 93-4. Lutz has been variously identified as the corporate representative and CEO of AF. No one else appears to work for AF.

## DISCUSSION

### A. AF failed to rebut any of the evidence Navasca presented to this Court, and failed to oppose the majority of Navasca's arguments.

Even after the excoriating decision Judge Wright issued in *Ingenuity 13*, and the troublesome findings Judge Chen made in his order awarding attorneys' fees to Navasca, AF chose not to oppose the majority of the arguments in Navasca's motion for sanctions. Instead, AF introduced immaterial issues in its opposition, [*17] attacked its former counsel Gibbs, and attacked Navasca's counsel. *See* Doc. No. 98. AF addressed the "Salt Marsh" issue and the working relationship between AF's former counsel Gibbs and its CEO/manager/sole employee Lutz. *See* Doc. No. 98 at 4-10. However, AF failed to oppose Navasca's arguments that Steele and/or Hansmeier (1) manufactured Cooper's involvement in AF and forged his signature; (2) were in cahoots with the computer forensic experts who identified the alleged illegal downloaders that AF then sued; and (3) themselves uploaded the Video to Pirate Bay to induce others to

2013 U.S. Dist. LEXIS 149156; *17

download the Video. AF failed to offer any evidence to rebut Navasca's evidence establishing these points. AF's counsel attacked the affidavit of Delvan Neville, who explains how he determined that John Steele or someone with access to Steele's GoDaddy account uploaded the copyrighted works that form the basis of AF's lawsuits to BitTorrent swarms in order to induce infringement. Doc. No. 98 at 10-11. But AF did not actually rebut the evidence Neville presents. Instead of grappling with these admittedly difficult accusations, AF "respectfully request[ed] that to the extent the Court deems one or more to **[*18]** be relevant in any respect, that it identify those matters and allow Plaintiff opportunity to respond and present evidence to contradict them." Doc. No. 98 at 10. AF's counsel is apparently not familiar with the rules of federal procedure, or with basic principles of motion practice.

During the evidentiary hearing, AF was similarly unwilling or unable to rebut any of the evidence Navasca offered. It failed to present a single witness to rebut the evidence set forth above. It also failed to present a witness to address the issues the undersigned had ordered AF should be prepared to address at the hearing (*see* Doc. No. 103). In violation of the court's order, AF did not present any witness to address these topics. AF did attempt to submit a declaration from John Steele on the day of the evidentiary hearing (Doc. No. 104-9), and another by Mark Lutz the following week (Doc. No. 108), but the undersigned denied AF's *ex parte* motions to do so (Doc. No. 109). [1]

**B. The court adopts Judge Wright's findings concerning the relationship between AF, Steele, and Hansmeier.**

Issue preclusion bars AF, Steele and Hansmeier from re-litigating the findings of fact Judge Wright made in *Ingenuity 13* regarding their alter ego relationship, their conduct, and their business model. *See generally Syverson v. IBM, 461 F.3d 1147, 1153-54 (9th Cir.*

2006)* (setting forth standard for application of non-mutual offensive collateral estoppel under federal law). A party is precluded from re-litigating issues when (1) there was a full and fair opportunity to litigate the identical issue in the previous case; (2) the issue was actually litigated; (3) the issue was decided in a final judgment; and (4) the person against whom issue preclusion is being asserted in the present action was a party or in privity with a party in the previous action. *Id.* (internal citations omitted). AF only contests whether Steele and Hansmeier had a full opportunity to be **[*20]** heard. *See* Doc. No. 106 at 9-14 (AF also contests whether the issue was "necessarily" decided, but that is not a factor in this analysis. AF also asks the court to adopt a different test based on out-of-circuit authority (*id.*), but the undersigned will follow Ninth Circuit law on this issue.) Navasca has established that all four elements are satisfied with respect to Judge Wright's findings listed above.

First, AF, Steele and Hansmeier all had a full and fair opportunity to litigate these very issues in *Ingenuity 13*. AF was one of the plaintiffs in that action. Judge Wright initially ordered only Gibbs to appear and "explain why he ignored the Court's discovery-stay Order, filed complaints without reasonable investigation, and defrauded the Court by asserting a copyright assignment secured with a stolen identity." *Ingenuity 13, 2013 U.S. Dist. LEXIS 64564 at *3*. During the course of that hearing, Wright determined he needed answers from others involved in the "porno-trolling collective" and ordered numerous people, including Alan Cooper, Steele and Hansmeier to appear. *Id.* Steele and Hansmeier retained counsel to appear on their behalf at the March 11, 2013 evidentiary hearing, and **[*21]** upon finding that the Steele and Hansmeier had ignored his order, Judge Wright did not let their attorney speak on the record. *See* Doc. No. 84-2 (March 11, 2013 Tr.) at 5-7. Alan Cooper appeared and testified. *Id.* at 21-38 (the undersigned admitted Cooper's testimony into evidence as Defendant's Ex. L). Judge Wright then issued a second order requiring Steele and Hansmeier to appear. Doc. No. 93-17 (Ex. Q), at Ex. C. Judge Wright set forth several topics he intended to address at the hearing, including the relationship between Steele, Hansmeier, and AF, and the financial interest Steele and Hansmeier might have in the litigation. *Id.* Hansmeier and Steele appeared on April 2, 2013, but declined to answer any of Judge Wright's questions, instead asserting their *Fifth*

---

[1] AF filed an *ex parte* application to offer an affidavit by Lutz, under seal. *See* Doc. No. 108. The undersigned denied the application. Doc. No. 109. Lutz filed a second *ex parte* application to submit an affidavit *in camera* to explain **[*19]** why he failed to appear at the August 28, 2013 hearing, which the undersigned denied. *See* Docs. Nos. 111 & 112. If the district court adopts this report and recommendation, it may give Lutz an opportunity to address this issue.

*Amendment* rights against self-incrimination. Doc. No. 106 at 6. Thus, Judge Wright did give AF, Steele, and Hansmeier a full and fair opportunity to be heard. AF now complains that Steel and Hansmeier did not have the opportunity to cross-examine Cooper because Judge Wright did not let their attorney do so on March 11, 2013. *Id*. Any prejudice they might have suffered as a result was caused by their own gamesmanship and failure **[*22]** to appear at the hearing in violation of Judge Wright's order.

Second, the relationship between AF, Steele and Hansmeier, their conduct, and their business model were all issues that were actually litigated. Indeed, Judge Wright adopted into his findings a chart describing the relationship between these individuals and other associated with Prenda Law. *2013 U.S. Dist. LEXIS 64564 at *13*. Judge Wright specifically ordered Steele and Hansmeier to appear and testify because Gibbs represented that these individuals had controlled his litigation activities, and Judge Wright wanted to determine whether they were "culpable" for Gibbs' conduct. *Id. at *3*. Wright's sanctions order was based on his finding that Hansmeier and Steele were culpable, and thus the nature of their control over Gibbs' action was necessary to his award of sanctions.

Third, the sanctions order, which was based on Judge Wright finding that Steele and Hansmeier controlled Gibbs' conduct and were responsible for various frauds on the court, was a final judgment on the merits, which Steele and Hansmeier are appealing to the Ninth Circuit. AF does not contest this.

Finally, AF was a party in the action, and AF, Steele and Hansmeier **[*23]** all were parties in the sanctions proceedings in *Ingenuity 13*. In addition, based on the findings above, Steele and Hansmeier also were in privity with AF in *Ingenuity 13* and here.

Issue preclusion is appropriate here, and the undersigned therefore adopts the findings made by Judge Wright in *Ingenuity 13* regarding the relationships between AF, Gibbs, Steele and Hansmeier.

**C. The undersigned gave AF the opportunity to be heard and clarify that it was not a shell company created solely to shield Steele and Hansmeier from liability.**

"'Alter ego is a limited doctrine, invoked only where recognition of the corporate form would work an *injustice* to a third person.' [Citations.] The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory." *Katzir's Floor & Home Design, Inc. v. M-MLS.com, 394 F.3d 1143, 1149 (9th Cir. 2004)* (emphasis in original) (quoting *Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th 1269, 31 Cal. Rptr. 2d 433 (Cal. App. 1994)* listing examples of the "critical facts" needed to establish that it would be inequitable to respect separate corporate identities "as inadequate capitalization, **[*24]** commingling of assets, [or] disregard of corporate formalities")).

The undersigned ordered AF to be prepared to discuss a number of issues at the evidentiary hearing (Doc. No. 103), including:

> (1) the name of its owner and any entity or person having a financial interest in the outcome of this case, beyond Salt Marsh;
> (2) "the exact mechanisms by which the money goes" to AF Holdings from the law firms that represent it;
> (3) account for the funds AF has received from persons it has sued or threatened to sue for copyright violation based on allegedly illegal downloading of its adult titles.

The answers to these questions would allow the court to determine whether piercing the corporate veil of AF was appropriate. AF chose not to present any witness at the evidentiary hearing, continuing its campaign of obfuscation.

**D. Steele and Hansmeier can be held personally liable for the attorneys' fees and costs.**

Navasca contends that sanctions are appropriate under both the court's inherent power and *28 U.S.C. § 1927*. The undersigned finds that neither of these applies here, but instead recommends that the judgment be amended pursuant to *Federal Rule of Civil Procedure 69(a)* and *California Code of Civil Procedure § 187* **[*25]** to add Steele and Hansmeier as judgment debtors on the award for attorneys fees and costs.

**1. The district court's inherent power.**

2013 U.S. Dist. LEXIS 149156, *25

Under the Court's inherent authority, parties and their lawyers may be sanctioned for improper conduct. *Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001)*. This inherent power extends to a full range of litigation abuses, the litigant must have engaged in bad faith or willful disobedience of a court's order. *Id. at 992*. Sanctions under the Court's inherent authority are particularly appropriate for fraud perpetrated on the court. See *Chambers v. NASCO, Inc., 501 U.S. 32, 54, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)*.

*Ingenuity 13, 2013 U.S. Dist. LEXIS 64564, at \*4-\*5*. Navasca has established that Steele and/or Hansmeier forged Cooper's signature on the Assignment and continued to misrepresent Cooper's involvement in AF's business activities even after the matter was raised before Judge Chen. Navasca produced the testimony of Cooper, who denies that he executed the Assignment or played any role at AF. Instead of providing any explanation for the "Alan Cooper" problem or offering any evidence to rebut Navasca's accusation, AF maintained numerous times that the "Alan Cooper" issue [*26] was manufactured by Navasca's counsel. Navasca subsequently produced a recording establishing that Steele on at least one occasion represented to a customer sales representative that he was Cooper (Defendant's Ex. D). Navasca has established that Steele and Hansmeier directed Gibbs' litigation conduct, which included filing a number of documents in this matter that Steele and/or Hansmeier knew were forged or contained misrepresentations. The undersigned finds that there is ample evidence before the court that Steele and Hansmeier engaged in bad faith conduct, and perpetrated fraud upon the court.

However, it does not appear that the district court presently has personal jurisdiction over Steele and Hansmeier for purposes of imposing sanctions on them. Judge Wright did not specifically address the basis for personal jurisdiction over Hansmeier and Steele, but the undersigned notes that Judge Wright issued orders to show cause requiring these individuals to appear and ordered Gibbs to serve Steele and Hansmeier with a copy of his second order to show cause. See Doc. No. 93-17 (Ex. Q), at Ex. C. Steele and Hansmeier did eventually appear before Judge Wright. Although Hansmeier was deposed [*27] as the *Fed. R. Civ. P. 30(b)(6)* deponent for AF, neither Steele nor Hansmeier

has appeared before the court in this matter. Navasca served Hansmeier and Steele with courtesy copies of his motion for sanctions by mail to addresses in Florida and Minnesota (and by email), but he did not subpoena Hansmeier and Steele to require their presence at the evidentiary hearing. Navasca has provided no authority that would allow the undersigned to find that the district court has personal jurisdiction over these two non-parties, who are not the attorneys of record for AF in this case, are not admitted to practice before this court, and who were served by mail with the motion for sanctions. For this reason, the undersigned recommends that the district court deny Navasca's motion to award sanctions under the court's inherent power. [2]

## 2. *28 U.S.C. § 1927*.

*Section 1927* empowers [*28] courts to sanction "any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." From the moment Steele and/or Hansmeier forged Alan Cooper's signature on the Assignment, to the numerous times AF's attorneys (Gibbs and Duffy) represented to the court that the signature was not a forgery, and to AF's repeated failures to present any evidence to refute the testimony and declaration of Alan Cooper, AF's attorneys have "unreasonably and vexatiously" multiplied the proceedings in this case. But neither Steele nor Hansmeier have appeared in this action as attorneys.

Finding no authority directly on point, the undersigned asked Navasca to provide authority for the proposition that these individuals nonetheless could be held liable under *Section 1927*. Doc. No. 103. Navasca cited *In re Kinney, 51 B.R. 840 (Bankr. C.D. Cal. 1985)*, for the proposition that an attorney who is not of record can be sanctioned pursuant to *Section 1927*. [*29] *In re Kinney* is inapposite for several reasons. *In re Kinney* "principally involve[d] one attorney, one family, one

_____

[2] The undersigned finds that Navasca has established the substantive merits of his motion for sanctions under the district court's inherent power. The recommendation to deny sanctions is based solely on the finding that the district court lacks personal jurisdiction over Steele and Hansmeier due to insufficient service of process.

piece of real property, one transfer, but ten *ad seriatim* [bankruptcy] case filings." The creditor filed an action to validate the foreclosure sale of the property and sought sanctions against the debtor and his attorney. The attorney had been the attorney of record for most of the bankruptcies at issue. The court awarded sanctions in the creditor's action to validate the foreclosure against the attorney who had been the attorney in the bankruptcy actions. The sanctions were based on all the bankruptcies, even those for which she was not attorney of record, because the court found that that the attorney had advised the parties in connection with those bankruptcies, too. Although Navasca has established that Steele and Hansmeier were the ringleaders of a similarly abusive scheme, they are not attorneys of record in any related case before the district court.

The undersigned recommends denying Navasca's motion for sanction under *28 U.S.C. § 1927*.

**3. The judgment can be amended to add Hansmeier and Steele as debtors.**

The district court may amend its award for attorneys' fees [*30] and cost to add Hansmeier and Steele as additional judgment debtors. *In re Levander, 180 F.3d 1114, 1120-21 (9th Cir. 1999)* is directly on point. In *Levander*, a bankruptcy court applied *California Code of Civil Procedure § 187* to amend an award for attorneys' fees to add an additional judgment debtor who was the alter ego to the original debtor. *Id*. [3] The district court reversed the decision for lack of jurisdiction. The Ninth Circuit reversed the district court, with directions to affirm the bankruptcy court. Finding the amendment proper, the Ninth Circuit noted that an amendment pursuant to Section 187 "is merely inserting the correct name of the real defendant" and therefore, adding a party after the judgment is entered does not present due process concerns. *Id. at 1122*.

A Section 187 amendment requires "(1) that the new party be the alter ego of the old party and (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns." *Id. at 1121*; *see also Katzir, 394 F.3d at 1149-50* (due process [*31] requires that "[a] prior

judgment against a corporation can be made individually binding on a person associated with the corporation only if the individual to be charged . . . had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved") (internal citations and quotations omitted). Section 187 is "an equitable procedure that binds new individual defendants where it can be demonstrated that in their capacity as alter ego of the corporation they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit." *Katzir, 394 F.3d at 1148* (internal citations and quotations omitted); *see also Greenspan v. LADT, LLC, 191 Cal. App. 4th 486, 508, 121 Cal. Rptr. 3d 118 (2010)* ("In light of the requirements that the proposed judgment debtors have had control of the underlying litigation and have been virtually represented, it is something of a misnomer to say that section 187 provides a method by which to bind new ... defendants to the judgment. More accurately, the statute properly designates the real defendants. Simply put, section 187 recognizes the inherent authority of a court to make its records speak [*32] the truth") (internal citations and quotations omitted).

Creditors need not establish that all the formal requirements of the alter ego doctrine apply when proceeding under Section 187, only that the "equitable principles regarding alter ego" are present and that the added judgment debtor "fit[s] within the theory underlying amendment of a judgment based on alter ego liability." *Levander, 180 F.3d at 1121-22* (following *Carr v. Barnabey's Hotel Corp., 23 Cal. App. 4th 14, 28 Cal. Rptr. 2d 127 (1994))*.

Navasca has established by a preponderance of the evidence that the requirements of Section 187 apply:

First, he established that Steele and Hansmeier controlled the underlying litigation: they created AF for the purpose of filing this type of lawsuit; they hired Gibbs, directed his litigation decisions, and kept in weekly contact with him regarding AF's litigation; they reassured him when he raised questions regarding the validity of the Assignment and the Alan Cooper problem; they told him Salt Marsh was a real person, leading him to file documents signed on behalf of Salt Marsh; they were the only ones to work with the "client." *See supra* at 5-9.

---

[3] Federal courts may use state procedures of the state in which they sit to enforce a judgment. *Fed. R. Civ. P. 69(a)*.

# Exhibit 2

Second, Judge Wright's findings (which AF, Steele and Hansmeier **[\*33]** are precluded from re-litigating) establish that Steele and Hansmeier are the alter egos of AF (*see supra, nos. 1-2, 4, 8*). They share a unity of interest and ownership; they acted as attorneys for AF behind the scenes and dictated all litigation decisions; AF was undercapitalized (indeed, it had no assets as the settlement proceeds never left Steele and Hansmeier's accounts); they kept all litigation proceeds AF "earned"; and AF was a mere shell created to shield Hansmeier and Steele from liability. *See Bank of Montreal v. S.K. Foods LLC, 476 B.R. 588, 597-98 (N.D. Cal. 2012)* (listing these as relevant factors courts consider when examining alter ego liability).

The evidence adduced at the August 28, 2013 evidentiary hearing confirms Judge Wright's findings. AF's failure to refute that evidence with any of its own also speaks volumes. Although the undersigned ordered AF to be prepared to explain at the hearing the money trail and provide an accounting of the funds it received from copyright infringement actions or settlements, AF failed to present a witness who could do so or documents that might shed light on these issues. During the evidentiary hearing, Duffy represented to the undersigned **[\*34]** (but did not testify) that it was his belief that the settlement or litigation proceeds were held in IOLTA trust accounts by AF's attorneys (including Prenda Law, formerly known as Steele Hansmeier). Duffy also represented as a "fact" to this court that a settlement check in another matter was written to Prenda Law. *See Doc. No. 106 at 7*. However, no witness testified regarding whether any of the funds ever left Prenda's trust account(s). Thus, there is no evidence before the undersigned that any settlement or litigation proceeds ever reached AF.

Even if the district court were to find that these factors were not sufficient to establish alter ego liability, adding Steele and Hansmeier as judgment debtors "fits within the theory" underlying Section 187. *See Levander, 180 F.3d at 1121-22*. An injustice would result if Navasca was prevented from collecting the award of fees and costs because AF is an empty shell created by Steele and Hansmeier.

The undersigned thus finds that Navasca has established that Steele and Hansmeier should be added as debtors to the district court's judgment for attorneys' fees and costs

against AF. The undersigned accordingly recommends that the district court **[\*35]** issue an order to show cause why Steele and Hansmeier should not be added as judgment debtors pursuant to *Federal Rule of Civil Procedure 69(a)* and *California Code of Civil Procedure § 187* based on the above findings of fact.

## CONCLUSION

Because the district court appears to lack personal jurisdiction over Steele and Hansmeier, the undersigned cannot recommend that sanctions be imposed against these individuals. However, the undersigned recommends that the district court issue an order to show cause why Steele and Hansmeier should not be added as judgment debtors to the award for attorneys' fees and costs, as described above.

Any party may file objections to this report and recommendation with the district court within fourteen (14) days after being served with a copy. *See 28 U.S.C. § 636(b)(1)(B) & (C); Fed. R. Civ. P. 72(b); N.D. Civil L.R. 72-3*. Failure to file objections within the specified time may waive the right to appeal the court's order.

Dated: September 16, 2013

/s/ Nandor J. Vadas

NANDOR J. VADAS

United States Magistrate Judge

# Exhibit 3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AF HOLDINGS, LLC, | ) | Civil Action No. 1:12-cv-12105-JLT |
|  | ) |  |
| Plaintiff/Counterdefendant, | ) |  |
| v. | ) |  |
|  | ) |  |
| SANDIPAN CHOWDHURY, | ) |  |
|  | ) |  |
| Defendant/Counterplaintiff. | ) |  |

## FINAL JUDGMENT
## JOINTLY AND SEVERALLY AGAINST PLAINTIFF AND ITS ALIASES

Joseph L. Tauro, D.J.

Plaintiff AF Holdings, LLC having been found to be an alias of its counsel, Prenda Law, Inc., its principals, attorneys John L. Steele, Paul A. Duffy and Paul R. Hansmeier, and its paralegal, Mark Lutz (collectively, "Plaintiff");

having failed to post bond, plead or otherwise defend in this action and its default having been entered;

Now, upon application of Defendant Chowdhury and affidavit demonstrating that Plaintiff owes Defendant Chowdhury the sum of $64,180.80 that neither Plaintiff, its aliases nor its principals are infants or incompetent persons or in the military service of the United States, and that Defendant Chowdhury has incurred costs and attorney's fees in the sum of $21,393.60.

It is hereby ORDRED, ADJUDGED AND DECREED that Defendant Chowdhury recover jointly and severally from Plaintiff AF Holdings, Inc., Prenda Law, Inc., John L. Steele, Paul A. Duffy, Paul R. Hansmeier and Mark Lutz the principal amount of $21,393.60, with costs and attorney's fees trebled pursuant to M.G.L. c. 93(A) §9 for a total judgment of $64,180.80 with interest as provided by law.

Dated: _10/22/2013_.

By the Court,

*Rita Loretta*
*Courtroom Clerk*

~~NOTE: The effective pre and post judgment interest rate is 0.12%.~~

# Exhibit 4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL DUFFY and PRENDA LAW, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 13-cv-1569 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| PAUL GODFREAD, ALAN COOPER, and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Paul Duffy and Prenda Law, Inc. ("Prenda"), filed suit against Defendants

Paul Godfread, Alan Cooper, and ten John Does, in the Circuit Court of Cook County, Illinois,

on February 15, 2013. Godfread and Cooper removed this action to the Northern District of

Illinois on February 28, 2013, pursuant to 28 U.S.C. § 1332(a), on the basis of complete diversity

among the parties. On October 30, 2014, Defendants filed a Renewed Motion to Dismiss

Pursuant to the Minnesota Anti-SLAPP (Strategic Lawsuit Against Public Participation) Act

which was granted on April 9, 2015. Defendants have now filed a memorandum for damages

pursuant to Minnesota's Anti-SLAPP Act.

## BACKGROUND

The following facts come from Defendants' Minnesota Anti-SLAPP Memorandum [83],

Defendants' Second Amended Counterclaims [50] and Duffy's cCmplaint [50, Ex. A].

Defendant Cooper was caretaker of a property in Minnesota owned by John Steele from 2006 to

2012. (Countercl., ¶ 1.) John Steele was, at some point, a principal officer of Prenda and

# Exhibit 4

operating on their behalf. (*Id.* at ¶¶ 1-2.) *See also Lightspeed Media Corp. v. Smith*, No. 12-889-GPM, 2013 WL 6225093, at *3 (S.D. Ill. Nov. 27, 2013); *AF Holdings LLC v. Navasca*, No. C-12-2396-EMC, 2013 WL 5701104, at *2-3 (N.D. Cal. Sept. 16, 2013); *Ingenuity 13 LLC v. Doe*, No. 12-CV-8333-ODW, 2013 WL 1898633, at *2 (C.D. Cal. May 6, 2013). Cooper was told to contact Steele if anyone asked Cooper about Prenda. (Countercl. ¶ 3.)

On or about November 22, 2012, Cooper learned that Prenda was filing copyright infringement lawsuits in the name of AF Holdings[1] and that this entity claimed to have a CEO named Alan Cooper. (*Id.* ¶ 5.) Concerned about identity theft, Cooper contacted an attorney, Godfread, to assist in investigating this possible fraud. (*Id.* ¶ 8.) Godfread contacted AF Holdings' local counsel, Michael Dugas, to inquire about the supposed Alan Cooper serving as officer of AF Holdings, but Godfread received no response. (*Id.* ¶¶ 9-10.) Almost immediately after Godfread contacted Dugas, Steele began calling Cooper, asking Cooper if he had been consulting attorneys. (*Id.* ¶ 10.) Godfread never heard from Dugas, but rather from Duffy, who stated that he would not provide any information. (*Id.* ¶ 11.) Duffy further instructed Godfread to never contact Duffy's office again. (*Id.*) After trying unsuccessfully to garner information about the alleged Alan Cooper's identity, Godfread and Cooper served a complaint against Steele on January 25, 2013, in Hennepin County, Minnesota. (*Id.* ¶¶ 12-14.)

Within a few weeks of being served with the Minnesota complaint, Duffy, Prenda, and Steele filed complaints against Godfread and Cooper in Cook County, Illinois;

---

[1] AF Holdings, along with Ingenuity 13 and various other entities, has been found by courts to have been created by Duffy, Steele, and other individuals in order to further their copyright litigation. *See, e.g.*, *Ingenuity 13 LLC v. Doe*, No. 2:12-CV-8333-ODW, 2013 WL 1898633, at *2 (C.D. Cal. May 6, 2013).

# Exhibit 4

St. Clair County, Illinois; and Miami-Dade County, Florida.[2]  (*Id.* ¶ 16.)  These substantially

similar complaints alleged various claims, including defamation.  (Compl. ¶ 6.)  Duffy's

complaint cited the Minnesota complaint as a basis for defamation.  (*Id.*)  Steele additionally

threatened Cooper via a phone message, where he alluded to Cooper that his life was going to get

"complicated" due to the extensive litigation.  (Countercl. ¶ 23.)  Steele, Duffy, and Prenda

sought to conceal their copyright litigation scheme and their use of Cooper's name from Cooper

and Godfread through this and other litigation.  (*Id.* ¶ 46.)

## LEGAL STANDARD

Defendants moved to dismiss Plaintiffs' Complaint pursuant to the Minnesota Anti-

SLAPP Act ("the Act").  Minn. Stat. § 554.01, *et al.*  The Act permits a party who prevails on a

motion to dismiss under the Act to be awarded damages.  Minn. Stat. § 554.01.

## ANALYSIS

### *Attorney's Fees and Costs*

When a party brings a motion to dismiss pursuant to the Act, "[t]he court shall award a

moving party who prevails in a motion under this chapter reasonable attorney fees and costs

associated with the bringing of the motion."  Minn. Stat. § 554.04, Subd. 1.  Defendants Cooper

and Godfread filed their Renewed Motion to Dismiss Pursuant to the Minnesota Anti-SLAPP

Act [67] on October 30, 2014, which was granted on April 9, 2015.  Under the Act, a prevailing

movant is automatically entitled to its fees and costs associated with the bringing of the motion.

*See State Bank of Bellingham v. BancInsure, Inc.*, No. 13-CV-0900, 2014 WL 4829184, at *17

---

[2] Steele voluntarily dismissed the Florida suit after it was removed to federal court, and
both Illinois suits have been removed and condensed into this action.  The claims by Prenda and
Duffy against all Defendants were dismissed by this Court on April 9, 2015.  (Dkt. No. 81.)

# Exhibit 4

(D. Minn. Sept. 29, 2014). As Cooper and Godfread prevailed on their motion, they are awarded

reasonable attorney's fees and costs associated with bringing their Motion to Dismiss.

*Actual Damages*

The Act also allows the prevailing party to be awarded actual damages. Minn. Stat. §

554.04, Subd. 2(a). The statute provides that:

> [i]f a motion under this chapter is granted and the moving party demonstrates that
> the respondent brought the cause of action in the underlying lawsuit for the
> purpose of harassment, to inhibit the moving party's public participation, to
> interfere with the moving party's exercise of constitutional rights, or otherwise
> wrongfully injure the moving party, the court shall award the moving party actual
> damages.

*Id.* Defendants argue their actual damages consist of the attorney's fees and costs of litigating

this action because Plaintiffs brought the underlying lawsuit for the purpose of harassment, as

well as to inhibit Defendants' public participation. Defendants argue that Plaintiffs attempted to

stifle their public participation after learning Cooper planned to testify against Plaintiffs in the

Central District of California action regarding his stolen identity. They further argue that

Plaintiffs have harassed Cooper and Godfread via phone calls and the filing of three lawsuits in

the name of different parties in different jurisdictions.

Plaintiffs argue that attorney's fees and costs cannot be recovered as actual damages, as

they are separately recoverable under the Act. *See* Minn. Stat. § 554.04, Subd. 1. However, the

Act awards those attorney's fees and costs specifically in relation to the bringing of a motion to

dismiss. *Id.* Plaintiffs further argue that attorney's fees and costs are not considered actual

damages under the statute; however, they cite no authority supporting this proposition. Finally,

Plaintiffs argue that Defendant have not submitted sufficient evidence to meet their burden of

demonstrating Plaintiffs' harassing conduct or inhibition of public participation.

**Exhibit 4**

The purpose of the Minnesota Anti-SLAPP statute is to "protect[ ] citizens and organizations from civil lawsuits for exercising their rights of public participation in government." *Middle-Snake-Tamarac Rivers Watershed Dist. v. Stengrim*, 784 N.W.2d 834, 839 (Minn. 2010). As previously stated by this Court, "public participation can take place through the judicial branch." *Duffy v. Godfread*, No. 13-CV-1569, 2015 WL 1727148, at *2 (N.D. Ill. Apr. 9, 2015) (citing *Leinendecker v. Asian Women United of Minnesota*, No. A12-1978, 2014 WL 7011061, at *3 (Minn. Ct. App. Dec. 15, 2014), review denied (Feb. 25, 2015)). And Defendants' filing in Minnesota of their complaint against Steele was protected as public participation, as it was aimed at procuring favorable government action. *See Duffy v. Godfread*, 2015 WL 1727148 at *2.

Plaintiffs' filing of three lawsuits within weeks of Cooper's filing his Minnesota complaint is not coincidence. Indeed, the complaints filed by Prenda, Duffy, and Steele referenced the Minnesota action as a basis for defamation. (Compl. ¶ 6.) Retaliation for filing a complaint is precisely the type of behavior the Anti-SLAPP act is designed to prevent. There is clear and convincing evidence that these lawsuits were filed in order to inhibit Defendants' public participation.

Along with the filing of lawsuits, Prenda and its associates made harassing phone calls to Cooper. Prenda's agent, Steele, made calls to Cooper after learning Cooper had consulted an attorney. (Countercl. ¶ 10.) After Cooper's lawsuit was filed, Steele threatened Cooper, stating in a voicemail that more lawsuits were coming and referenced that they were being filed in different jurisdictions around the country. (*Id.* ¶ 23.) Further, Duffy sent an email to Godfread after Godfread contacted AF Holdings' local counsel, Michael Dugas. (*Id.* ¶ 11.) Duffy's e-mail stated that AF Holdings would not be answering any questions and that his office was not to be

# Exhibit 4

contacted again.  (*Id.*)  It is clear that these communications from Prenda and Duffy were for the purposes of harassment.

Rule 11 sanctions were awarded to Defendants on June 12, 2014, which covered some of Defendants' attorney's fees at that point in the litigation.  (Case No. 13-cv-4341, Dkt. 69.)  This does not, however, preclude a recovery of attorney's fees and costs under Minnesota's Anti-SLAPP statute.  Minnesota's "anti-SLAPP law is not an exclusive remedy."  *Zutz v. Nelson*, No. A14-0573, 2014 WL 7344058, at *5 (Minn. Ct. App. Dec. 29, 2014).  Section 554.04 of the Act provides that "[n]othing in this chapter limits or precludes any rights the moving party or responding party may have under any other constitutional, statutory, case, or common law, or rule."  Minn. Stat. § 554.05.  Thus, Defendants are entitled to their attorney fees and costs as actual damages under this section of the Anti-SLAPP Act.

*Punitive Damages*

Last, the Minnesota Anti-SLAPP Act permits a court to award punitive damages in addition to those described above.  Minn. Stat. § 554.04, Subd. 2(b).  These damages must conform to § 540.20, which states, in relevant part:

> (a) Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others.
> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
>> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn Stat. § 549.20, Subd. 1.  The amount of punitive damages is assessed pursuant to several factors:

# Exhibit 4

including the seriousness of hazard to the public arising from the defendant's misconduct, the profitability of the misconduct to the defendant, the duration of the misconduct and any concealment of it, the degree of the defendant's awareness of the hazard and of its excessiveness, the attitude and conduct of the defendant upon discovery of the misconduct, the number and level of employees involved in causing or concealing the misconduct, the financial condition of the defendant, and the total effect of other punishment likely to be imposed upon the defendant as a result of the misconduct, including compensatory and punitive damage awards to the plaintiff and other similarly situated persons, and the severity of any criminal penalty to which the defendant may be subject.

Minn Stat. § 549.20, Subd. 3. Under Minnesota law, "[p]unitive damages are an extraordinary remedy to be allowed with caution and within narrow limits." *J.W. ex rel. B.R.W. v. 287 Intermediate Dist.*, 761 N.W.2d 896, 904 (Minn. 2009). However, punitive damages for conduct outside of the present litigation are inappropriate. *See Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) ("[T]he Constitution's Due Process Clause forbids a State to use a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or those whom they directly represent, *i.e.*, injury that it inflicts upon those who are, essentially, strangers to the litigation.").

Defendants argue that punitive damages in the amount of $12 million should be awarded due to harassment and the misappropriation of Cooper's identity. Defendants claim that this amount is a fair approximation of the funds that Plaintiffs have received from their copyright litigation. Plaintiffs argue that Defendants have not provided clear and convincing evidence that Prenda and Duffy's actions show deliberate disregard for the rights and safety of others as required by Minnesota law. Minn. Stat. § 549.20, Subd. 1(a). Plaintiffs deny a link between the misappropriation of Cooper's identity and the actions of Prenda and Duffy and, thus, claim there is no basis to award punitive damages.

Plaintiffs were previously sanctioned due to misconduct and misrepresentations before this Court, including: concealment and misstatements of the St. Clair County proceedings, as

# Exhibit 4

well as fabricating statements made by a federal judge, which were "well outside the bounds of proper advocacy and demonstrates a serious disregard for the judicial process." (Case No. 13-cv-4341, Dkt. 69.)  Prenda and Duffy have ignored clear court orders and failed to fully brief motions.

Several courts have levied sanctions on Duffy, Prenda, and related persons and entities. A Minnesota court, in reference to Michael Dugas and the Alpha Law Firm, who are known associates of Prenda, stated that it "'was presented with virtually no factual evidence during the pendency of this 'litigation'" and that "'Dugas lacks any credibility . . . based upon the actions he has taken in this matter.'"  *Guava LLC v. Merkel*, No. A13-2064, 2014 WL 3800492, at *1, 5 (Minn. Ct. App. Aug. 4, 2014).  A District Court of Minnesota stated that "Paul Duffy has no credibility with this Court.  This Court finds that the Prenda Law Firm is or has been conducting fraudulent business."  *Cooper v. Steele*, No. 13-CV-2622, 2014 U.S. Dist. LEXIS 103095, at n.1 (D. Minn. July 29, 2014).  The Northern District of California found the litigation of copyright cases by a Prenda-related entity to be "frivolous and objectively unreasonable." *AF Holdings LLC*, 2013 WL 3815677, at *1.  When issuing sanctions against Duffy, Prenda, and others, the Central District of California stated that "Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared." *Ingenuity 13 LLC*, 2013 WL 1898633, at *3.  That court further stated Prenda actors' "web of disinformation is so vast that the Principals cannot keep track - their explanations of their operations, relationships, and financial interests constantly vary."  *Id.* at *5.

In *Ingenuity 13*, the court made several findings of fact, including that Steele, Paul Hansmeier, and Duffy are principals of Prenda Law, and established AF Holdings and Ingenuity 13 as shell plaintiffs in order to pursue copyright litigation.  *Id.* at *2.  Further, the

# Exhibit 4

court found that Steele and Duffy stole Cooper's identity when they fraudulently signed documents with his signature without authorization and that there is no Alan Cooper working at those entities. *Id.* at *3. The theft of Cooper's identity is a demonstration of Plaintiffs deliberate disregard for Cooper's rights, especially when followed by three frivolous lawsuits against Cooper in different jurisdictions. Given these circumstances, punitive damages are appropriate. However, the damages that Defendants ask for include punishment for conduct outside of the present litigation. While Plaintiffs allegedly stole Alan Cooper's identity to further their copyright litigation, the Anti-SLAPP Act authorizes punitive damages in the context of the current civil action.

## CONCLUSION

For the reasons provided above, Defendants are awarded reasonable attorney's fees and costs for the entirety of this lawsuit. Defendants, within thirty days, shall submit a petition for itemized attorney's fees and costs incurred, excluding those previously awarded; a statement of actual damages; and a statement of punitive damages related to this action, pursuant to the statutory factors listed above.

Date: _____August 20, 2015_____

9

MT

# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL DUFFY and PRENDA LAW, INC. | ) | Case No. 1:13-cv-01569 |
| | ) | (Consolidated with 1:13-cv-04341) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL GODFREAD, ALAN COOPER | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| PAUL GODFREAD AND ALAN | ) | |
| COOPER, | ) | |
| | ) | |
| Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL DUFFY and PRENDA LAW, INC., | ) | |
| | ) | |
| Counter-Defendants. | ) | |

## FINAL JUDGMENT AND ORDER

This matter came before the Court on Defendant/Counter-Plaintiffs' Motion to Dismiss Pursuant to the Minnesota Anti-SLAPP Act, which was granted on April 15, 2015, and Defendants/Counter-Plaintiffs' Motion for Sanctions, which was granted on February 3, 2014 and amended on January 22, 2015. Pursuant to the Court's Order, Defendants/Counter-Plaintiffs filed their Statement of Damages on September 29, 2015.

The Court having considered all papers filed and proceedings held herein and otherwise being fully informed in the premises and good cause appearing therefore, IT IS HEREBY ORDERED, JUDGED AND DECREED THAT:

Defendants Paul Godfread and Alan Cooper shall recover jointly and severally from Plaintiffs Prenda Law, Inc. and Paul Duffy the following:

      a. Sanctions in the amount of $11,758.20, pursuant to the Court's January 22, 2015 Order, are awarded in favor of Defendants/Counter-Plaintiffs Paul Godfread and Alan Cooper and against Plaintiffs Prenda Law, Inc. and Paul Duffy;

**Exhibit 5**

b. Actual damages in the form of costs and attorney fees in the amount of $162,448.74 as provided in Minn. Stat. § 554.05. The Court has reviewed the Statement of Damages filed by Godfread and Cooper on September 29, 2015 and finds the rates charged by counsel and the total amount of the invoices with costs to be reasonable;

c. Punitive damages in the amount of $500,000.00 as permitted by Minn. Stat. § 554.05 and § 549.20. Godfread and Cooper proved they are entitled to punitive damages by clear and convincing evidence in their Statement of Damages [ECF No. 95], and the Court adopts and incorporates that reasoning herein in support of its award of punitive damages; and

d. Prejudgment interest, as permitted by law.

The Court finds that pursuant to Rule 54(b) of Fed.R.Civ.P. there is no just reason for delay and directs entry of this Judgment immediately. The Court shall retain jurisdiction over these consolidated matters to the extent necessary to enforce this Judgment.

Date: _October 17 2016_                    /s/ _John J. Darrah_
                                                  JOHN W. DARRAH
                                                  United States District Court Judge

**Exhibit 6**

# United States Court of Appeals
## For the First Circuit

_____

No. 13-2535

AF HOLDINGS, LLC,

Plaintiff,

v.

SANDIPAN CHOWDHURY,

Defendant, Appellee.

-------------------------------------------------------------------------------

JOHN L. STEELE; PAUL A. DUFFY; PAUL R. HANSMEIER,

Interested Parties, Appellants,

MARK LUTZ,

Interested Party.

_____

Before

Lynch, Thompson and Kayatta,
Circuit Judges.

_____

**JUDGMENT**

Entered: August 4, 2016

After carefully considering the record and briefs on appeal, we <u>vacate</u> and <u>remand</u>.

The appellants moved to vacate the judgment under Rule 60(b)(4) for lack of personal jurisdiction because they were never named as parties to the counterclaims and properly served. It was undisputed below that the appellants were not properly named and served. Absent some exception, which was not established, a judgment cannot be entered against those who are not made parties through proper service. <u>Shank/Balfour Beatty, a Joint Venture of M.L. Shank, Co., Balfour Beatty Constr</u>. v. <u>Int'l Bhd. Of Elec. Workers Local 99</u>, 497 F.3d 83, 94 (1st Cir. 2007).

# Exhibit 6

When personal jurisdiction is lacking, relief is mandatory, and the appellants did not have to show various factors required for relief under other subsections of Rule 60(b). <u>M & K Welding, Inc.</u> v. <u>Leasing Partners, LLC</u>, 386 F.3d 361, 365 (1st Cir. 2004).

Contrary to the appellee, the fact that non-parties do not, or cannot, dispute alter ego allegations that would permit both serving them and holding them liable on the judgment does not obviate the need to call them before the court before entering judgment. <u>Zenith Radio Corp</u>. v. <u>Hazeltine Research, Inc.</u>, 395 U.S. 100 (1969).

<u>Vacated</u> and <u>remanded</u>. 1st Cir. Loc. R. 27.0(c).

By the Court:

<u>/s/ Margaret Carter, Clerk</u>

cc:
Honorable Joseph L. Tauro
Robert Farrell, Clerk of Court
AF Holdings, LLC
Jason E. Sweet
Daniel G. Booth
John L. Steele
Paul A. Duffy
Paul R. Hansmeier

# Exhibit 7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AF HOLDINGS, LLC,                          *
                                           *
            Plaintiff,                     *
                                           *
      v.                                   *        Civil Action No. 12-cv-12105-IT
                                           *
SANDIPAN CHOWDHURY,                        *
                                           *
            Defendant.                     *

<u>ORDER ON REMAND</u>

The Mandate of the Court of Appeals having now issued, this court hereby vacates the
court's order [#43] entered on December 3, 2013, grants Interested Party John L. Steele's <u>Motion
to Set Aside Default Judgment</u> [#36], Interested Party Paul R. Hansmeier's <u>Motion to Set Aside
Default Judgment</u> [#38], Interested Party Paul A. Duffy's <u>Motion to Set Aside Default Judgment</u>
[#41], and sets aside the Final Judgment [#34] entered on October 22, 2013.

Defendant Sandipan Chowdhury shall file a proposed Amended Judgment no later than
September 29, 2016. IT IS SO ORDERED.

Date: September 8, 2016                         /s/ Indira Talwani_____
                                                United States District Court

# Exhibit 8

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AF HOLDINGS, LLC, | |
| *Plaintiff*, | |
| v. | Case No. 1:12-cv-12105-IT |
| SANDIPAN CHOWDHURY, | |
| *Defendant*. | |

## DECLARATION OF PAUL R. HANSMEIER

1.   I submit this declaration in support of John Steele's opposition to Sandipan Chowdhury's motion to substitute parties. I am over the age of 18 and am otherwise competent to make the statements herein. Unless otherwise stated the statements herein are based on personal knowledge.

2.   I have not received a copy of Sandipan Chowdhury's motion to substitute parties or any of the accompanying paperwork from Mr. Chowdhury or from his counsel via mail, personal service or otherwise.

3.   I am a debtor in bankruptcy in a case pending before the U.S. District Court for the District of Minnesota. Chowdhury's counsel previously unsuccessfully sought relief from the automatic stay with respect to a different proceeding. Chowdhury has not received relief from the automatic stay with respect to his pending motion. I intend to proceed with an adversary proceeding against Chowdhury and his counsel for contempt of court for his egregious violation of the automatic stay.

This Declaration is submitted pursuant to 28 U.S.C. § 1746. I declare under the penalty of perjury that the foregoing is true and correct.

Executed on October 13, 2016

/s/ Paul R. Hansmeier
Paul R. Hansmeier

**Exhibit 9**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AF HOLDINGS, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 12-cv-12105-IT |
| | * | |
| SANDIPAN CHOWDHURY, | * | |
| | * | |
| Defendant. | * | |

<u>ORDER</u>

**TALWANI, D.J.**

On September 29, 2016, Defendant/Counterplaintiff Sandipan Chowdhury ("Chowdhury") filed a <u>Motion for Substitution of Parties and Entry of Amended Judgment</u> [#81] seeking to add or substitute John Steele ("Steele") and Paul Hansmeier ("Hansmeier") as parties, and certifying that the motion would be served on Steele and Hansmeier pursuant to Rules 4 and 25 of the Federal Rules of Civil Procedure. Steele and Hansmeier have each filed a declaration with the court noting that they have not been served with the motion. [## 90, 91].

Chowdhury's <u>Motion for Substitution of Parties and Entry of Amended Judgment</u> [#81] is DENIED without prejudice. Chowdhury may file a renewed motion after service of such motion in accordance with LR, D. Mass. 4.1 and Rule 4 of the Federal Rules of Civil Procedure, and shall include with any such filing a certificate of service showing that service has been completed prior to filing the renewed motion.

IT IS SO ORDERED.

Date: October 20, 2016

/s/ Indira Talwani
United States District Court