## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

RECEIVED

17 JUL 24  AM 10: 17

U.S. BANKRUPTCY COURT
ST. PAUL, MN

In re

Paul Hansmeier,

     *Debtor.*

-------------------------------------------------------

Paul Hansmeier,

     *Plaintiff.*

v.

Dan Booth; Paul Godfread; and Jason Sweet,

     *Defendants.*

Bky No. 15-42460

Chapter 7

ADV No. 17-4076

REPLY BRIEF

### INTRODUCTION

Defendants Dan Booth ("Booth"), Paul Godfread ("Godfread") and Jason Sweet ("Sweet") have failed to demonstrate the existence of a genuine issue of material fact with respect to the relief requested in Debtor's motion for partial summary judgment. Entry of partial summary judgment in Debtor's favor is warranted.

### I.   **Debtor's Motion Is Properly Before The Court.**

Defendants challenge Debtor's motion on procedural grounds, and argue that Debtor's motion is being heard too soon. [Resp. at 6–7]. Defendants' challenge is inconsistent with applicable procedural rules.

This Court's Local Rules state that "moving documents shall be filed and served and served by delivery or by mail not later than fourteen days before the hearing date."

L.R. 9006-1(b). There is no dispute that this occurred here. Nevertheless, Defendants

argue that they are entitled to more time to respond to Debtor's motion.

### A.    District Court Local Rule 7.1 Does Not Apply In This Proceeding.

Defendants cite District Court Local Rule 7.1—which governs civil motion

practice in the District of Minnesota—for the proposition that Defendants are entitled to

twenty-one days to respond to Debtor's motion. [Resp. at 6]. In the civil setting

Defendants may indeed have twenty-one days to respond to Debtor's motion. But this is a

bankruptcy proceeding, and bankruptcy proceedings in this Court are governed by a

separate set of Local Rules. *See* L.R. 1002-1—9070-1. Defendant's reliance on District

Court Local Rule 7.1 is misplaced.

### B.    Federal Rule of Bankruptcy Procedure 7056 Does Not Incorporate District Court Local Rules Into Bankruptcy Proceedings.

Defendants argue that District Court Local Rule 7.1 is "made applicable pursuant

to Fed. R. Bankr. P. 7056…." [Resp. at 6]. But Federal Rule of Bankruptcy Procedure

7056 does no such thing. In relevant part Bankruptcy Rule 7056 merely states that

Federal Rule of Civil Procedure 56 applies in adversary proceedings. Fed. R. Bank. P.

7056. Nothing in Bankruptcy Rule 7056 suggests that district court local rules, which

govern civil motion practice, also govern motion practice in a bankruptcy case

### C.    Defendant's Reliance On An Outdated Version Of Federal Rule Of Civil Procedure 56 Is A Nonstarter.

Defendants cite to Advisory Committee Notes from the 2009 amendments to Rule

56 for the proposition that the "time for responding to a motion for summary judgment is

21 days after the responsive pleading is due." [Resp. at 7]. These Advisory Committee

Notes are outdated. Rule 56 was substantially amended in 2010. The Advisory

Committee Notes to the 2010 Amendments to Rule 56 observe, "The timing provisions in

former subdivisions (a) and (c) are superseded," and that "the rule allows a motion for

summary judgment to be filed at the commencement of an action...." *See* Advisory

Committee Notes to Rule 56(b), Fed. R. Civ. P. (2010 Amendments). As one district

court observed, "Rule 56 expressly permits a party to file a motion for summary

judgment 'any time' which would necessarily include the time before discovery has been

completed or even commenced." *Hooks v. Bannister*, No. 3:12-cv-682 (D. Nev. May 22,

2014).

Here, Defendants have articulated no meaningful reason for why Debtor's

summary judgment motion should be deferred. Defendants argue that they have received

an "insufficient amount of time to adequately brief [their] opposition." [Resp. at 7]. But

that is a criticism of the fourteen-day motion schedule embodied in this Court's Local

Rules, not an explanation for why Defendants are prejudiced by responding to Debtor's

motion for partial summary judgment before they respond to Debtor's Complaint.

Defendants say they need more time to "formulate a complete response." [Resp. at 7].

Again, this is a criticism of the fourteen-day motion schedule. And if Defendants truly

believed they were prejudiced by the current motion schedule, they were free to file a

motion to extend their time for briefing with an explanation of the prejudice—which, of

course, Defendants did not do.

The most common reason to defer a summary judgment motion is to allow the

nonmoving party an opportunity to take discovery into facts essential to resisting the

3

motion. Rule 56(d) provides an express procedure for nonmovants to request continuation where additional discovery is needed. *See* Fed. R. Civ. P. 56(d). A nonmovant may request continuation of a summary judgment motion by submitting a declaration showing that, for specified reasons, it cannot present facts essential to justify its opposition. *See id.*

Here, all of the facts essential to resisting Debtor's motion are known to Defendants. The gravamen of Debtor's motion is that there is no issue of material fact that: (1) there were no "judgment[s] against debtor" underlying the claims submitted by Defendants Godfread and Sweet—thus rendering those claims false; and (2) that Booth and Sweet knowingly violated that automatic stay. All of the facts supporting Debtor's motion are a matter of public record.

In the end, Defendants have articulated no cognizable reason for why Debtor's motion should be deferred. Moreover, Defendants have not filed a motion to extend briefing deadlines, and they have not identified any facts not presently known to them that are essential to resisting Debtor's motion for partial summary judgment. Defendants have offered the Court no reason to defer its ruling on Debtor's motion for partial summary judgment.

## II.   There Is No Genuine Issue Of Material Fact That Defendants Booth And Sweet Violated The Automatic Stay.

The material facts supporting Debtor's claim for violation of the automatic stay are largely admitted or, at a minimum, are undisputed. [*See generally* Declaration of Jason Sweet, July 21, 2017 ("Sweet Decl.") at ¶¶ 1–12]. Defendants Booth and Sweet do not dispute that they were aware of Debtor's bankruptcy. Nor do they dispute that they

4

filed a motion seeking to add Debtor to a judgment during the pendency of the automatic

stay with respect to an action that was commenced prepetition. Instead, Booth and Sweet

defend against Debtor's claim for violation of the automatic stay arguing: (1) contempt is

not an appropriate remedy for violations of the automatic stay; (2) there was no violation

of the automatic stay because, according to Defendants, the Chowdhury proceedings

were initiated by the Debtor; and (3) Debtor was not forced to respond to Chowdhury's

motion because it was not served on him. [Resp. at 13−14]. None of these arguments are

viable.

### A.  Defendants' Argument Regarding The Availability Of A Contempt Finding Is Premature.

Defendants argue that a contempt finding is not an appropriate remedy for a

violation of the automatic stay. [Resp. at 13]. This argument is premature because the

only relief sought in the motion before the Court is a finding that Defendants willfully

violated the automatic stay. At trial, the Court may decide what, if any, relief to afford

Debtor. The remedies may include a contempt finding, but they may also include actual

and punitive damages pursuant to Section 362 of the Bankruptcy Code.

### B.  Defendants' Suggestion That Chowdhury's Counteclaim Was Initiated By Debtor Makes No Sense.

Defendants argue that there was no stay violation because the proceedings giving

to the Chowdhury judgment, *i.e.* Chowdhury's counterclaim was initiated by Debtor.

[Resp. at 13−14]. This argument makes no sense because a party cannot initiate a

proceeding in order to obtain a judgment against himself. *See, e.g., Aetna Life Ins. Co. v.*

*Haworth*, 300 U.S. 227, 240-41 (1937) ("The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.").

There is no genuine issue of material fact that the proceeding which gave rise to the judgment against Debtor was a counterclaim filed by Sandipan Chowdhury on January 4, 2013, which culminated in a default judgment against AF Holdings LLC. [*See* Declaration of Paul Hansmeier, July 24, 2017 ("Second Hansmeier Declaration") at Ex. 1]. Debtor was fraudulently added to that default judgment, which resulted in a void judgment that was vacated by the First Circuit. [*See* Resp. at Ex. 6]. Defendants' effort to re-add Debtor to that judgment was a continuation of Chowdhury's prepetition counterclaim. A counterclaim, such as the counterclaim asserted by Chowdhury, "is an independent cause of action asserted under Fed. R. Civ. P. 13. As such, a counterclaim is an 'action or proceeding against a debtor' and relief from the stay under § 362(a)(1) must be sought." *In re Way*, 229 B.R. 11, 14 (9th Cir. BAP 1998). Defendants neither sought nor obtained any relief from the stay.

## C.    Defendants' "No Service" Argument Is Irrelevant To The Legal Standard Governing Violations Of The Automatic Stay.

In passing, Defendants reference the fact that they did not serve their motion on Debtor. [Resp. at 14]. As an initial matter, it should be noted that Defendants certified to the district court in the Chowdhury matter that they did, in fact, make service on Debtor. For example, the Certificate of Service attached to Defendants' motion stated, "I hereby certify … that John Steele and Paul Hansmeier will be served copies of said documents pursuant to Rules 4 and 25 of the Federal Rules of Civil Procedure." [*See* Declaration of

Paul Hansmeier, July 12, 2017 ("First Hansmeier Decl.") at Ex. 10 pg. 15]. While Debtor agrees that he was never served with these documents, Defendants' false certification provides insight into their character.

Second, Debtor was, in fact, forced to respond to the motion. In reliance on Booth and Sweet's fraudulent representations regarding service on Steele and Debtor, the district court scheduled an evidentiary hearing on the motion. [*See* Second Hansmeier Decl. at Ex. 3]. Indeed, but for being mailed a copy of the notice of hearing Debtor would have been blindsided by the motion. Hansmeier and Steele were forced to submit documents to the district court to notify it that they were not served with the relevant documents.

Finally, the service issue is not relevant to the legal standard governing violations of the automatic stay. Defendants violate the automatic stay if they knowingly continue a judicial action which was commenced prepetition. The service issue goes more to the issue of damages, which is not presently before the Court

### D.    There Is No Genuine Issue Of Material Fact That Defendants Booth And Sweet Knowingly Violated The Automatic Stay.

There is no genuine issue of material fact that Defendants Booth and Sweet knowingly violated the automatic stay. The Court should grant this aspect of Debtor's motion for partial summary judgment.

**III.   There Is No Genuine Issue Of Material Fact That Defendants Godfread And Sweet Abused The Bankruptcy Process By Submitting False Claims.**

There is no genuine issue of material fact that Defendants Godfread and Sweet submitted over $1.5 million[1] in false Proofs of Claims in Debtor's bankruptcy case. Defendants' arguments in opposition to Debtor's motion are unavailing.

**A.   There Is No Genuine Issue Of Material Fact That The Proofs Of Claims Submitted By Defendants Godfread And Sweet Were Materially False.**

There is no genuine issue of material fact that the Proofs of Claims submitted by Defendants Godfread and Sweet were materially false. Both Defendants submitted Proofs of Claims in Hansmeier's bankruptcy case stating that their clients had obtained a judgment against Debtor. However, in both of the cases underlying those Proofs of Claims the Defendants attempted (but failed) to have judgment entered against Hansmeier on the grounds that he was a principal of Prenda Law. Debtor is not a judgment debtor in either of those cases. Defendants admit that there was no judgment against Debtor in those cases.

**1.   There Is No Genuine Issue Of Material Fact That Proof Of Claim 11 Was Materially False.**

There is no genuine issue of material fact that Proof of Claim 11 was materially false. As was set forth in Debtor's opening memorandum of law, Proof of Claim 11 was

---

[1] Defendants argue that the aggregate amount of the allegedly false Proofs of Claims is just under $1 million, as opposed to over $1.5 million. Apparently Defendants take the position that the Cooper and Godfread Proofs of Claims, which each total $678,865.78 are really a single claim for this amount. Nothing in the Proofs of Claims would tend to show that this is true.

8

submitted by Paul Godfread as the authorized agent for his client, Alan Cooper. Proof of

Claim 11 asserted that the basis for the claim was "judgment against debtor," in the

approximate amount of $255,000. Yet, there was no judgment against debtor in the

underlying case, which was venued in Hennepin County District Court. Godfread admits

that there was no judgment against Debtor in the Hennepin County case, by explaining

that he believes in good faith that the judgment is "enforceable against [Debtor]," and

admitting that the judgment was actually entered "against Prenda Law, Inc.," not Debtor.

[*See* Declaration of Paul Godfread, July 21, 2017 ("Godfread Decl.") at ¶¶ 11–12].

Godfread states that he has a good faith basis to believe that Proof of Claim 11 can

continue to be enforced against Debtor, even though Proof of Claim 11 has been

withdrawn and a substantially similar claim was disallowed. [*See id.*].

Godfread's sole defense of Proof of Claim 11 is his contention that Debtor is a

principal of Prenda Law, Inc. But Godfread already tried (and failed) to have judgment

entered against Debtor on these grounds in the Hennepin County case. In his declaration,

Godfread perjuriously states, "At no time was a motion for default against Hansmeier

ever made in the *Cooper v. Steele* case as claimed by Hansmeier in his declaration at

paragraph 4." Godfread Decl. at ¶ 10. But that simply is not true. On May 13, 2013,

Godfread submitted a proposed order for default judgment to Hennepin County District

Judge Ann Alton. Paragraph 23 of the proposed order read: "Prenda Law's shareholders,

officers, and directors include: Paul Duffy, John Steele, and Paul Hansmeier, but may

include others as well." [*See* Second Hansmeier Decl. at Ex. 2]. The proposed order

further read: "Defendant Prenda Law, Inc., and its officers and directors shall pay

9

$4,641,000 in damages to Plaintiff." [*See id.* at pg. 3 ¶ 2]. Thus, Godfread in fact sought to have judgment entered against Hansmeier as an "officer and director" of Prenda Law, Inc. Godfread's motion was denied. [Godfread Decl. ¶ 5]. It is undisputed that the judgment that was ultimately entered in that case did not impose liability against Hansmeier.

Godfread was on actual notice that there was no judgment entered against Hansmeier in the Hennepin County case. He tried (but failed) to have judgment entered against Hansmeier based on his assertion that Hansmeier was Prenda Law Inc.'s principal. Thus, Godfread had no basis for asserting that a judgment was entered against Hansmeier in the Hennepin County case—even if he subjectively believes that Hansmeier is an alter ego of Prenda Law, Inc. The Court should not overlook Godfread's willingness to perjure himself regarding his efforts to have judgment entered against Hansmeier. Proof of Claim 11 boils down to Godfread's attempt to defraud the Court and the estate into paying out funds with respect to a $255,000 judgment against Debtor that never existed.

2.      **There Is No Genuine Issue Of Material Fact That Proofs Of Claims 9 And 10 Were Materially False.**

There is no genuine issue of material fact that Proofs of Claims 9 and 10 were materially false. As Debtor set forth in his opening memorandum, Proofs of Claims 9 and 10 were submitted by Jason Sweet as the authorized agent for his clients Alan Cooper and Paul Godfread. Proofs of Claims 9 and 10 asserted that the basis for the claims was a "judgment against debtor," each in the amount of $678,865.78. Yet, there was no

judgment against Debtor in the underlying case, which was venued in the U.S. District Court for the Northern District of Illinois. Sweet admits that there were no judgments against Debtor in the Illinois case, by explaining that he believes in good faith[2] that the judgments are "enforceable against [Debtor]," and admitting that the judgment was actually entered "against Prenda Law, Inc.," as opposed to Debtor. [Sweet Decl. at ¶¶ 15–17]. Sweet states that he has a good faith basis to believe that Proofs of Claims 9 and 10 can continue to be enforced against Debtor, even though these claims were withdrawn and substantially similar claims were disallowed. [*Id.*]

Sweet's sole defense of Proofs of Claims 9 and 10 is his contention that Debtor is a principal of Prenda Law, Inc. But Sweet already tried (and failed) to have judgment entered against Debtor on those grounds in the Illinois case. As was set forth in Debtor's opening memorandum, Sweet moved the Illinois Court to impose liability on Debtor for any judgment entered against Prenda on the very same grounds presented in Sweet's response. The Court declined, holding that no judgment could be entered against Debtor in that case given that he was not a party and had never been served with process. The Court also held that it would lack jurisdiction to enter judgment against Debtor. Thus,

---

[2] On September 29, 2015 Cooper and Godfread filed a Statement of Damages in the Illinois litigation in which they made several allegations against John Steele in an apparent renewed effort to impose liability on Steele. The allegations centered on the theme that Steele was a principal of Prenda Law, Inc. and was precluded from arguing otherwise. The matter was briefed. The Court held a hearing and apparently determined that no liability could be imposed on Steele for the very reasons set forth in its previous order determining that no liability could be imposed on Steele. For the Court's background the briefing submitted by the parties is attached as Exhibit 4 to the Second Hansmeier Declaration.

there is no basis for Sweet to suggest that Debtor will ever have liability in the Illinois case. Sweet omitted the order from his Proofs of Claims.

Sweet was on actual notice that the Illinois court concluded that it could never enter judgment against Hansmeier in the Illinois case. Proofs of Claims 9 and 10 boil down to Sweet's attempt to defraud the Court and the estate into paying out funds with respect to approximately $1.3 million in judgments against Debtor that did not (and could not ever) exist.

### B. Defendants' Legal Attacks On Debtor's Claim For Sanctions Pursuant To § 105 Are Unavailing.

Defendants launch several legal attacks on Debtor's §105 claim. The attacks are unavailing.

#### 1. Defendants' Attack On The Sufficiency Of Debtor's Fraud Allegations Is A Red Herring.

Defendants' attack on the sufficiency of Debtor's fraud allegations is a red herring. Debtor's Complaint does not contain a claim for fraud. Rather, Debtor's Complaint alleges that Defendants should be found in contempt or sanctioned for filing false or fraudulent claims in Debtor's bankruptcy case.

#### 2. Defendants' Assertion That "A Successful Defense Does Not Render Defendants' Claims Fraudulent" Is A Red Herring.

Defendants' assertion that "a successful defense does not render Defendants' claims fraudulent" is a red herring. [Resp. at 9–10]. Debtor is not in any manner suggesting that the mere denial of Defendants' claims is sufficient to support a finding that the claims were false or fraudulent. Certainly, in the overwhelming majority of

12

instances where a claim is denied then that is the end of the matter. For example, although Debtor believes that the Proof of Claim submitted by "Certain John Does" in this case is properly denied because it was submitted pseudonymously, Debtor does not believe that the claim is false or fraudulent.

Rather, Debtor is suggesting that the claims within the scope of his Complaint were false or fraudulent because Defendants submitted claims representing a "judgment against debtor," when both Defendants knew that there was no judgment against Debtor. Exacerbating matters, Defendants previously tried (but failed) to have judgment entered against Debtor on the very same grounds they continue to argue to the present day, *i.e.* Debtor's relationship to Prenda Law, Inc. Moreover, Defendants omitted, in the case of Godfread, continue to conceal prior adverse rulings in their Proofs of Claims. Under these circumstances, the Court is within its discretion to find that Defendants knowingly submitted false or fraudulent claims.

### 3.     Contempt Is A Proper Remedy With Respect To Filing False Or Fraudulent Claims.

Contempt is a proper remedy with respect to false or fraudulent claims. In *In re Watson*, [Hansmeier Decl at Ex. 5], a bankruptcy court denied a creditor's motion to dismiss a complaint asserting a claim for contempt under Section 105 with respect to allegedly false or fraudulent proofs of claims filed in the underlying bankruptcy case. *In re Watson*, 2010 WL 4496837 (Bankr. N.D. W. Va. 2010). *Watson* is instructive, as Debtor's Complaint is modeled after the complaint filed by the debtor in *Watson*. [*See* Hansmeier Decl. at Ex. 6].

13

The *Watson* court recognized a cause of action for contempt under 11 U.S.C. §
105 when a creditor seeks to abuse the provisions of the Bankruptcy Code, *i.e.* §§ 501,
502 and Rule 3001, by filing a purportedly false or fraudulent claim. Citing to several
circuit court decisions, the *Watson* court held that this procedure was appropriate so long
as the debtor sought a contempt sanction. The *Watson* court rejected the notion that
Bankruptcy Rule 9011 was an exclusive sanctioning authority, noting that the rule, "like
its counterpart Fed. R. Civ. P. 11, has never been an exclusive remedy for an aggrieved
party." *See id.* The *Watson* decision has been cited approvingly by other bankruptcy
courts. *See, e.g., In re Martin*, No. 16-adv-80099 (D.S.C. Jan. 12, 2017) (denying motion
to dismiss claim for sanctions arising from a creditor's allegedly false or fraudulent
claims).

### 4.    Defendants' Attack With Respect To Proofs Of Claims 15, 16 And 18 Is Premature.

Defendants' attack with respect to Proofs of Claims 15, 16 and 18 is premature.
Defendants assert that these fraudulent claims did not damage Debtor. Debtor's motion
does not ask the Court to resolve the issue of damages. The issue of damages is properly
reserved for trial.

### 5.    Defendants' Attack On Debtor's Abuse Of Process Claim Is A Red Herring.

Defendants' attack on Debtor's abuse of process claim is a red herring because
Debtor's Complaint does not contain a state law claim for abuse of process. Rather,
Debtor's Complaint alleges that Defendants should be held in contempt or sanctioned for
filing false or fraudulent claims.

14

**6.     Defendants' Reliance On *Navasca* And Its Related Decisions Is Unavailing.**

A substantial portion of Defendants' opposition memorandum is devoted to quoting a variety of judicial opinions, and in particular the statements from *AF Holdings LLC v. Navasca*, No. 12-cv-2396 (N.D. Cal. Sept. 16, 2013). Defendants argue that the *Navasca* holding, and others like it, preclude Hansmeier from challenging his alter ego status with respect to Prenda Law, Inc. But the reality is far different. Although a full briefing on preclusion is well beyond the scope of this reply memorandum, this Court should be aware that in *Navasca* a United States Magistrate Judge recommended ***denying*** a motion for sanctions brought against Debtor and others. *See Navasca*, ("Because the district court appears to lack personal jurisdiction over Steele and Hansmeier, the undersigned cannot recommend that sanctions be imposed against these individuals."). Thus, the lengthy findings of fact and conclusions of law in *Navasca* were entered in the acknowledged absence of jurisdiction. Such findings cannot, under any theory, be accorded preclusive effect.

**C.     There Is No Genuine Issue Of Material Fact That Defendants Submitted False Or Fraudulent Claims.**

There is no genuine issue of material fact that Defendants submitted false or fraudulent claims. The Court should find that they did and reserve the issue of the amount of sanctions for trial.

## CONCLUSION

The Court should grant Debtor's motion for partial summary judgment.


July 24, 2017                    /s/

                                Paul R. Hansmeier
                                9272 Cortland Alcove
                                Woodbury, MN 55125

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| In re | Bky No. 15-42460 |
| Paul Hansmeier, | Chapter 7 |
| *Debtor.* |  |
| ------------------------------------------------------- |  |
| Paul Hansmeier, |  |
| *Plaintiff.* | ADV No. 17-4076 |
| v. |  |
| Dan Booth; Paul Godfread; and Jason Sweet, |  |
| *Defendants.* |  |

## <u>SECOND DECLARATION OF PAUL HANSMEIER</u>

1.    I am the Debtor in the above-captioned action. Unless otherwise specified, the following statements are made from my personal knowledge.

2.    Attached hereto as the Exhibit # identified below are true and correct copies of the documents identified below.

| **Document** | **Exhibit #** |
|---|---|
| Answer, Including Affirmative Defenses and Counterclaims filed by Sandipan Chowdhury on January 4, 2013 | 1 |
| E-mail from Paul Godfread to Hon. Ann Alton re: Revised Findings of Fact and Order w/attached Proposed Findings of Fact and Conclusions of Law dated May 13, 2013 | 2 |
| Electronic Order Setting Hearing | 3 |
| Report to the Court; Response; and Reply re Northern District of Illinois Proceeding | 4 |

| | |
|---|---|
| Order Denying Motion to Dismiss, *In re Watson*, 2010 WL 4496837 (Bankr. N.D.W. Va. Nov. 1, 2010) | 5 |
| Complaint for Sanctions and Other Appropriate Relief | 6 |

This Declaration is submitted pursuant to 28 U.S.C. § 1746. I declare under the penalty of perjury that the foregoing is true and correct.

Executed on July 24, 2017

                              /s/ Paul Hansmeier
                              Paul Hansmeier

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AF HOLDINGS, LLC,       )<br>                          )<br>    Plaintiff,            )<br>                          )<br>v.                        )<br>                          )<br>SANDIPAN CHOWDHURY        )<br>                          )<br>    Defendant.            )<br>_____) | Civil Action No. 1:12-cv-12105-JLT<br><br>**ANSWER, INCLUDING**<br>**AFFIRMATIVE DEFENSES**<br>**AND COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Defendant and counterclaimant Sandipan Chowdhury ("Defendant"), by and through his undersigned counsel, hereby answers the Complaint of plaintiff AF Holdings, Inc. ("Plaintiff").

### NATURE OF THE CASE

1.    Defendant admits that Plaintiff's Complaint purports to set forth an action for copyright infringement under the United States Copyright Act, contributory infringement, civil conspiracy and negligence, and seeks relief. Defendant denies the remaining allegations in paragraph 1, and specifically denies that Plaintiff is entitled to any relief.

### THE PARTIES

2.    Defendant denies that Plaintiff holds rights sufficient to confer standing to bring this action. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2, and therefore denies those allegations.

3.    Defendant admits that Plaintiff's Complaint purports to set forth an action for infringement of copyright in a work entitled "Sexual Obsession." Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3, and therefore denies those allegations.

4.    Defendant admits that he is over the age of 18 and resides in this District. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4, and therefore denies those allegations.

### JURISDICTION AND VENUE

Exhibit 1

5.      Defendant admits that the Court has jurisdiction over the subject matter of this action. Defendant denies the remaining allegations in Paragraph 5.

6.      Defendant admits that he resides in Massachusetts and that the Court has personal jurisdiction over this action. Defendant denies the remaining allegations in Paragraph 6.

7.      Defendant admits that venue is properly founded in this District. Defendant denies the remaining allegations in Paragraph 7.

## BACKGROUND

8.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, and therefore denies those allegations.

9.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9, and therefore denies those allegations.

10.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10, and therefore denies those allegations.

11.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11, and therefore denies those allegations.

12.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12, and therefore denies those allegations.

13.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13, and therefore denies those allegations.

14.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14, and therefore denies those allegations.

15.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15, and therefore denies those allegations.

16.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16, and therefore denies those allegations.

17.      Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17, and therefore denies those allegations.

Exhibit 1

## ALLEGATIONS COMMON TO ALL COUNTS

18.    Defendant denies the allegations in Paragraph 18.

19.    Defendant admits that Exhibit A to the Complaint purports to be a record of copyright registration and that Exhibit B purports to be an assignment agreement. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 19, and therefore denies those allegations.

20.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20, and therefore denies those allegations.

21.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21, and therefore denies those allegations.

22.    Defendant denies the allegations in Paragraph 22.

23.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, and therefore denies those allegations.

24.    Defendant denies the allegations in the first sentence of Paragraph 24. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 24, and therefore denies those allegations.

## COUNT I – COPYRIGHT INFRINGEMENT – REPRODUCTION
## (17 U.S.C. § 106(1))

25.    In response to the allegations in Paragraph 25, Defendant incorporates herein his above responses.

26.    The allegations in Paragraph 26 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of those allegations and therefore denies them.

27.    Defendant denies the allegations in Paragraph 27.

28.    Defendant admits the allegations in the second sentence of Paragraph 28. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28, and therefore denies those allegations.

29.    Defendant denies the allegations in Paragraph 29.

Exhibit 1

30.    The allegations in Paragraph 30 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

31.    Defendant denies the allegations in Paragraph 31.

32.    The allegations in Paragraph 32 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

33.    The allegations in Paragraph 33 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

34.    The allegations in Paragraph 34 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

35.    The allegations in Paragraph 35 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

## COUNT II – COPYRIGHT INFRINGEMENT – DISTRIBUTION
### (17 U.S.C. § 106(3))

36.    In response to the allegations in Paragraph 36, Defendant incorporates herein his above responses.

37.    The allegations in Paragraph 37 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant lacks knowledge or information sufficient to form a belief as to the truth of those allegations and therefore denies them.

38.    Defendant denies the allegations in the first sentence of Paragraph 38. The remaining allegations constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies those allegations.

39.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 39, and therefore denies those allegations.

40.    The allegations in Paragraph 40 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

41.    Defendant denies the allegations in Paragraph 41.

42.    The allegations in Paragraph 42 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

Exhibit 1

43.     The allegations in Paragraph 43 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

44.     The allegations in Paragraph 44 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

## COUNT III – CONTRIBUTORY INFRINGEMENT

45.     In response to the allegations in Paragraph 45, Defendant incorporates herein his above responses.

46.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46, and therefore denies those allegations.

47.     Defendant denies the allegations in Paragraph 47.

48.     Defendant denies the allegations in Paragraph 48.

49.     Defendant denies any role in the acts alleged in Paragraph 49. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 49, and therefore denies those allegations.

50.     Defendant denies the allegations in Paragraph 50.

51.     The allegations in Paragraph 51 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

52.     Defendant denies the allegations in Paragraph 52.

## COUNT IV – CIVIL CONSPIRACY

53.     In response to the allegations in Paragraph 53, Defendant incorporates herein his above responses.

54.     Defendant denies the allegations in Paragraph 54.

55.     Defendant denies the allegations in the first sentence of Paragraph 55. The remaining allegations constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies those allegations.

56.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56, and therefore denies those allegations.

Exhibit 1

57.     Defendant denies the allegations in Paragraph 57.

58.     The allegations in Paragraph 58 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies any role in the acts alleged in Paragraph 58, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and therefore denies those allegations.

## COUNT V – NEGLIGENCE

59.     In response to the allegations in Paragraph 59, Defendant incorporates herein his above responses.

60.     The allegations in Paragraph 60 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

61.     The allegation in Paragraph 61 that Defendant proximately caused financial harm to Plaintiff constitutes a conclusion of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegation. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 61, and therefore denies those allegations.

62.     The allegations in Paragraph 62 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

63.     The allegations in Paragraph 63 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

64.     The allegations in Paragraph 64 that Defendant "should have known" about an unknown third party's alleged use of his Internet connection, and that not monitoring the activities of the unknown third party demonstrates negligence, constitute conclusions of law as to which no response is required. To the extent that a response is deemed necessary, Defendant denies those allegations, along with each other allegation in Paragraph 64.

65.     Defendant denies the allegations in Paragraph 65.

66.     Defendant denies the allegations in Paragraph 66.

Exhibit 1

67.    The allegation in Paragraph 67 that Defendant "should have known of [] the unidentified third party's infringing actions" constitutes a conclusion of law as to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegation, along with each other allegation in Paragraph 67.

68.    The allegations in Paragraph 68 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

69.    The allegations in Paragraph 67 that some unspecified degree of "reasonable care" is required of an Internet user to secure access to an Internet connection, or to monitor an "unidentified third-party individual's use," constitute conclusions of law as to which no response is required. To the extent that a response is deemed necessary, Defendant denies those allegations, along with each other allegation in Paragraph 69.

70.    The allegations in Paragraph 70 constitute conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendant denies the allegations.

### JURY DEMAND

71.    Defendant requests a jury trial on all issues.

### PRAYER FOR RELIEF

Defendant denies that Plaintiff is entitled to any relief it seeks in its prayer for relief and request for judgment.

### AFFIRMATIVE DEFENSES

Defendant Sandipan Chowdhury ("Defendant") asserts the following defenses without undertaking or otherwise shifting any applicable burden of proof. Defendant reserves the right to supplement or amend this answer, including by asserting additional defenses, as warranted by facts revealed through investigation and discovery.

### FIRST AFFIRMATIVE DEFENSE
#### (Failure to State a Claim for Relief)

72.    The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
#### (Lack of Standing)

Exhibit 1

73.     Plaintiff is not a party to the purported copyright assignment and therefore lacks standing to bring a claim against Defendant.

### THIRD AFFIRMATIVE DEFENSE
### (Lack of Subject Matter Jurisdiction)

74.     Plaintiff lacks a valid copyright assignment.

### FOURTH AFFIRMATIVE DEFENSE
### (No Infringement)

75.     Defendant has not engaged in or contributed to any infringement of the copyright alleged.

### FIFTH AFFIRMATIVE DEFENSE
### (No Conspiracy)

76.     Defendant has not participated in any conspiracy to infringe the copyright alleged.

### SIXTH AFFIRMATIVE DEFENSE
### (No Negligence)

77.     Defendant has not negligently or recklessly allowed a third-party to commit acts of copyright infringement, contributory infringement, or civil conspiracy through his Internet connection.

78.     There is no recognized cause of action for negligently allowing a third party to commit acts of copyright infringement through an Internet connection.

### SEVENTH AFFIRMATIVE DEFENSE
### (Misuse of Copyright)

79.     Plaintiff's claims are barred by the doctrine of misuse of copyright.

### EIGHTH AFFIRMATIVE DEFENSE
### (Failure to Join Indispensable Parties)

80.     Plaintiff has failed to join indispensable parties and notify the court of related matters.

### NINTH AFFIRMATIVE DEFENSE
### (Statutory Relief Not Available)

81.     Plaintiff is barred from seeking statutory damages, costs and/or attorneys' fees under 17 U.S.C. § 504 because the alleged infringement, if any, commenced prior to Plaintiff's ownership of a registered copyright.

### TENTH AFFIRMATIVE DEFENSE

Exhibit 1

**(Requested Relief Repealed)**

82.     Plaintiff's request for relief pursuant to 17 U.S.C. § 509 is barred by its November 13, 1997 repeal.

### ELEVENTH AFFIRMATIVE DEFENSE
### (Copyright Preemption)

83.     Plaintiff's claim of negligence is preempted by 17 U.S.C. § 301(a).

84.     Plaintiff's claim of civil conspiracy is preempted by 17 U.S.C. § 301(a).

### TWELFTH AFFIRMATIVE DEFENSE
### (Invalidity or Unenforceability of Copyright)

85.     Plaintiff's claims are barred to the extent they claim copyright in works that are immoral, illegal or libelous.

### THIRTEENTH AFFIRMATIVE DEFENSE
### (Innocent Intent)

86.     Defendant was not aware and had no reason to believe that any of his acts constituted an infringement of copyright.

### FOURTEENTH AFFIRMATIVE DEFENSE
### (No Willful Infringement)

87.     Any infringement by Defendant was innocent and not willful.

### FIFTEENTH AFFIRMATIVE DEFENSE
### (Acquiescence)

88.     Plaintiff's claims are barred by the doctrine of acquiescence.

### SIXTEENTH AFFIRMATIVE DEFENSE
### (Estoppel)

89.     Plaintiff's claims are barred by the doctrine of estoppel. Without admitting any infringement, Defendant alleges that, though Plaintiff knew the facts of any alleged file-sharing by Defendant and/or others using Defendant's Internet connection, Plaintiff acted in such manner that Defendant and/or third parties were entitled to, and did, believe that the continued availability of the copyrighted work on BitTorrent was intended by Plaintiff, and any actions to download were induced by, and done in reliance on, Plaintiff's conduct.

### SEVENTEENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

Exhibit 1

90.     Plaintiff's claims are barred by the doctrine of unclean hands. Plaintiff is not entitled to equitable relief, as it is guilty of conduct directly related to the merits of the controversy between the parties, sufficient to affect the equitable relations between the parties. Defendant has been personally injured by Plaintiff's said conduct, which continued at least through the time of filing of this action.

### EIGHTEENTH AFFIRMATIVE DEFENSE
### (Lack of Volitional Act)

91.     Plaintiff's claims are barred because the alleged infringement was not caused by a volitional act attributable to Defendant.

### NINETEENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

92.     To the extent Plaintiff suffered any damages attributable to Defendant, which Defendant expressly denies, Plaintiff has failed to take the steps necessary to mitigate the damages sustained.

### TWENTIENTH AFFIRMATIVE DEFENSE
### (Collateral Estoppel)

93.     Plaintiff is barred from bringing its direct infringement claim as Plaintiff previously litigated this identical claim.

94.     Plaintiff is barred from raising issues previously adjudicated.

### TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Injunctive Relief Not Warranted)

95.     Plaintiff is not entitled to injunctive relief because any alleged injury to Plaintiff is not immediate or irreparable, and Plaintiff has an adequate remedy at law.

### TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Intervening Causes)

96.     Without admitting that Plaintiff has sustained any injury or damages and without admitting any liability whatsover, Defendant alleges that the injuries complained of and the damages sought by Plaintiff in this Complaint and each separate claim for relief asserted therein was the direct and proximate result of certain independent actions of third parties over whom Defendant has no control. Therefore, Defendant is not liable for any of the damage that may have resulted therefrom.

Exhibit 1

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (Invalidity of Assignment)

97.     An assignor can transfer the ownership interest in an accrued past copyright infringement, but the assignee only has standing to sue if the interest in the past infringement is *expressly* included in the assignment and the assignee also owns the actual copyrights. Plaintiff received its copyright assignment after Defendant's alleged infringement, and the assignment makes no express provision for past infringements.

## COUNTERCLAIMS

For its Counterclaims against Plaintiff AF Holdings, Inc. ("Plaintiff"), Defendant/ Counterclaimant Sandipan Chowdhury ("Defendant") asserts as follows:

## THE PARTIES

1.     Defendant/Counterclaimant Sandipan Chowdhury ("Defendant") is an individual residing at 479 Moody Street, Waltham, Massachusetts.

2.     Plaintiff/Counterclaim Defendant AF Holdings LLC is, upon available information, a limited liability company organized and existing under the laws of the Federation of Saint Kitts and Nevis.[1]

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over the counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202. The counterclaims are so related to the claims asserted by Plaintiff in this action that they form part of the same case or controversy under Article III of the United States Constitution, and arise out of common facts, transactions, or occurrences as provided under Fed. R. Civ. P. 13 and 20.

4.     This Court has personal jurisdiction over Plaintiff. Plaintiff availed itself of this Court's jurisdiction by bringing this action in this District.

5.     Venue in this District is proper over the counterclaims pursuant to 28 U.S.C. § 1391.

---

[1] The Federation of Saint Kitts and Nevis, conveniently, has very strict laws prohibiting disclosure of corporate information). "Managers and final beneficiaries are not registered anywhere, this way they have total anonymity." http://www.offshorebankshop.com/en/11-saint-kitts-and-nevis-offshore-companyform-tax-haven-limited-liability.html

Exhibit 1

## GENERAL BACKGROUND FOR ALL COUNTERCLAIMS

6.      Plaintiff first litigated this claim in an action it filed against 1,140 individuals, including Defendant, on June 7, 2011 in the United States District Court for the District of Columbia. *AF Holdings, LLC v. Does 1-1,140*, 11-cv-01274-RBW (the "original action"). That action was one of a slew of John Doe lawsuits filed by Plaintiff in various in United States District Courts, against a total of 3,092 individuals to date, in which Plaintiff alleges infringement of the copyright in a pornographic video entitled "Sexual Obsession." Three of Plaintiff's additional cases are currently pending in this judicial district.[2]

7.      Plaintiff is represented by Prenda Law, Inc. (f/k/a Steele Hansemeier PLLC).[3] Each of Plaintiff's 200+ actions have been premised upon substantially identical, cookie-cutter complaints, and have involved *ex parte* applications by which Plaintiff seeks leave of court to issue subpoenas to Internet Service Providers, prior to a Rule 26(f) conference, to obtain information identifying alleged infringers. In support of its applications for early discovery, Plaintiff has offered a declaration from one Peter Hansemeier,[4] who purports to be a computer expert. Generally speaking, the pleadings in all Plaintiff's cases, including in this District, track paragraph by paragraph, word for word. The only real difference between the cases is the IP addresses identified in the complaints.

8.      Defendant, claiming his innocence and not wanting to be associated with infringing a pornographic film, filed a motion in the original action to quash the subpoena by which Plaintiff sought Defendant's personally identifying information. Defendant's motion was denied, and Plaintiff obtained said information.

---

[2] *AF Holdings, LLC v. Foster,* 12-cv-30164 (D. Mass. filed Sept. 27, 2012); *AF Holdings, LLC v. St. Louis,* 12-cv-11797, (D. Mass. filed Sept. 27, 2012); and *AF Holdings, LLC v. Grenier,* 12-cv-11843 (D. Mass. filed Oct. 3, 2012). Plaintiff's counsel, Prenda Law, consistently neglects to file Notices of Related cases when filing its multiple actions, even though many of the cases involve the same plaintiffs and copyrights as one another, such as these.

[3] John Steele was the founding partner of Steele Hansemeier, PLLC, which was the predecessor to Prenda Law, Inc. According to Mr. Steele, he sold his client book to Prenda Law, and depending on who is asking him, he now variously describes himself as both "of counsel," to Prenda Law, or "not an attorney with any law firm." (Ex. A, pp. 11:25–12:7).

[4] On information and belief, Peter Hansemeier is the brother of John Steele's law partner Paul Hansemeier. Peter Hansemeier routinely provided (under the alias Media Copyright Group) the same kind of 'technical expert' services for Steele Hansemeier, PLLC that he now provides (under the alias 6881 Forensics) for Prenda Law, Inc.

**Exhibit 1**

8.   Plaintiff later voluntarily dismissed all 1,140 individuals in the original action on February 2, 2012.

9.   On November 13, 2012, Plaintiff filed suit against the Defendant in this court, making him one of only 68 of those alleged infringers whom Plaintiff has named as a defendant, much less attempted to serve with process or litigate its claims.

10.   As to its standing to sue, Plaintiff asserts that it is "the exclusive rights holder with respect to BitTorrent-based reproduction and distribution of the Video." Compl. ¶ 18. This statement is at odds with itself; one cannot have an exclusive copyright limited to a specific media or mode of reproduction and distribution.

11.   Plaintiff provides further contrary information to its standing in the Complaint. Plaintiff includes with the Complaint the "Certificate of Registration" from the United States Copyright Office for "Sexual Obsession," which lists that the author and copyright claimant as Heartbreaker Films in California. ECF No. 1-2. However, the assignee signing the agreement is AF Films, LLC, which is not a party to this case. As other courts have noted:

> Plaintiff's Financial Disclosure Statement, required to be filed with the court at first appearance pursuant to Local Rule 7.1, ... "certifies that there are no parents, trusts, subsidiaries and/or affiliates of said party."
>
> Plaintiff has submitted no allegation or evidence which shows any link between AF Holdings, LLC and AF Films, LLC.

*AF Holdings, LLC v. Does 1-77*, 11-cv-00383-RBS-TEM, ECF No. 6 (E.D. Va. June 14, 2011). See also *id.*, ECF No. 9 (E.D. Va. June 18, 2011); *AF Holdings, LLC v. Does 1-96*, 11-cv-03335-JSC, ECF No. 26 (N.D. Cal. Nov. 4, 2011).

12.   On or around December 1, 2012, credible evidence of a deeply troubling connection between Plaintiff and its counsel began to appear. Plaintiff and its counsel appear to be engaged in widespread fraud.

13.   Plaintiff has, in this and other actions, identified Alan Cooper as its sole principal. As discussed in a recent filing in one of Plaintiff's cases pending in federal court in Minnesota, an as-yet unexplained connection has recently come to light with respect to this Alan Cooper. There *is* a man named Alan Cooper who lives in Minnesota and who, according to his newly-retained attorney,

Exhibit 1

> had for several years acted as a caretaker for a Minnesota property owned by an attorney by the name of John Steele. When visiting his property, Steele had on numerous occasions bragged to my client about a plan involving massive copyright litigation in multiple jurisdictions. He also specifically instructed him to contact him if anyone asked about various corporations, that Cooper was to call him. When Cooper confronted Steele about that, Steele told him not to worry about it.

*AF Holdings, LLC  v. Doe*, 12-cv-02687-RHK-JJG, ECF No. 11 (D. Minn. Nov. 29, 2012). See also

Ex. B hereto (Affidavit of Alan Cooper).[5]

14.     Plaintiff and its counsel have refused to clarify whether there really is another Alan Cooper who is the true principal.[6] All of these facts regarding Alan Cooper and the status of AF Holdings are highly relevant to the Plaintiff's pending claims against the Defendant.

15.     In short, it appears that Plaintiff does not have standing to bring claims against the Defendant; Plaintiff may not even exist; and Plaintiff's counsel may truly be the real parties in interest in this case.

**FIRST COUNTERCLAIM**
**(Declaratory Judgment of Non-Infringement)**

16.     Defendant incorporates by reference all foregoing allegations made in his affirmative defenses and counterclaims as if fully set forth herein.

17.     There is an actual and justiciable controversy between the parties regarding the alleged direct copyright infringement.

18.     Defendant has not infringed Plaintiff's alleged copyright in "Sexual Obsession." Plaintiff cannot knowingly claim otherwise.

19.     Internet service providers assign numerical Internet Protocol ("IP") addresses to, among other things, the routers used by Internet subscribers to access the network.

20.     An IP address does not identify the computer connecting to the router assigned that the IP address. Nor does it identify the person using that computer.

---

[5] Nor is this the first time Plaintiff's counsel has been accused of using a dummy corporation to file suit. Nicholas Ranallo, Who are MCGIP (and Why are They Suing for Other People's Movies?), (Sept. 25, 2011); available at http://torrentfreak.com/who-are-mcgip-and-why-are-they-suing-for-other-people's-movies-110925/.

[6] Alan Cooper is also, purportedly, the sole proprietor of Ingenuity 13, LLC—another of Prenda Law's clients. See, *Ingenuity 13, LLC v. John Doe*, 12-cv-08333-ODW-JC, ECF No. 32 (C.D. Cal. Dec. 26, 2012) (order granting discovery as to identity of Alan Cooper after Plaintiff and its counsel refused to clarify the issue).

**Exhibit 1**

21.     Plaintiff's allegation that a given IP address was used for infringing acts is not sufficient to support a claim of infringement against the Internet subscriber whose router was assigned that IP address.

22.     Defendant is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that he has not infringed the copyright work.

## SECOND COUNTERCLAIM
### Abuse of Process

23.     Defendant incorporates by reference all foregoing allegations made in his affirmative defenses and counterclaims as if fully set forth herein.

24.     Plaintiff made knowing misrepresentations in its summons filed against Defendant. Plaintiff pleaded claims for copyright infringement despite knowing that it lacked standing to bring any such claims. Plaintiff pleaded claims for statutory remedies despite knowing that those claims were barred.

25.     In filing its complaint, Plaintiff sought to use and did use lawfully issued process for an ulterior or illegitimate purpose.

26.     Plaintiff filed its original complaint against 1,140 individuals, including Defendant, on June 7, 2011 in the United States District Court for the District of Columbia. Plaintiff filed its dismissal of the original action against all 1,140 individuals on February 2, 2012.

27.     On November 13, 2012, Defendant was named as an alleged infringer in this action.

28.     In the intervening months, Plaintiff mailed Defendant several letters urging settlement, which directed him to the website of Plaintiff's counsel Prenda Law, where the complaint against him was posted. This structure enabled Plaintiff to employ the complaint for an ulterior purpose: not to initiate the process of litigation, but to forestall it, while enabling Plaintiff's attempted extortion of the Defendant.

29.     Plaintiff confirmed that Defendant's counsel would accept service in early October 2012, and sent him a formal request to waive process on December 12, 2012.

30.     Plaintiff willfully abused, misused and/or misapplied the process for an end other than that which it was designed to accomplish.

Exhibit 1

31.     Plaintiff intentionally failed to disclose and concealed pertinent and material information regarding Plaintiff's knowledge of the falsity of certain claims, its lack of standing, and the ulterior or illegitimate purpose for which the complaints and summons were employed.

32.     Specifically, Plaintiff failed to disclose and concealed pertinent and material information that includes but is not limited to the following:

a)      Plaintiff was not a party to the assignment, and had no standing to bring any claims;

b)      Plaintiff instituted the original action without any genuine intent to proceed against any defendant therein, but rather as a vehicle to obtain discovery of the identity and contact information of Defendant and others;

c)      upon receiving that information, Plaintiff mailed to Defendant letters threatening to pursue statutory damages and attorney's fees under the Copyright Act, without disclosing that those remedies were categorically prohibited by the date of the alleged infringement;

d)      Plaintiff's letters threatening to pursue Defendant for copyright infringement did not disclose that any such claim is categorically prohibited by the terms of Plaintiff's copyright assignment;

e)      Plaintiff sought to improperly coerce Defendant into settling under extortionate threats of financially burdensome lawsuits and fraudulent threats of remedies that are prohibited as a matter of law; and

f)      Plaintiff did not seriously consider in good faith litigating claims against Defendant, but rather intended the claims to hang as a sword over Defendant's head, to foster unwarranted payments to settle claims not supportable as a matter of law.

33.     Plaintiff's complaints and service of process facilitated these ulterior purposes.

Exhibit 1

34.     As a direct and proximate result of the Plaintiff's conduct, Defendant was forced to expend a significant amount of time and money in defending against these frivolous claims, and thereby suffered injuries, damages, or losses in an amount to be determined at trial.

### THIRD COUNTERCLAIM
### Copyright Misuse

35.     Defendant incorporates by reference all foregoing allegations made in his affirmative defenses and counterclaims as if fully set forth herein.

36.     Plaintiff engaged in abusive and/or improper conduct in exploiting or enforcing its purported copyright assignment beyond any legitimate rights it may have.

37.     Specifically, when it brought claims against the Defendant it had no standing to bring and that threatened penalties that exaggerated and misstated the law, Plaintiff misled and defrauded the Defendant into paying to retain counsel and defending the claims.

38.     The purported assignment is between assignor Heartbreak Films, et al and assignee AF Films, LLC. AF Films, LLC is not a party to this case.

39.     Plaintiff AF Holdings, LLC has not explained this discrepancy when afforded the opportunity in other courts.

40.     Plaintiff threatened Defendant with statutory damages of up to $150,000 and attorney's fees, though its remedy would be limited to actual damages in any case where Plaintiff were able to prove their claims, due to Plaintiff's delay in bringing suit.

41.     An assignor can transfer the ownership interest in an accrued past infringement, but the assignee only has standing to sue if the interest in the past infringement is *expressly* included in the assignment and the assignee also owns the actual copyrights.

42.     Defendant's alleged infringement (dated May 26, 2011) occurred prior to Plaintiff's assignment (dated June 12, 2011).

43.     Plaintiff's copyright assignment makes no express provision assigning claims for past infringements.

Exhibit 1

44.     Plaintiff attempted to extend the effect or operation of that assignment beyond the scope of the statutory right by saddling Defendant with a financially burdensome lawsuit, raising claims barred by the terms of the assignment and the clear provisions of the Copyright Act.

45.     Even if Plaintiff had a valid assignment that would support an action against Defendant, it attempted to extend the effect or operation of that assignment beyond the scope of the statutory right by improperly coercing Defendant with threats of statutory damages awards, attorney's fees, and financially burdensome lawsuits, regardless of the merits and its belated claim's bar on the extraordinary forms of relief that Plaintiff nonetheless deceptively claimed.

46.     Plaintiff's bald attempt at using its copyright assignment to expand its scope by deception and avail itself of unwarranted remedies constitutes copyright misuse.

47.     As a direct and proximate result of the Plaintiff's extortion threats and false representations, and Defendant's reliance on those threats and false representations, Defendant suffered injuries, damages, or losses in an amount to be determined at trial.

48.     Defendant is entitled to declaratory relief that Plaintiff's copyright assignment is invalid and barring Plaintiff from advancing any claims or claims for statutory remedies unless and until it obtains a corrected and proper assignment.

### FOURTH COUNTERCLAIM
### Violation of Massachusetts General Laws, Chapter 93A, § 1, *et seq.*

49.     Defendant incorporates by reference all foregoing allegations made in his affirmative defenses and counterclaims as if fully set forth herein.

50.     At all relevant times, Plaintiff knowingly and intentionally engaged in unfair or deceptive conduct within the meaning of Chapter 93A. Plaintiff filed suit in United States District Court for the District of Massachusetts despite the knowledge that its copyright assignment (a requirement before filing claims for statutory damages or attorney's fees) had been fraudulently obtained; that it was not a party to the assignment; that certain remedies it claimed—again, statutory damages and attorney's fees—were barred by the terms of the assignment; and that Plaintiff did not intend to fully litigate most, if not all, claims.

Exhibit 1

51.    Plaintiff filed suit with the ulterior motive of forcing a settlement from the Defendant. Plaintiff then used the overtly sexual nature of the complaint as leverage against the Defendant.

52.    Plaintiff's unfair, unlawful, and deceptive practices occurred in the course of Plaintiff's settlement fraud and the challenged practices directly caused actual damages and injury to the Defendant. Defendant's injuries occurred in Massachusetts.

53.    Plaintiff's misrepresentations and deceptive acts had a tendency to or were capable of deceiving Defendant—which they did. Defendant relied on Plaintiff's misrepresentations and deceptive acts, which acts are uncured.

54.    Plaintiff's unfair and/or deceptive practices caused Defendant to suffer an ascertainable loss of money; and the loss arose from Plaintiff's concealment from and failure to disclose to Defendant the true facts regarding the scope of Plaintiff's copyright assignment and/or its lack of intent to fully litigate its claims—all done with the intent to file suit in order to facilitate purported settlements of improper claims.

55.    By reason of the foregoing, Defendant is entitled to treble damages, punitive damages, injunctive relief, attorney fees and costs as provided by Chapter 93A.

56.    Defendant also seek permanent injunctive relief as a result of the Plaintiff's ongoing violations of Chapter 93A, including an order directing Plaintiff to provide Defendant with all material facts relating to Plaintiff's incorporation and copyright assignment, including any and settlements received.

57.    The provision of such information will afford Defendant and the public the opportunity to make informed decisions regarding their rights and prevent Plaintiff from further perpetrating the fraud.

58.    A monetary award will fail to provide full relief to the Defendant. Money damages will not compensate Defendant for his current lack of pertinent information. Such information, and the ability to disseminate it, is in Plaintiff's exclusive control. Absent a court order, Defendant and the public will be unable to obtain the information necessary to make informed decisions regarding their rights.

Exhibit 1

59.     No thirty-day demand letter was required in this matter per § 9(3) of Chapter 93A, because the Plaintiff does not maintain a place of business or keep assets in the Commonwealth and/ or because this action is asserted by way of counterclaim.

### PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaimant Sandipan Chowdhury respectfully requests that this Court issue judgment as follows:

A.      That AF Holdings, Inc. take nothing by the Complaint and that the same be dismissed with prejudice;

B.      That Plaintiff has misused its copyright and that it should be invalidated;

C.      Declaring that Defendant/Counterclaimant is not liable for directly or indirectly infringing Plaintiff's copyright, conspiring to do so, or negligently allowing the same;

D.      Declaring that Plaintiff's copyright is unenforceable and invalid;

E.      Awarding Defendant/Counterclaimant his costs and reasonable attorneys' fees incurred this action;

F.      Awarding Defendant/Counterclaimant all damages that he has sustained as a consequence of Counterclaim Defendant's acts complained of herein; and

G.      Granting such other and further relief as the Court deems appropriate.

### DEMAND FOR JURY TRIAL

Defendant/Counterclaimant Sandipan Chowdhury hereby demands a trial by jury on all counterclaims asserted in this Answer so triable.

Dated: January 4, 2013

Respectfully,

Jason E. Sweet (BBO# 668596)
BOOTH SWEET LLP
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

Exhibit 1

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2013, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

Jason E. Sweet

Exhibit 1

Paul Hansmeier <prhansmeier@thefirm.mn>

---

**lings of Fact and Order - Cooper v. Steele et al.**

---

.com>                                                                    Mon, May 13, 2013 at 2:14 PM

)thefirm.mn>


ment for the revised proposed findings of fact, conclusions of law, and order for default. A PDF version of this will be
ylerHost along with a supplemental brief addressing Defendant Prenda Law's belated Answer and Judge Wright's Order which


d recipient(s) only and may contain information that is confidential and legally privileged.  Any unauthorized use or disclosure is prohibited.
olease contact the sender by reply email and destroy all copies of the original message.


v Steele et al.doc


Exhibit 2

STATE OF MINNESOTA                          DISTRICT COURT
COUNTY OF HENNEPIN                   FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| Alan Cooper,<br><br>                    Plaintiff, | Court File No.: 27-CV-13-3464 |
| v. | **PROPOSED FINDINGS AND ORDER** |
| John Lawrence Steele; Prenda Law, Inc.; AF Holdings, LLC; Ingenuity13, LLC.<br><br>                    Defendants | |

    The above action came before this Court on Plaintiff's Motion for Default Judgment against Defendant Prenda Law, Inc.. Based on the papers submitted, counsel's arguments, all the records and proceedings, and the entire court file, the Court issues the following Findings and Order.

### FINDINGS OF FACT

1. Plaintiff completed service of the Summons and Complaint on Defendant Prenda Law on March 18, 2013.

2. Defendant Prenda Law, Inc. failed to answer within the time allowed.

3. The facts as plead in the Complaint are accepted as true.

4. Defendant Prenda Law, Inc. has also operated under the names "Steele Hansmeier, PLLC" and "Anti Piracy Law Group."

5. Plaintiff Alan Cooper had been hired in 2006 as a caretaker for a property owned by John Steele in Aitkin County. As part of his lease agreement with Steele, Cooper was allowed to stay in a guest house on the property and helped with remodeling and general maintenance of the property.

6. During the time that Cooper worked for Steele, Steele's law firm, Defendant Prenda Law, had been actively engaged in a campaign of copyright lawsuits.

Exhibit 2

7.   Cooper was not aware of details of the lawsuits Prenda had filed, but in November 2012, Cooper was told that his name was being used by Prenda Law clients, specifically AF Holdings, LLC and Ingenuity13, LLC.

8.   Prenda Law has filed copies of copyright assignment agreements that bear the signature of an "Alan Cooper" signing on behalf of its client AF Holdings, LLC.

9.   Plaintiff Alan Cooper was not aware of these documents and did not sign these documents.

10.  On at least one occasion, Prenda Law has asserted that an "Alan Cooper" is the manager of another client, Ingenuity13, LLC.

11.  Plaintiff Alan Cooper is not a manager of Ingenuity13, LLC.

12.  Defendant Prenda Law knowingly used the name of Steele's caretaker, Alan Cooper, so as to conceal the fact that AF Holdings and Ingenuity13 were created by Prenda for its own use.

13.  Prenda keeps all proceeds from litigation and settlements on behalf of its clients AF Holdings and Ingenuity13.

14.  Prenda Law has brought at least 216 lawsuits on behalf of AF Holdings, LLC in federal district courts across the nation within the past several years.

15.  Prenda Law has brought at least 50 lawsuits on behalf of Ingenuity13, LLC in federal district courts across the nation within the past several years.

16.  Prenda Law knew that it did not have authorization to use Alan Cooper's name for any of these lawsuits, and it did so for its own benefit.

17.  AF Holdings and Ingenuity13 were created by Prenda Law and its attorneys solely as a vehicle for litigation.

**CONCLUSIONS OF LAW**

Exhibit 2

18.  Defendant Prenda Law, Inc. willfully invaded Alan Cooper's privacy through the
     misappropriation of his name.

19.  Defendant Prenda Law, Inc. violated Minn. Stat. § 325D.44 through the unlawful use of
     Alan Cooper's name.

20.  Defendant Prenda Law, Inc. conspired with co-defendants John Lawrence Steele, AF
     Holdings, LLC, and Ingenuity13, LLC to harm Plaintiff Alan Cooper.

21.  Prenda Law itself has not maintained sufficient corporate records or adequate capitalization
     sufficient to maintain corporate protection for its shareholders, officers, or directors.

22.  Defendant Prenda Law, Inc. has failed to properly conduct itself as a true corporation and
     its shareholders, officers, and directors will be personally liable for its actions.

23.  Prenda Law's shareholders, officers, and directors include: Paul Duffy, John Steele, and
     Paul Hansmeier, but may include others as well.

24.  The Court therefore finds that Plaintiff is entitled to a judgment in the amount of
     $4,641,000 enforceable against Prenda Law, Inc. and its shareholders, officers, and
     directors.

### ORDER

1.  Plaintiff Alan Cooper's Motion for Default Judgment against Prenda Law, Inc. is
    GRANTED.

2.  Defendant Prenda Law, Inc., and its officers and directors shall pay $4,641,000 in damages
    to Plaintiff.

3.  Defendant Prenda Law, Inc. and its shareholders, officers, agents, and affiliates shall
    immediately cease all further use of Plaintiff Alan Cooper's name.

4.  Defendant Prenda Law, Inc. and its shareholders, officers, agents, and affiliates shall

**Exhibit 2**

within 10 days from the date of this Order, notify all other courts where it has filed a case

on behalf of AF Holdings, LLC or Ingenuity13, LLC that it has misappropriated Alan

Cooper's name.

5.    Defendant Prenda Law, Inc., and its shareholders, officers, agents, and affiliates shall

immediately cease sending settlement letters on behalf of AF Holdings, LLC and

Ingenuity13, LLC.

SO ORDERED

DATE:_____            _____

                             Judge Ann Leslie Alton

**Exhibit 2**

**Full docket text for document 84:**
Judge Indira Talwani: ELECTRONIC ORDER entered. ORDER Setting Hearing on Motion [81] MOTION to Substitute Party : Motion Hearing set for 1/26/2017 10:00 AM in Courtroom 9 before Judge Indira Talwani. (MacDonald, Gail)

Exhibit 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PRENDA LAW, INC.,

      Plaintiff,

      v.

PAUL GODFREAD, ALAN COOPER, and
JOHN DOES 1-10,

      Defendants.

Case No. 13-CV-4341

Judge John W. Darrah

**REPORT TO THE COURT**

1.     John L. Steele (hereinafter "Steele") has been referred to in several recent minute orders entered by this Court in the above-captioned case. In those minute orders, this Court has required the attendance of a "representative of Plaintiff's law firm" at a hearing in this matter. Although the above-captioned matter was consolidated with case number 13-CV-1569 in June 2013, the minute entries referring to Steele appear on the docket only of the above-captioned matter.

2.     As set forth more fully below, Steele is not a "representative of Plaintiff's law firm" or in any other way involved in the above-captioned case or case number 13-CV-1569, and he has had no involvement with either of those cases. Steele expressly does not submit to jurisdiction in either of those cases, and he remains a nonparty to those cases. Because he is not a party, he cannot file a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, or otherwise request any relief of this Court.

**Exhibit 4**

3.      Steele is filing the instant Report in order to apprise the Court that he is not a party whose attendance should be sought or compelled in this matter. He further apprises the Court that to the extent that Defendants/Counter-Plaintiffs have suggested that this Court has jurisdiction over him, or that it should have jurisdiction over him, they are incorrect.

**A.      STEELE HAS HAD NO INVOLVEMENT IN CASE NUMBERS 13-CV-4341 AND 13-CV-1569**

4.      Case number 13-CV-4341 was originally filed by Illinois attorney Kevin Hoerner as a state court action in the Circuit Court of St. Clair County, Illinois on February 12, 2013.

5.      Case number 13-CV-1569 was originally filed by Paul Duffy as a state court action in the Circuit Court of Cook County, Illinois on February 15, 2013.

6.      John L. Steele (hereinafter "Steele") did not draft either the St. Clair County complaint or the Cook County Complaint. He did not cause or direct either complaint to be filed. Mr. Steele is not a plaintiff or other party to either complaint, and the allegations of those complaints do not refer to him.

7.      On March 1, 2013, the St. Clair County case was removed to the United States District Court for the Southern District of Illinois, and it was then assigned case number 13-CV-4341.

8.      On April 12, 2013, the Cook County case was removed to the United States District Court for the Northern District of Illinois, and it was then assigned case number 13-CV-1569.

Exhibit 4

9.     On June 12, 2013, case number 13-CV-4341 was transferred to the United States District Court for the Northern District of Illinois, and on June 28, 2013, it was consolidated with case number 13-CV-1569.

10.     At no time before, during, or after any of the proceedings described in paragraphs 1 through 6, *supra*, did Steele participate in any proceedings relating to either case number 13-CV-4341 or case number 13-CV-1569, direct any proceedings relating to either case, or otherwise have any involvement in either case.

11.     At no time relevant to either case number 13-CV-4341 or case number 13-CV-1569 was Steele a principal, officer, owner, director, shareholder, operator, agent, or employee of Prenda Law, Inc.

12.     At no time relevant to case number 13-CV-4341 or case number 13-CV-1569 was Steele a principal, officer, owner, director, shareholder, operator, agent, or employee of Duffy Law Group.

13.     At no time relevant to case number 13-CV-4341 or case number 13-CV-1569 was Duffy an agent or employee of Steele.

14.     Steele has never appeared in either case number 13-CV-4341 or in case number 13-CV-1569 as an attorney, as a party, or in any other capacity.

15.     Steele has never been served with process in either case number 13-CV-4341 or case number 13-CV-1569.

## B.  RELEVANT RECENT PROCEDURAL HISTORY

16.     On February 3, 2014, this Court entered an order in case number 13-CV-4341 providing that sanctions would be imposed against Prenda Law, Inc. and attorney Paul Duffy

3

Exhibit 4

(who, in addition to being the sole attorney representing Prenda in case number 13-CV-4341, is the plaintiff in case number 13-CV-1569).

17.     On April 4, 2014, Defendants/Counter-Plaintiffs filed their Second Amended Counterclaims in case number 13-CV-1569. The Defendants/Counter-Plaintiffs did not name Steele as a counter-defendant, or as a party to either case number 13-CV-1569 or 13-CV-4341, in their Second Amended Counterclaims or in any other pleading. Rather, they named Prenda Law, Inc. and Paul Duffy as Counter-Defendants.

18.     Defendants/Counter-Plaintiffs did not serve Steele with a copy of the Second Amended Counterclaims at any time, or in any manner.

19.     On June 12, 2014, this Court entered an order in case number 13-CV-4341 fixed the amount of the sanctions referred to in the February 3, 2014 order at $11,758.20. This Court specifically limited the amount of the sanctions by finding that only "conduct that occurred in this Court" would be deemed to be sanctionable, *i.e.*, not conduct that occurred outside of case numbers 13-CV-4341 or 13-CV-1569.

20.     On October 30, 2014, Defendants/Counter-Plaintiffs filed a pleading entitled "Renewed Motion to Dismiss Pursuant to the Minnesota Anti-SLAPP Act, Minn. Stat. § 554.01, *et al.* Prompted by a Change in Law" in case number 13-CV-1569. The Defendants/Counter-Plaintiffs did not name Steele as a counter-defendant, or as a party to either case number 13-CV-1569 or 13-CV-4341, in the Renewed Motion to Dismiss. Rather, they named Prenda Law, Inc. and Paul Duffy as parties and Counter-Defendants.

21.     Defendants/Counter-Plaintiffs did not serve Steele with a copy of the Renewed Motion to Dismiss at any time, or in any manner. Nevertheless, they asked this Court to

4

Exhibit 4

impose "[a]ny and all liabilities of Counterdefendant Prenda Law, Inc....upon John Steele,

Paul Hansmeier, and Counterdefendant Paul Duffy jointly and severally."

22.     Also on October 30, 2014, Defendants/Counter-Plaintiffs filed their Motion for

an Order of Joint and Several Liability (referred to in later proceedings as their "Motion to

Impose Liabilities"). In that Motion, Defendants/Counter-Plaintiffs requested that this Court

hold Steele, Paul Hansmeier, and Paul Duffy jointly and severally liable for monetary

sanctions and damages based on any claims brought against Prenda for alleged conspiracy

and alleged anti-SLAPP statute violations.

23.     On January 22, 2015, this Court entered an order in case number 13-CV-4341

providing that Prenda Law, Inc. and Paul Duffy were to be held jointly and severally liable

for the $11,758.20 in sanctions referred to in the Court's June 12, 2014 order.

24.     On April 9, 2015, this Court entered an order in case number 13-CV-1569

granting the Defendants'/Counter-Plaintiffs' Renewed Motion to Dismiss (referred to in

paragraph 17, *supra*).

25.     Also on April 9, 2015, this Court entered an order in case number 13-CV-1569

denying the Defendants'/Counter-Plaintiffs' Motion to Impose Liabilities. In its order, this

Court correctly found that Steele and Hansmeier

> have not been designated parties to the present litigation, nor
> have they been made parties by service of process. As such, this
> Court has not gained jurisdiction over Steele and Hansmeier.
> Further, if Hansmeier and Steele were made parties, it would
> destroy diversity jurisdiction, as Counterclaimants and
> Hansmeier are citizens of Minnesota.

26.     Steele did not receive notice of either order entered on April 9, 2015 at any

time, or in any manner.

Exhibit 4

27.     On August 10, 2015, Paul Duffy died.

28.     Upon information and belief, as of August 10, 2015, Duffy was the only owner, officer, shareholder, director, employee, or agent of Prenda Law, Inc. As of August 10, 2015, Steele was not an owner, officer, shareholder, director, employee, or agent of Prenda Law, Inc.

29.     On August 20, 2015, this Court entered an order in case number 13-CV-1569 awarding Defendants/Counter-Plaintiffs reasonable attorney's fees and costs "for the entirety of this lawsuit." This Court also ordered Defendants/Counter-Plaintiffs to submit a petition for itemized attorney's fees and costs incurred, excluding those previously awarded; a statement of actual damages; and a statement of punitive damages "related to this action." This Court ordered that the statement be filed within 30 days.

30.     Steele did not receive notice or a copy of the August 20, 2015 order in case number 13-CV-1569 at any time, or in any manner.

31.     Also on August 20, 2015, this Court entered an order in case number 13-CV-4341 continuing the matter for further status to September 30, 2015. Steele did not receive notice of the August 20, 2015 order in case number 13-CV-4341 at any time, or in any manner.

32.     On September 29, 2015, Defendants/Counter-Plaintiffs filed the Statement of Damages referred to in this Court's August 20, 2015 order. Defendants/Counter-Plaintiffs did not serve a copy of the Statement of Damages on Steele at any time, or in any manner.

33.     On September 30, 2015, this Court entered an order in case number 13-CV-4341 continuing the matter for further status to October 14, 2015, and ordering that a

Exhibit 4

"representative from plaintiff's law firm" be present at the October 14 hearing. Steele did not receive notice or a copy of the September 30, 2015 order in case number 13-CV-4341 at any time, or in any manner.

34.     On October 14, 2015, this Court entered an order in case number 13-CV-4341 continuing the matter for further status to November 4, 2015. This Court also entered a Rule to Show Cause against "the representative from plaintiff's law firm" and granted Defendants/Counter-Plaintiffs leave to file a motion for sanctions.

35.     On or about October 23, 2015, attorney Erin K. Russell sent Steele a copy of this Court's October 14, 2015 order in case number 13-CV-4341 via FedEx.

36.     As of October 23, 2015, Steele was not a representative of Prenda Law, Inc., or of Duffy Law Group.

37.     On November 4, 2015, this Court entered an order in case number 13-CV-4341 continuing the matter for further status to December 1, 2015. The Court's order further provided as follows:

> [r]eturn on the rule to show cause against the representative from plaintiff's law firm is set for 12/1/15 at 9:30 a.m. Counsel for the defendants advised the Court that they spoke to Mr. John Steel(e) and he was aware of the 11/4/15 status.

38.     On November 20, 2015, the undersigned, as counsel for Steele, wrote and sent a letter to Ms. Russell concerning the instant matter. (A copy of the letter is attached hereto as Exhibit 1.) In the letter, counsel informed Ms. Russell that Steele was not and is not a representative of Prenda Law Inc., or of Duffy Law Group. Counsel informed Ms. Russell that Mr. Steele was not and is not an officer, director, employee, or agent of either of those entities.

Exhibit 4

Counsel further informed Ms. Russell that Mr. Steele had no authority to appear on behalf of either Prenda Law, Inc. or Duffy Law Group at any hearing in this matter.

39.     Counsel for Steele received no response of any kind from Ms. Russell to the November 20, 2015 letter.

40.     On November 30, 2015, this Court entered an order amending its November 4, 2015 order "to reflect that counsel for the defendants advised the Court that Mr. John Steel(e) was advised via mail of the status and he was unable to be present." The Court also reset the status hearing in this matter to January 26, 2015, and continued the return on the rule to show cause against "the representative from plaintiff's law firm" until that time.

41.     Shortly after November 30, 2015, Ms. Russell sent Steele a copy of this Court's November 30, 2015 order via FedEx.

## C.  ARGUMENT

42.     In their September 29, 2015 Statement of Damages (filed in case number 13-CV-1569), Defendants/Counter-Plaintiffs purport to articulate a theory under which Steele should be held liable for sanctions and damages, both actual and punitive, in this matter.

43.     As this Court pointed out in its April 9, 2015 order, however, Defendants/Counter-Plaintiffs are incorrect. They have never served Steele with process in either case number 13-CV-4341 or case number 13-CV-1569, or provided him notice of any pleading they have filed. They have recently sent him copies of orders after they were entered, but that alone cannot subject him to any kind of jurisdiction or liability. They have made no allegation that Steele has engaged in any conduct of any kind relating to either case number 13-CV-4341 or case number 13-CV-1569, and in fact he has not done so.

8

Exhibit 4

44.     Further, as this Court observed in its April 9, 2015 order, for Defendants/Counter-Plaintiffs to plead Steele and Hansmeier into this case, or serve them with process, would destroy diversity jurisdiction.

45.     To attempt to solve their conundrum, Defendants/Counter-Plaintiffs are apparently suggesting to this Court that Steele is somehow already in the case by virtue of some alleged involvement with Prenda Law, Inc. But the evidence belies that claim. As the Court observed in its January 22, 2015 order holding Duffy personally liable for $11,728 in sanctions, the facts presented to the Court in this case demonstrated that Duffy himself was the sole owner and officer of Prenda. This Court took that as true in its January 22, 2015 order, and it was true.

46.     Defendants/Counter-Plaintiffs suggest to this Court that it should consider Steele to be involved somehow with Prenda now, or to have been involved with Prenda for the duration of this case, because of a prior order or orders in other matters finding that Steele participated in Prenda. They claim that issue preclusion requires this Court to find the same things as other courts found, and in so doing to hold Steele personally liable for things he did not do in cases in which he was not involved.

47.     As this Court observed in its April 9, 2015 order in case number 13-CV-1569, the United States Supreme Court recently unanimously reaffirmed the "principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process," *Taylor v. Sturgell*, 128 S.Ct. 2161, 171 L.Ed.2d 155, 553

9

Exhibit 4

U.S. 880, 884. The Court emphasized the "fundamental nature" of that general rule. *Id.*, at 898.

48.     That fundamental principle is fully applicable here, even though Steele was not actually a "litigant" in case numbers 13-CV-4341 or 13-CV-1569. He was, and is, purely a nonparty.

WHEREFORE, John L. Steele reports the foregoing matters to this Court.


                              Respectfully submitted,
                              John L. Steele


                               /s/ Mary Robinson
                              BY:    Mary Robinson


                               /s/ James A. Doppke, Jr.
                              BY:    James A. Doppke, Jr.
                                     Counsel for John L. Steele


James A. Doppke, Jr.
Robinson Law Group, LLC
20 South Clark Street, Suite 1060
Chicago, IL 60603
(312) 676-9875
mrobinson@robinsonlawillinois.com
jdoppke@robinsonlawillinois.com

10

Exhibit 4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL DUFFY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL GODFREAD, ALAN COOPER, | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | Case No. 1:13-cv-4341 |
| | ) | |
| | ) | |
| PAUL GODFREAD and ALAN | ) | |
| COOPER, | ) | |
| | ) | |
| Counter-Plaintiffs, | ) | Honorable John W. Darrah |
| | ) | |
| v. | ) | |
| | ) | |
| PRENDA LAW, INC. and PAUL | ) | |
| DUFFY, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

RESPONSE TO JOHN STEELE'S "REPORT TO THE COURT"

COME NOW Defendants/Counter-Plaintiffs Paul Godfread and Alan Cooper, and in response to the "Report to the Court" filed by John L. Steele show the Court as follows:

A. JOHN STEELE WAS AT ALL TIMES RELEVANT TO THIS MATTER A PRINCIPAL OF PRENDA LAW, INC.

John Steele is and at all times relevant to these matters has been a principal of Prenda Law, Inc. Steele was ordered to testify regarding his involvement as a principal of Prenda Law, Inc. before the Honorable Otis T. Wright in the United States District Court for the Central District of California, and rather than testify regarding this simple question failed to attend the hearing and instead sent an attorney to inform the Court that he was invoking his

Exhibit 4

Fifth Amendment privilege against self-incrimination. [ECF No. 50-3; 13-cv-1569]. Moreover, in 2011, Steele spoke with the undersigned regarding a hearing in a matter filed by Prenda Law, Inc. in the Circuit Court of Cook County and expressly identified himself as the "head" of Prenda Law Inc. (Ex. A, Declaration of Erin K. Russell).

### B. STEELE MADE FALSE ASSERTIONS TO THIS COURT IN THE "REPORT TO THE COURT" FILED IN THIS MATTER BY HIS COUNSEL

Steele's assertion that he did not cause or direct either of the Complaints to be filed in this matter is false. (*See* ECF No. 102, paragraph 6). This Court has already been presented with evidence of Steele's attempts to intimidate Godfread and Cooper by threatening this litigation and identifying himself as "opposing counsel". [ECF No. 50, p. 4-6]. There was a third identical lawsuit filed by Steele against Godfread and Cooper. It was filed in Florida and voluntarily dismissed by Steele after it was removed to federal court. [ECF No. 50, p. 4-5] (Ex. B). This Court has also already been presented with evidence that Steele called Godfread shortly after Godfread was served to boast and taunt him[1]. [ECF No. 51, p. 5]. The fact that Steele has now directed his current counsel to make this filing, taking up the Court's time with additional false statements, is outrageous. Defendants will be filing a motion for sanctions.

### C. STEELE HAS SUBJECTED HIMSELF TO THE JURISDICTION OF THIS COURT BY MAINTAINING MINIMUM CONTACTS WITH THE STATE OF ILLINOIS AND BY FILING HIS "REPORT TO THE COURT"

This Court has personal jurisdiction over Steele.

Steele maintains sufficient minimum contacts for this Court to exercise personal jurisdiction over him. *Intl. Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1940) (Due process under the Constitution of the United States requires that the non-resident have certain

---

[1] A copy of the voice mail message left by Steele will be provided to the Court and to Steele's counsel.

2

Exhibit 4

minimum contacts with it such that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice.) Steele maintains an office in Chicago. (Ex. C).

Steele is an attorney licensed to practice law in the State of Illinois. (Ex. C). Moreover, Steele

practices law in this very court, and is currently counsel of record in 10 open cases. (Ex. D).

Additionally, Steele directed his counsel to file the "Report to the Court" to which

Defendants respond herein. In his "Report", Steele made legal arguments he asks this Court

to consider in ruling on issues in this matter, attempted to instruct the Court that it cannot

have jurisdiction over him, and also made false statements of fact. By filing the "Report to

the Court", Steele has purposefully availed himself of the laws of the State of Illinois,

subjecting himself to the jurisdiction of this Court. *Woolard v. Woolard*, 2009 U.S. Dist.

LEXIS 88898 (N.D. Ill., September 23, 2009).

Respectfully submitted,

/s/ Erin K. Russell

The Russell Firm, LLC
233 South Wacker Drive, 84th Floor
Chicago, Illinois 60611
T: 312-994-2424
F: 312-706-7966
erin@russellgroupchicago.com
ARDC # 6287255


CERTIFICATE OF SERVICE

The undersigned certifies that on February 17, 2016, she caused the foregoing to be filed
with the Court via the CM/ECF electronic filing system, thereby serving all parties of record.

/s/ Erin K. Russell

Exhibit 4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PRENDA LAW, INC.,

  Plaintiff,

  v.

PAUL GODFREAD, ALAN COOPER, and
JOHN DOES 1-10,

  Defendants.

Case No. 13-CV-4341

Judge John W. Darrah

**REPLY TO DEFENDANTS' RESPONSE TO JOHN L. STEELE'S REPORT TO THE COURT**

  John L. Steele ("Steele"), a nonparty to this action, as and for his Reply to Defendant's Response to his January 20, 2016 Report to the Court, states as follows:

  1. John L. Steele (hereinafter "Steele") is not a party to the instant case, having not been served with process or otherwise interpled. He was referred to in several recent minute orders entered by this Court in the above-captioned case. In those minute orders, this Court has required the attendance of a "representative of Plaintiff's law firm" at a hearing in this matter. Although the above-captioned matter was consolidated with case number 13-CV-1569 in June 2013, the minute entries referring to Steele appear on the docket only of the above-captioned case.

  2. On January 20, 2016, Steele filed a Report to the Court, the sole purpose of which was to inform this Court that Steele is not a "representative of Plaintiff's law firm" or in any other way involved in the above-captioned case or case number 13-CV-1569. Steele

Exhibit 4

did not and does not submit to jurisdiction in either of those cases, and he remains a nonparty to those cases.

3.     On February 17, 2016, Defendants filed a three-page response to Steele's Report to the Court.

4.     The title of the first section of Defendants' response asserts that Steele was, at all times relevant to *this matter*, a principal of Prenda Law, the plaintiff herein.

5.     In support of that assertion, Defendants cite a 2012 order in *Ingenuity 13 LLC v. Doe* (12-CV-8333, C.D. Calif.), and an alleged 2011 conversation with counsel for Defendants in which someone purporting to be Steele allegedly said that he was a principal of Prenda.

6.     Neither demonstrates that Steele was a principal of Prenda in 2013, when this case was filed, or at any time thereafter up to and including the present.

7.     Defendants point out that Steele also filed his own case against them in Florida shortly after the filing of the instant case. That is correct. He dismissed the case 18 days later, never to revive it. Defendants assert that that somehow shows that Steele had something to do with this case. It does not. He filed his own case, and he let it go. He needed nothing to do with this case, and he had nothing to do with it.

8.     Defendants also refer to voice mail messages allegedly left by Steele, one in which he identified himself as "opposing counsel" and one in which he was "boast[ful]" about something prior to the filing of this case.

9.     Nothing in Defendants' account of the content of the first voice mail message, as reported by Defendants, would indicate that Steele meant to, or did, identify himself as

2

Exhibit 4

"opposing counsel" in *this case*. Nothing in Defendants' account of the message indicates that Steele was an officer or agent of Prenda Law at that time. Steele did not subsequently file an appearance as opposing counsel in this case. He did file the Florida case, in which he was opposing counsel to Defendants (in addition to being a party). He then dismissed that case.

10.     Nothing in the content of the second voice mail message, as reported by Defendants, indicates that Steele was then taking – or subsequently took – any action with respect to *this case*. Nothing in Defendants' account of the message indicates that Steele was an officer or agent of Prenda Law at that time.

11.     Defendants assert that Steele maintains an office in Chicago; is licensed to practice law in Illinois; and has other, unrelated litigation pending before this Court. But none of that is relevant to this Court's inquiry into whether Steele either took any action with respect to this case, or whether he was an officer or agent of Prenda Law at any time during this case (especially as of January 22, 2015, when this Court imposed an $11,728 sanction on Duffy and Prenda based on Duffy's conduct).

12.     The salient facts are laid out in Steele's Report to the Court. Neither Defendants nor this Court saw, spoke with, or otherwise dealt with Steele in this case. Only Paul Duffy, now deceased, appeared or filed any documents in this case. There is no evidence that Steele had any interest or position in Prenda during this case, or that he otherwise had anything to do with Duffy's conduct.

13.     Defendants cannot claim otherwise. Yet they now assert that for Steele to point it out is somehow sanctionable. Steele has done nothing to multiply the proceedings in this

3

**Exhibit 4**

matter (even as Defendants announce their intent to do so), and he is accurately reporting facts to the Court.

14.     *Woolard v. Woolard*, 2009 U.S. Dist. LEXIS 88898 (N.D. Ill., September 23, 2009), cited in Defendants' response, is inapposite. That case concerned a litigant who, having once intervened the same case in relation to a citation to discover assets, attempted to resist being forced to participate in a later citation proceeding. The court determined that the non-party had sufficient minimum contacts with Illinois to justify personal jurisdiction, and in particular that the activities which constituted those contacts all related to the citation proceeding at issue.

15.     Steele, unlike the litigant in *Woolard*, has not intervened in this case. Further, the question is not whether Steele should be sued in Illinois, or whether he should be sued somewhere else. The point is that he has not sued, or been sued, in this case. He is only here because it appeared that Defendants were wrongfully attempting to summon him to appear before this Court. It was (and is) appropriate for him to inform this Court that he has no connection to this matter.

Exhibit 4

WHEREFORE, John L. Steele reports the foregoing matters to this Court.

Respectfully submitted,
John L. Steele


_/s/ Mary Robinson_____
BY:    Mary Robinson


_/s/ James A. Doppke, Jr._____
BY:    James A. Doppke, Jr.
       Counsel for John L. Steele


James A. Doppke, Jr.
Robinson Law Group, LLC
20 South Clark Street, Suite 1060
Chicago, IL  60603
(312) 676-9875
mrobinson@robinsonlawillinois.com
jdoppke@robinsonlawillinois.com

Exhibit 4

Watson v. Stonewall Jackson Mem'l Hosp. Co. (In re Watson), Case No. 10-109,
10-109,
2010 Bankr. LEXIS 3736, 2010 WL 4496837 (Bankr. N.D.W. Va.  Nov. 1,
2010).

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, November 01, 2010 3:59:24 PM

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DAVID ALAN WATSON, | ) | Case No. 10-1292 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| _____ | ) | |
| | ) | |
| DAVID ALAN WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 10-109 |
| | ) | |
| STONEWALL JACKSON MEMORIAL | ) | |
| HOSPITAL COMPANY and STEPTOE & | ) | |
| JOHNSON PLLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPININON

Stonewall Jackson Memorial Hospital and Steptoe & Johnson, PLLC (collectively, the "Hospital") seek to dismiss this adversary proceeding filed against it by David Alan Watson (the "Debtor") on the grounds that the Debtor failed to state a claim upon which relief may be granted. The Debtor responds that this adversary proceeding states a claim for contempt under 11 U.S.C. § 105 due to the Hospital's filing of an allegedly false or fraudulent proof of claim.

For the reasons stated herein, the court will deny the motion to dismiss.

## I. STANDARD OF REVIEW

In adjudicating a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6),

Page 1 of  6

Exhibit 5

a court must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them, and a court may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). This tenant, however, is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Defeating a motion for relief under Rule 12(b)(6) requires the plaintiff to provide more in the complaint than "mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The factual allegations in the complaint "must be enough to raise a right of relief above the speculative level," *id.* at 1959, and be enough to "state a claim to relief that is plausible on its face." *Ashcroft*, 129 S. Ct. at 1949. Determining whether a complaint is "facially plausible" is context-specific, requiring the reviewing court to draw on its experience and common sense. *Id.* at 1950.

## II. BACKGROUND

As alleged in the Debtor's complaint, when he filed his June 21, 2010 Chapter 7 bankruptcy petition, he had secured debts for his home and automobile totaling $144,796.98, and an unsecured student loan for $96,808.65, for a total consumer debt amount of $241,605.63. In addition, the Debtor listed a debt owing to the Hospital for $600,000, which the Debtor claims is a business debt. Thus, on his schedules accompanying his bankruptcy petition, the Debtor claims to have primarily business debts meaning that he was not subject to means testing or other provisions of 11 U.S.C. § 707(b).

The debt owed to the Hospital arises out of an alleged breach of a June 10, 2004 Income Guarantee Agreement, which was executed by the parties for the purpose of enticing the Debtor to open a medical practice in the Hospital's service area. The Hospital terminated the Debtor's employment as of August 5, 2009, and on May 20, 2009, the Hospital provided the Debtor with a spreadsheet stating that $573,099.41 remained to be paid to the Hospital under the Income Guarantee Agreement. By April 6, 2010, the Hospital modified its demand and agreed to accept $320,358.17 plus interest. On June 25, 2010, however – four days after the Debtor's Chapter 7 bankruptcy petition – the Hospital asserted that the Debtor owed it $600,000 plus interest.

Exhibit 5

On August 3, 2010, the Hospital filed its proof of claim (although the Chapter 7 trustee had not yet designated the case as one having assets) for $223,703.63. At the Debtor's meeting of creditors on August 4, 2010, the Hospital represented that it was unaware that any other funds were due to it. If the Hospital is only owed $223,703.63, and if combined with the Debtor's other unsecured debts, he would fall under the unsecured debt eligibility limits for filing a Chapter 13 case. 11 U.S.C. § 109(e) (providing an unsecured debt limit of $336,900 in 2010). Likewise, as asserted by the Debtor, his total business debt may be less than his total consumer debts – meaning that he may be subject to means testing under § 707(b).

### III. DISCUSSION

The Debtor contends that the Hospital filed a false or fraudulent proof of claim for the purpose of subjecting him to means testing under 11 U.S.C. § 707(b) and to put him within the eligibility debt limits for a Chapter 13 case under § 109(e). In the Debtor's view, filing a claim for less than the amount owed is tantamount to filing a false claim, and is a fraud on both the Debtor and the court.

The Hospital argues that the Debtor has failed to point to any statutory provision or common law right that suggests that a creditor filing a proof of claim for less than the amount originally asserted is fraudulent. Similarly, the Hospital states that the Debtor has not suffered any damage as a result of its actions.

The filing of a false proof of claim in a bankruptcy case is a crime under 18 U.S.C. § 152(4). Although a crime, Congress did not create any private right of action for violation of § 152(4). *E.g., Clayton v. Raleigh Federal Savings Bank*, No. 96-1696, 1997 U.S. App. LEXIS 3503 (4th Cir. Feb. 27, 1997) ("We agree with the magistrate judge that neither statute cited in the amended complaint [including 18 U.S.C. § 152(4)] gives rise to a private cause of action."); *see also Heavrin v. Boeing Capital Corp.*, 246 F. Supp.2d 728, 731 (W.D. Ky 2003) (same), *aff'd*, 384 F.3d 199 (6th Cir. 2004).

Although the federal criminal statute prohibiting the falsifying of a proof of claim does not provide a party with a civil right of action, a bankruptcy court is empowered by 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The statute specifically allows a bankruptcy court to take "any action . . . necessary or appropriate . . . to prevent an abuse of process." *Id.*; *see also Marrama v. Citizens Bank of Mass.*

Exhibit 5

549 U.S. 365, 375 (2007) (noting that bankruptcy courts have "broad authority" under § 105(a)). As stated by the Court of Appeals for the First Circuit in *Bessette v. Avco Fin. Servs.*, 230 F.3d 439, 444-45 (1st Cir. 2000), "§ 105 does not itself create a private right of action, but a court may invoke § 105(a) 'if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code,' so long as the court acts consistent with the Code and does not alter the Code's distribution or other substantive rights."

When a creditor files a false or fraudulent proof of claim, that filing contravenes the purpose of a specific bankruptcy statute and rule. Namely, under 11 U.S.C. § 501, a creditor is allowed to file a proof of claim, and under § 502(a), the mere filing of a proof of claim means that it is deemed allowed. Under Fed. R. Bankr. P. 3001(f), a proof of claim filed in accordance with the Bankruptcy Rules constitutes prima facie evidence of the validity and amount of the claim. When a creditor files a false or fraudulent proof of claim, which is deemed allowed by § 502(a), and entitled to prima facie presumption of validity and amount by Rule 3001(f), the creditor is abusing the bankruptcy process. *E.g., Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 356 n.1 (5th Cir. 2008) (noting that a bankruptcy court may use § 105 to impose sanctions on parties that abuse the procedural mechanism related to the filing of a proof of claim); *B-Real, LLC v. Chaussee (In re Chaussee)*, 399 B.R. 225, 241 (B.A.P. 9th Cir. 2008) ("[I]f a purported creditor abuses the claims process, we are confident that § 105(a) provides an effective mechanism for addressing that misconduct."); *Rojas v. Citi Corp Trust Bank FSB (In re Rojas)*, No. 09-7003, 2009 Bankr. LEXIS 2220 at *27 (Bankr. S.D. Tex. Aug 12, 2009) (holding that § 105(a) may be used in support of § 502 and Rule 3001 to hold a creditor in contempt for filing a false proof of claim); *In re Varona*, 388 B.R. 705, 717 (Bankr. E.D. Va. 2008) ("[Section] 105 may be used to sanction the filing of a proof of claim violative of the Bankruptcy Code . . . . The filing of a false or fraudulent claim would unquestionably constitute an abuse of the claims process as well as an attempted fraud upon the court.").

Some courts have refused to recognize a cause of action on behalf of a debtor for a creditor's filing of an allegedly false or fraudulent proof of claim. *E.g., Holloway v. Houshold Automotive Finance Corp.*, 227 B.R. 501, 506-07 (N.D. Ill. 1998) ("[T]o imply a private right of action under § 105(a) would undermine and be inconsistent with the underlying legislative scheme imposed by the Bankruptcy Code. Congress specifically enacted § 1330(a) to remedy confirmation orders

Exhibit 5

procured by fraud, and implying a private remedy for fraud would be inconsistent with this purpose. For these reasons we conclude that Congress never intended § 105(a) to serve as a private remedy against fraudulent proofs of claim and that Plaintiff is not entitled to any remedy under that provision."); *Smith v. Oak Grove Utility Co., LLC (In re Smith)*, No. 08-137, 2009 Bankr. LEXIS 78 (Bankr. D. Md. Jan. 16, 2009) (holding that nothing in §§ 105(a) or 501 of the Bankruptcy Code supported the debtor's claim against the creditor for filing a false or fraudulent proof of claim); *In re Rogers*, 391 B.R. 317, 323 (Bankr. M.D. La. 2008) (dismissing part of the debtor's complaint on the grounds that "as a matter of law, the debtors do not have a private right of action under section 105 against B-Real for filing proofs of claim for time-barred debts.").

It appears, however, that in each of these cases the moving parties were seeking to prosecute a private right of action and were not seeking a contempt sanction. In an analogous situation, with respect to violations of the Bankruptcy Code's discharge injunction, courts routinely allow debtors to prosecute those causes of action for contempt recognizing that no private right of action exists to remedy a discharge injunction violation. *E.g.*, *Pague v. Harshman (In re Pague)*, No. 09-71, 2010 Bankr. LEXIS 912 at *20 (Bankr. N.D.W. Va. April 5, 2010) ("Once a violation of the discharge injunction has been established, a bankruptcy court is empowered to impose remedial sanctions, and to ensure future compliance with the court's order of discharge."); *Johnston v. Telecheck Servs. (In re Johnston)*, 362 B.R. 730, 738-39 (Bankr. N.D.W. Va. 2007) (explaining why the discharge injunction of § 524 does not provide a private right of action). It would be illogical to, on one hand, recognize the right of a debtor to bring a contempt action for violation of the discharge injunction, and then, on the other, dismiss a contempt cause of action brought by the debtor to remedy a creditor's allegedly false or fraudulent proof of claim that abuses §§ 501 and 502 of the Bankruptcy Code and Rule 3001(f).

Some courts have refused to recognize a right of action by a debtor under § 105(a) against a creditor for the creditor's alleged filing of a false or fraudulent proof of claim on the grounds that Fed. R. Bankr. P. 9011 would provide the debtor with a remedy for such an alleged abuse. *E.g.*, *Smith*, 2009 Bankr. LEXIS 78 at *13 ("The proper procedure for a debtor to follow upon filing of a proof of claim that the debtor believes to be 'false and fraudulent' is to send the 21-day notice under Fed. R. Bankr. P. 9011(c)(1)(A), and then seek sanctions if it is not withdrawn."); Bruce H.

Exhibit 5

White & Maria H. Belfield, *Remedies Available to a Party Injured by a Fraudulent or False Proof of Claim*, 17-3 A.B.I.J. 43 (April 1998) (stating that no private right of action exists under 18 U.S.C. § 152, and then discussing the applicability of Rule 9011 in remedying an allegedly false or fraudulent proof of claim). Among other things, Rule 9011 sanctions the filer of a claim if the claim is not warranted by existing law, Rule 9011(b)(2), or if the allegations or factual contentions in the proof of claim do not have evidentiary support, Rule 9011(b)(3).

Rule 9011, however, like is counterpart, Fed. R. Civ. P. 11, has never been an exclusive remedy for an aggrieved party; rather, nothing precludes a party from pursuing other causes of action aimed at remedying the same wrong, such as seeking sanctions under 28 U.S.C. § 1927 (imposing sanctions for unreasonably and vexatiously multiplying proceedings), or relying on the inherent power of the court to impose sanctions for bad faith conduct. *E.g.*, 2 *Moore's Federal Practice – Civil* § 11.41[1] (2010) ("The inherent power of federal courts to impose sanctions for bad-faith conduct in the course of litigation is not displaced by the sanctioning provision of Section 1927 or Rule 11. Moreover, the district court is not required to apply other sanctions provisions first."). Consequently, this court does not believe that the availability of Rule 9011 sanctions to a party to address an allegedly false or fraudulent proof of claim is an exclusive remedy.

Accordingly, like *Varona*, 388 B.R. at 717, this court recognizes a cause of action for contempt under 11 U.S.C. § 105(a) when a creditor allegedly seeks to abuse the provisions of the Bankruptcy Code – namely §§ 501 and 502 and Rule 3001 – by filing a purportedly false or fraudulent proof of claim. Holding a creditor in contempt under § 105 is an appropriate remedy to prevent an abuse of the proof of claim process and safeguards the integrity of the proof of claim process.

## IV. CONCLUSION

For the above-stated reasons, the court will enter a separate order pursuant to Fed. R. Bankr. P. 7058 that denies the Hospital's motion to dismiss.

Exhibit 5

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:        DAVID ALAN WATSON                    BK. NO. 10-01292
              Debtor.

DAVID ALAN WATSON,
       PLAINTIFF,

v.                                                 AP NO. 10-

STONEWALL JACKSON MEMORIAL
HOSPITAL COMPANY and STEPTOE
& JOHNSON PLLC
       DEFENDANTS.

## **COMPLAINT FOR SANCTIONS AND OTHER APPROPRIATE RELIEF**

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§157 and 1334;

2. This is a core proceeding pursuant to 28 U.S.C. 152 (b)(2)(A), (B), (C), (I) and (O), 11 U.S.C. §105, and Rule 7001(7)

3. The Plaintiff, David Alan Watson, is the Debtor in the above-entitled Bankruptcy Case having filed his Petition on the 21st day of June, 2010;

4. The Defendant, Stonewall Jackson Memorial Hospital Company, is a corporation with its principal office located at 230 Hospital Plaza, Weston, Lewis County, West Virginia, which among other entities does business under the name of Stonewall Jackson Memorial Hospital and Lively Health Care Center;

5. The Defendant; Steptoe & Johnson PLLC, is a law firm with its principal office still reported to the Secretary of State as Chase Tower, Clarksburg, Harrison County, West Virginia, but it is believed that the principal office has been moved to 400 White Oaks Blvd., Bridgeport,

Exhibit 6

Harrison County, West Virginia;

6.  The notice of process address of the Defendant, Steptoe & Johnson PLLC, is in care of Susan S. Brewer, United Center, 108 S Van Voorhis Rd, Suite 400, Morgantown, Monongalia County, West Virginia, and it is believed that the said Susan S. Brewer is CEO of Steptoe & Johnson PLLC;

7.  The said Defendant, Steptoe & Johnson PLLC, as of August 8, 2010, has not made an appearance on the docket as counsel of record, but by its member or employee, Donald J Epperly, signed the Proof of Claim and used his name and office address as the address where Notices shall be addressed, and the said Donald J Epperly did appear on behalf of Defendant, Stonewall Jackson Memorial Hospital, at the Plaintiff's Meeting of Creditors held on August 4, 2010;

8.  Plaintiff's Bankruptcy Schedules filed the same day as his Petition noted secured debts for his home and vehicle totaling $144,796.98 and an unsecured student loan totaling $96,808.65 for a total consumer debt in the amount of $241,605.63;

9.  Plaintiffs' Bankruptcy Schedules further noted a business debt to Defendant, Stonewall Jackson Hospital, in the amount of $600,000.00.

10.  Because business debts were greater than consumer debts, Plaintiff's debts were primarily not consumer debts meaning that he was not subject to means testing or other provisions of 11 U.S.C. 707(b);

11.  Plaintiffs' debts to Defendant Stonewall Jackson Memorial Hospital Company, hereafter referred to as "Hospital" resulted from an Income Guarantee Agreement dated the 10th day of June, 2004, entered into between Hospital and Plaintiff which is attached to Hospital's Proof of Claim filed in the Bankruptcy Case which will be addressed hereinafter;

12.  In a nutshell, the Income Guarantee Agreement was created by the parties thereto to

Exhibit 6

entice Plaintiff to operate a medical practice in Hospital's service area which, as set forth in the Statement of Financial Affairs attached to the Bankruptcy Petition, said business came to be known as Lake Country Physician Group, LLC;

13. The enticement for the opening of the medical practice was a supplement to be paid Plaintiff by Hospital to insure that he would receive a guaranteed income of $120,000.00 per year at up to $10,000.00 per month, but that sum could be paid to Plaintiff well in advance of the month the supplement would have been due;

14. The original amount set forth to be paid was no more than $240,000.00 with a cap set at no more that $600,000.00,

15. The supplements were to be paid back with interest and a note and security agreement were signed at the same time as the Agreement which note was first at $240,000.00 but later amended to the full $600,000.00;

16. The interest rate on such supplement was set by the agreement at money rate plus 2% and payments were to be made on the supplement in any month that the Net Practice Income exceeded $10,000.00 in the amount of said Net Practice Income less $10,000.00;

17. According to the handwritten ledger appearing on page 26 of part 2 of Hospital's Proof of Claim the sum of $596,686.39 was advanced, but according to the spreadsheet provided to Gary K. Bennett, CPA in early 2009 and faxed to counsel on August 6, 2010, by Gary K Bennett and attached to this complaint as Exhibit 1, the total $600,000.00 was advanced to Plaintiff;

18. It become obvious to Plaintiff and Hospital that a successful private medical practice could not be maintained, so Plaintiff went to work for Hospital's Lively Health Care Center under the Employment Agreement dated October 27, 2006 which appears at page 41 of

Exhibit 6

Hospital's Proof of Claim.

19. As compensation for such employment Plaintiff was to be paid $120,000.00 per year;

20. In addition to such compensation, Plaintiff was to be given a forgiveness of a portion of the debt as set forth on page 56 and 57 of the Proof of Claim as pension not taken and the interest thereon, as well as $30,000.00, and, if sufficient profit be made, 25% of the loan balance and interest, with such calculations being run on a fiscal year running from October through September;

21. Although Plaintiff probably should have received a W-2 in the amount of $120,000.00 wages and a 1099 for forgiveness of debt, Hospital counted the forgiveness of debt as wages on the W-2 as shown on page 4 of Exhibit 1 attached to this complaint;

22. As shown on Exhibit 1 page 3, only the $30,000.00 sum consisting of $23,829.41 principal and $6170.59 interest was forgiven at the conclusion of the fiscal year ending September 30, 2007, leaving a balance due of $696,362.73 consisting of $576,170.59 principal and $120,192.14 interest.

23. As shown on Exhibit 1, page 2, in 2008 Plaintiff became eligible for a pension and the business began to show a profit, so forgiveness on the debt in 2008 totaled $171,226.96 principal and $44,804.95 for a total of $216,031.91 forgiven, but with additional interest assessed through the year, the balance due as of December 31, 2008 totaled $566,104.52 consisting of $428,279.04 principal and $137,825.49 interest;

24. By letter dated April 30, 2009, form David D Shaffer, CEO of Hospital, Plaintiff was terminated form his employment effective August 5, 2009 as set forth in Exhibit 2;

25. Such termination letter states that upon termination of the Employment Agreement, Hospital expected Plaintiff to fully perform under the Recruitment Documents, meaning pay the

**Exhibit 6**

balance due in full;

26. Shortly after receipt of such termination letter, Plaintiff retained Drew M Capuder of

Capuder Fantasia, PLLC to inquire as to the appropriateness of the termination and to determine

the amount due on the Income Guarantee Agreement;

27. By letter date May 15, 2009, reciting a phone conversation of April 29, 2009,

Defendant, Steptoe & Johnson PLLC, hereinafter referred to as "Steptoe" as of at least April 29,

2009, was representing Hospital in the matter of the termination of Plaintiff;

28. By letter date May 20, 2009, Steptoe provided Plaintiff's counsel with a spreadsheet

showing that $572,099.41 remained to be paid as of March 31, 2009, consisting of $427,144.23

principal and $144,955.18 interest which letter is attached as Exhibit 3;

29. By letter dated April 6, 2010, from Steptoe to Plaintiff's counsel, Hospital would

agree to accept $320,358.17, which is the sum of the first two years of advances, plus interest

which had accrued on such advances, a sum which Plaintiff has not attempted to calculate but

which probably totals over $400,000.00, to settle the debt owed to Hospital which letter is set

forth as Exhibit 4;

30. By letter dated June 2, 2010, from Steptoe to counsel, attached hereto as Exhibit 5,

Steptoe and Hospital reiterate the fact that $320,358.17 plus interest is a settlement offer thereby

creating the assumption that at least $572,099.41 plus accrued interest from March 31, 2009 is

the total amount owed to Hospital;

31. By letter dated June 25, 2010, and attached hereto as Exhibit 6, as of four days after

debtor filed his Bankruptcy Petition, Defendants assert that the sum of $600,000.00 plus interest

is owed to Hospital;

32. Thirty-nine days later on August 3, 2010, Steptoe, through its employee or member,

Exhibit 6

Donald J Epperly, signed a Proof of Claim on behalf of Hospital in the amount of $223,703.63 which at the bottom of said Proof of Claim says "*Penalty for presenting fraudulent claim*: Fine of up to $500,000.00 or imprisonment for up to 5 years, or both."

33.  When asked at the Meeting of Creditors on August 4, 2010 whether any additional sum of monies were due and owing to Stonewall, the said Donald J Epperly indicated that he was unaware that any other funds were due;

34.  The aforementioned statement appears on the tape made of the creditor's meeting for Plaintiff as well as the statement that Steptoe on behalf of Hospital intends to make a motion to convert Plaintiff's Chapter 7 Case to one under Chapter 13 or Chapter 11;

35.  The claim filed by defendant does not conform to the evidence as set forth in the Complaint and Exhibits and, as such, is false;

36.  The incentive for filing a false claim would be that a claim in the amount of $223,703.63 would make Plaintiff's debts primarily consumer debts making him subject to means testing and other provisions of 11 U.S.C. § 707(b) and in addition such sum would put the debtor within the jurisdictional limits of Chapter 13 for unsecured debt set forth in 11 U.S.C. § 109(e);

37.  The above fact plus the fact that Steptoe has announced that it will be bringing an action to convert this case to Chapter 13 or Chapter 11, but especially Chapter 13, leads to the conclusion that not only is the claim false, but it is fraudulent and a fraud not only upon Plaintiff but a fraud upon the Court.

38.  As a result of the Defendants' conduct described above, Plaintiff is entitled to compensation and is entitled to an award of attorney's fees;

39.  As a result of Debtor's conduct, the Court is entitled to impose sanctions upon

Exhibit 6

Defendants to punish them for their misconduct, to deter other creditors from filing false or fraudulent Proofs of Claims, and to restore the dignity of the Court.

WHEREFORE Plaintiff prays:

1. That the Court declare the Proof of Claim to be false and if it believes sufficient evidence warrants, that the Proof of Claim is fraudulent;

2. That the Court find the Defendants in contempt for their filing of a false or fraudulent Proof of Claim;

3. That the Court impose sanctions upon the Defendants which Plaintiff suggests should be disallowing the claim of Defendant, Stonewall Jackson Memorial Hospital Company, and forbidding it to file a new claim, determining whether any fees collected by Defendant, Steptoe & Johnson should be disgorged and paid over to the Chapter 7 Trustee or the Court, plus impositions of fines, rebuke or reprimand;

4. That plaintiff be awarded his attorney's fees for bringing this proceeding; and

5. That the Court grant such other relief as the Court deems appropriate.


/s/Michael G. Clagett
Michael G Clagett #726
Clagett Law Office
220 Grande Meadows
Bridgeport, WV 26330
304-592-0202 (tel)
304-592-2236 (fax)
Counsel for Plaintiff

Exhibit 6

Case 17-04076   Doc 8   Filed 07/24/17   Entered 07/24/17 16:10:07   Desc Main
Document   Page 77 of 89
No. 1:10-ap-00109   Doc 1   Filed 08/10/10   Entered 08/10/10 14:10:00   Page 8 of 19

*Ex 1*

# BENNETT & DOBBINS PLLC

## Certified Public Accountants

317 Cleveland Avenue
Fairmont, WV 26554
Telephone (304) 366-4295
Fax (304) 366-4311

**FAX TO:**   MICHAEL CLAGETT

_____

**FROM**   GARY K BENNETT CPA

_____

**DATE:**   8/6/10

**# OF PAGES INCLUDING THIS PAGE**   4

**SPECIAL INSTRUCTIONS:**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*OUR FAX NUMBER IS 304-366-4311\*\*\*\*\*\*\*\*\*\*\*\*

IRS CIRCULAR 230 NOTICE: IRS Circular 230 regulates written communications about federal tax matters between tax advisors and their clients. To the extent the preceding correspondence and/or any attachment is a written tax advice communication, it is not a full "covered opinion". Accordingly, this advice is not intended and cannot be used for the purpose of avoiding penalties that may be imposed by the IRS regarding the transaction or matters discussed herein. In addition, the materials communicated herein are intended solely for the addressee and are not intended for distribution to any other person or entity, or to support the promotion or marketing of the transaction or matters addressed herein. Any subsequent reader should seek advice from an independent tax advisor with respect to the transaction or matters addressed herein based on the reader's particular circumstances.

This message contains information that may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy, print, or disclose to anyone the fax or any information contained in this fax. If you have received this fax in error, please advise the sender by reply and dispose of the fax.

*Bennett & Dobbins PLLC*

Exhibit 6

**Stonewall Jackson Memorial Hospital**
**Dr. Watson Loan Calculation**
**10/1/07 - 9/30/08**

| Date | Subsidy Amount | Total Interest | No. of Days | Interest Rate | Total Forgiven |
|---|---|---|---|---|---|
| Balance @ 9/30/07 | 576,170.59 | 120,192.14 | | | |
| QE 12/31/07 | | 14,764.37 | 90 | 10.25% | |
| QE 3/31/08 | | 14,764.37 | 90 | 10.25% | |
| Pension Contribution | (1,241.10) | (258.99) | | | (1,500.00) |
| Balance 3/31/08 | 574,929.49 | 149,461.98 | | | |
| QE 6/30/08 | | 14,732.57 | 90 | 10.25% | |
| Pension Contribution | (1,190.57) | (309.43) | | | (1,500.00) |
| Balance 6/30/08 | 573,738.92 | 163,885.12 | | | |
| 7/1/08 thru 7/12/08 | | 1,960.27 | 12 | 10.25% | |
| 7/13/08 thru 9/30/08 | | 8,701.71 | 78 | 7.00% | |
| Pension Contribution | (1,165.78) | (333.22) | | | (1,500.00) |
| Salary | (23,335.40) | (6,664.80) | | | (30,000.00) |
| Balance 9/30/08 (before forgiveness) | 572,672.14 | 174,213.88 | | | |
| 25% forgiven | (143,143.04) | (43,553.47) | | | (186,696.50) |
| Balance 9/30/08 | 429,429.11 | 130,660.41 | | | |
| QE 12/31/08 | | 7,515.01 | 90 | 7.00% | |
| Pension Contribution | (1,150.07) | (349.93) | | | (1,500.00) |
| Balance 12/31/08 | 428,279.04 | 137,825.49 | | | |
| **TOTAL AMOUNT DUE** **12/31/08** | **566,104.52** | | | | |

Received Time Aug. 6. 3:37PM

Exhibit 6

Stonewall Jackson Memorial Hospital
Dr. Watson Loan Calculation
Thru 9/30/07

| Date | Subsidy Amount | Total Interest | 7/13/04 thru 7/12/06 | | | 7/13/05 thru 7/12/06 | | | 7/13/06 thru 7/12/07 | | | 7/13/07 thru 9/30/07 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | No. of Days | Interest Rate | Interest thru 7/12/2005 | No. of Days | Interest Rate | Interest for YE 7/12/2006 | No. of Days | Interest Rate | Interest for YE 7/12/2007 | No. of Days | Interest Rate | Interest for 7/13/07 thru 9/30/07 |
| 7/12/2004 | 10,000.00 | 2,897.08 | 360 | 6.25% | 625.00 | 360 | 8.25% | 825.00 | 360 | 10.25% | 1,025.00 | 78 | 10.25% | 222.08 |
| 9/3/2004 | 10,000.00 | 2,608.54 | 309 | 6.25% | 536.46 | 360 | 8.25% | 825.00 | 360 | 10.25% | 1,025.00 | 78 | 10.25% | 222.08 |
| 9/15/2004 | 6,315.00 | 1,634.14 | 297 | 6.25% | 325.52 | 360 | 8.25% | 520.99 | 360 | 10.25% | 647.29 | 78 | 10.25% | 140.25 |
| 9/15/2004 | 20,000.00 | 5,175.42 | 297 | 6.25% | 1,031.25 | 360 | 8.25% | 1,650.00 | 360 | 10.25% | 2,050.00 | 78 | 10.25% | 444.17 |
| 10/15/2004 | 35,621.32 | 9,032.23 | 267 | 6.25% | 1,651.20 | 360 | 8.25% | 2,938.76 | 360 | 10.25% | 3,651.19 | 78 | 10.25% | 791.09 |
| 11/9/2004 | 34,430.96 | 8,586.94 | 243 | 6.25% | 1,452.55 | 360 | 8.25% | 2,840.55 | 360 | 10.25% | 3,529.17 | 78 | 10.25% | 784.65 |
| 12/9/2004 | 65,719.78 | 16,047.95 | 213 | 6.25% | 2,430.26 | 380 | 8.25% | 5,431.88 | 380 | 10.25% | 6,735.28 | 78 | 10.25% | 1,459.53 |
| 1/13/2005 | 23,915.07 | 5,698.80 | 179 | 6.25% | 743.19 | 380 | 8.25% | 1,972.99 | 380 | 10.25% | 2,451.29 | 78 | 10.25% | 531.11 |
| 1/19/2005 | 11,452.59 | 2,726.54 | 173 | 6.25% | 345.18 | 380 | 8.25% | 948.14 | 380 | 10.25% | 1,177.99 | 78 | 10.25% | 265.23 |
| 2/14/2005 | 18,694.02 | 4,353.63 | 148 | 6.25% | 490.33 | 380 | 8.25% | 1,542.26 | 380 | 10.25% | 1,916.14 | 78 | 10.25% | 415.15 |
| 3/10/2005 | 15,468.35 | 3,592.80 | 122 | 6.25% | 327.63 | 380 | 8.25% | 1,278.14 | 380 | 10.25% | 1,585.51 | 78 | 10.25% | 343.53 |
| 4/13/2005 | 26,200.50 | 5,833.80 | 89 | 6.25% | 404.83 | 360 | 8.25% | 2,161.54 | 360 | 10.25% | 2,685.55 | 78 | 10.25% | 581.97 |
| 5/9/2005 | 20,570.13 | 4,487.29 | 63 | 6.25% | 224.89 | 380 | 8.25% | 1,697.04 | 360 | 10.25% | 2,108.44 | 78 | 10.25% | 456.83 |
| 6/9/2005 | 19,456.48 | 4,143.01 | 33 | 6.25% | 111.47 | 380 | 8.25% | 1,605.16 | 380 | 10.25% | 1,994.29 | 78 | 10.25% | 432.10 |
| 7/11/2005 | 20,934.55 | 4,341.45 | 1 | 6.25% | 3.63 | 360 | 8.25% | 1,727.10 | 360 | 10.25% | 2,145.73 | 78 | 10.25% | 464.92 |
| 8/9/2005 | 28,328.95 | 5,250.43 | | | | 328 | 8.25% | 1,966.39 | 360 | 10.25% | 2,699.72 | 78 | 10.25% | 584.72 |
| 8/23/2005 | 13,838.00 | 2,737.33 | | | | 319 | 8.25% | 1,011.62 | 360 | 10.25% | 1,418.40 | 78 | 10.25% | 307.32 |
| 9/14/2005 | 35,390.61 | 6,830.39 | | | | 293 | 8.25% | 2,416.88 | 360 | 10.25% | 3,627.54 | 78 | 10.25% | 785.97 |
| 10/17/2005 | 32,884.52 | 6,080.94 | | | | 265 | 8.25% | 1,984.90 | 380 | 10.25% | 3,350.18 | 78 | 10.25% | 725.87 |
| 11/15/2005 | 28,588.11 | 5,117.57 | | | | 237 | 8.25% | 1,552.69 | 380 | 10.25% | 2,930.28 | 78 | 10.25% | 634.89 |
| 12/13/2005 | 17,198.04 | 2,958.45 | | | | 209 | 8.25% | 823.71 | 380 | 10.25% | 1,762.80 | 78 | 10.25% | 381.94 |
| 1/11/2006 | 27,805.34 | 4,597.66 | | | | 181 | 8.25% | 1,146.05 | 380 | 10.25% | 2,828.55 | 78 | 10.25% | 613.07 |
| 2/13/2006 | 25,575.84 | 4,062.83 | | | | 149 | 8.25% | 873.31 | 360 | 10.25% | 2,621.52 | 78 | 10.25% | 568.00 |
| 3/14/2006 | 25,631.08 | 3,889.52 | | | | 118 | 8.25% | 693.11 | 360 | 10.25% | 2,627.19 | 78 | 10.25% | 569.22 |
| 4/12/2006 | 5,989.16 | 867.52 | | | | 90 | 8.25% | 123.11 | 360 | 10.25% | 611.84 | 78 | 10.25% | 132.57 |
| 5/8/2006 | 19,058.01 | 2,651.84 | | | | 63 | 8.25% | 275.15 | 360 | 10.25% | 1,953.45 | 78 | 10.25% | 423.25 |
| 5/9/2006 | 3,313.81 | 438.29 | | | | 33 | 8.25% | 25.06 | 360 | 10.25% | 339.65 | 78 | 10.25% | 73.59 |
| **Balance @ 9/3/07** | 800,000.00 | 128,362.73 | | | 10,663.50 | | | 40,844.13 | | | 61,500.00 | | | 13,325.00 |
| Forgiven 9/3/07 | (23,829.41) | (6,170.59) Salary | | | | | | | | | | | | |
| **Balance @ 9/3/07** | 576,170.59 | 120,192.14 | | | | | | | | | | | | |

Exhibit 6

| 22222 | Void ☐ | a Employee's social security number | For Official Use Only OMB No. 1545-0008 | | |
|---|---|---|---|---|---|
| b Employer Identification number | | | 1 Wages, tips, other compensation 342713.34 | 2 Federal income tax withheld 19936.54 | |
| c Employer's name, address, and ZIP code STONEWALL JACKSON MEM HOSPITAL 230 HOSPITAL PLAZA WESTON          WV 26452 | | | 3 Social security wages 102000.00 | 4 Social security tax withheld 6324.00 | |
| | | | 5 Medicare wages and tips 342713.34 | 6 Medicare tax withheld 4969.29 | |
| | | | 7 Social security tips | 8 Allocated tips | |
| d Control number 333 | | | 9 Advance EIC payment | 10 Dependent care benefits | |
| e Employee's first name and initial   Last name DAVID      A      WATSON PO BOX 844 FAIRMONT      WV 26555 | | | 11 Nonqualified plans | 12a See instructions for box 12 C      16.74 | |
| | | | 13 Statutory employee  Retirement plan  Third-party sick pay | 12b | |
| | | | 14 Other | 12c | |
| | | | | 12d | |
| f Employee's address and ZIP code | | | | | |
| 15 State   Employer's state ID number WV   S50422958001 | 16 State wages, tips, etc. 342713.34 | 17 State income tax 6994.00 | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form **W-2** Wage and Tax Statement
Copy B To Be Filed With Employee's FEDERAL tax return
**2008**
0000/1241
Department of the Treasury-Internal Revenue Service

| 22222 | Void ☐ | a Employee's social security number | For Official Use Only OMB No. 1545-0008 | | |
|---|---|---|---|---|---|
| b Employer Identification number | | | 1 Wages, tips, other compensation 342713.34 | 2 Federal income tax withheld 19936.54 | |
| c Employer's name, address, and ZIP code STONEWALL JACKSON MEM HOSPITAL 230 HOSPITAL PLAZA WESTON          WV 26452 | | | 3 Social security wages 102000.00 | 4 Social security tax withheld 6324.00 | |
| | | | 5 Medicare wages and tips 342713.34 | 6 Medicare tax withheld 4969.29 | |
| | | | 7 Social security tips | 8 Allocated tips | |
| d Control number 333 | | | 9 Advance EIC payment | 10 Dependent care benefits | |
| e Employee's first name and initial   Last name DAVID      A      WATSON PO BOX 844 FAIRMONT      WV 26555 | | | 11 Nonqualified plans | 12a See instructions for box 12 C      16.74 | |
| | | | 13 Statutory employee  Retirement plan  Third-party sick pay | 12b | |
| | | | 14 Other | 12c | |
| | | | | 12d | |
| f Employee's address and ZIP code | | | | | |
| 15 State   Employer's state ID number WV | 16 State wages, tips, etc. 342713.34 | 17 State income tax 6994.00 | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form **W-2** Wage and Tax Statement
Copy C for EMPLOYEE'S RECORDS
**2008**
0000/1241
Department of the Treasury-Internal Revenue Service

Exhibit 6

# SJMH
# STONEWALL JACKSON
*memorial hospital*

April 30, 2009

**PERSONAL & CONFIDENTIAL**
**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

David A. Watson, M.D.
Post Office Box 844
1645 Goose Run Road
Fairmont, WV 26555

Re:   Notice of Termination of Employment

Dear Dr. Watson:

This notice is to inform you that Stonewall Jackson Memorial Hospital Company ("SJMH") is terminating your Employment Agreement dated October 27, 2006, without cause. Subject to normal scheduling, your final day of employment will be August 5, 2009. In accordance with the terms and conditions of the Employment Agreement, this notice is being sent to you at least 90 days prior to the termination date.

In addition to the Employment Agreement, you entered into an Income Guarantee Agreement, Promissory Note and Security Agreement (together with the addenda thereto, the "Recruitment Documents") with SJMH. As you are aware, as part of your recruitment to address a need in the community, SJMH loaned funds to you under the Recruitment Documents, and a significant portion of that loan obligation remains outstanding. The Employment Agreement provides that in the event of its termination, SJMH has the right to enforce your performance under the Recruitment Documents, unless all amounts, including, without limitation, principal and interest under the Promissory Note, shall have been fully paid to SJMH, or forgiven as provided in the Employment Agreement and Recruitment Documents, as applicable. Accordingly, SJMH expects you, upon termination of the Employment Agreement, to fully perform under the Recruitment Documents.

Sincerely,

David D. Shaffer
CEO

DDS/jag

Exhibit 6



STEPTOE & JOHNSON
PLLC
ATTORNEYS AT LAW

Clarksburg, WV 26302-2190
(304) 624-8000    (304) 624-8183 Fax
www.steptoe-johnson.com

Writer's Contact Information

(304) 624-8152
Walter.Williams@steptoe-johnson.com
Page 13 of 19

May 20, 2009

<u>VIA TELECOPY AND REGULAR MAIL</u>
Drew M. Capuder, Esquire
Capuder Fantasia PLLC
1543 Fairmont Avenue, Suite 207
Fairmont, WV 26554-2100

       Re:   Dr. David Watson

Dear Drew:

     As a follow up to my letter of May 15, 2009, enclosed are the calculations of Stonewall showing the amounts advanced, interest, amounts forgiven and amounts outstanding as of and through March 31, 2009, in connection with Dr. Watson's recruitment and employment agreements. As indicated in my May 15 letter, any prorated forgiveness for the period beginning October 1, 2008, through September 20, 2009, would have to be conditioned on, among the other items set out in my May 15 letter, Dr. Watson generating sufficient collections from his personally performed services to cover the defined practice expenses from October 1, 2008, through the end of his employment. Thank you for your attention to this matter.

              Very truly yours,

              Walter L. Williams

WLW/jmg
Enclosure
cc w/o enc.:   David D. Shaffer, Chief Executive Officer

5152115

Clarksburg, WV • Charleston, WV • Morgantown, WV • Martinsburg, WV • Wheeling, WV
Huntington, WV • Columbus, OH



Exhibit 6

**Stonewall Jackson Memorial Hospital**
**Dr. Watson Loan Calculation**
**Thru 9/30/07**

| Date | Subsidy Amount | Total Interest | 7/13/04 thru 7/12/05 | | | 7/13/05 thru 7/12/06 | | | 7/13/06 thru 7/12/07 | | | 7/13/07 thru 9/30/07 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | No. of Days | Interest Rate | Interest thru 7/12/2005 | No. of Days | Interest Rate | Interest for YE 7/12/2006 | No. of Days | Interest Rate | Interest for YE 7/12/2007 | No. of Days | Interest Rate | Interest for 7/12/07 thru 9/30/07 |
| 7/12/2004 | 10,000.00 | 2,697.08 | 360 | 6.25% | 625.00 | 360 | 8.25% | 825.00 | 360 | 10.25% | 1,025.00 | 78 | 10.25% | 222.08 |
| 9/3/2004 | 10,000.00 | 2,608.54 | 309 | 6.25% | 536.46 | 360 | 8.25% | 825.00 | 360 | 10.25% | 1,025.00 | 78 | 10.25% | 222.08 |
| 9/15/2004 | 6,315.00 | 1,834.14 | 297 | 6.25% | 325.62 | 360 | 8.25% | 520.99 | 360 | 10.25% | 647.29 | 78 | 10.25% | 140.25 |
| 9/15/2004 | 20,000.00 | 5,175.42 | 297 | 6.25% | 1,031.25 | 360 | 8.25% | 1,650.00 | 360 | 10.25% | 2,050.00 | 78 | 10.25% | 444.17 |
| 10/15/2004 | 35,621.32 | 9,032.23 | 267 | 6.25% | 1,651.20 | 360 | 8.25% | 2,938.75 | 360 | 10.25% | 3,651.19 | 78 | 10.25% | 791.09 |
| 11/9/2004 | 34,430.95 | 8,586.94 | 243 | 6.25% | 1,452.56 | 360 | 8.25% | 2,840.55 | 360 | 10.25% | 3,529.17 | 78 | 10.25% | 764.65 |
| 12/9/2004 | 65,719.78 | 16,047.95 | 213 | 6.25% | 2,430.26 | 360 | 8.25% | 5,421.88 | 360 | 10.25% | 6,738.28 | 78 | 10.25% | 1,459.53 |
| 1/13/2005 | 23,915.07 | 5,698.60 | 179 | 6.25% | 743.19 | 360 | 8.25% | 1,972.99 | 360 | 10.25% | 2,451.29 | 78 | 10.25% | 531.11 |
| 1/19/2005 | 11,492.59 | 2,726.54 | 173 | 6.25% | 345.18 | 360 | 8.25% | 948.14 | 360 | 10.25% | 1,177.99 | 78 | 10.25% | 255.23 |
| 2/14/2005 | 18,694.02 | 4,353.89 | 148 | 6.25% | 480.33 | 360 | 8.25% | 1,542.26 | 360 | 10.25% | 1,916.14 | 78 | 10.25% | 415.16 |
| 3/10/2005 | 25,460.36 | 3,532.80 | 122 | 6.25% | 327.63 | 360 | 8.25% | 1,276.14 | 360 | 10.25% | 1,585.51 | 78 | 10.25% | 343.53 |
| 4/13/2005 | 35,466.56 | 5,833.80 | 89 | 6.25% | 404.83 | 360 | 8.25% | 2,161.54 | 360 | 10.25% | 2,685.55 | 78 | 10.25% | 581.87 |
| 5/9/2005 | 20,570.13 | 4,487.29 | 63 | 6.25% | 224.99 | 360 | 8.25% | 1,697.04 | 360 | 10.25% | 2,108.44 | 78 | 10.25% | 456.83 |
| 6/9/2005 | 19,456.46 | 4,143.29 | 33 | 6.25% | 111.47 | 360 | 8.25% | 1,605.16 | 360 | 10.25% | 1,994.29 | 78 | 10.25% | 432.10 |
| 7/11/2005 | 20,934.55 | 4,341.45 | 1 | 6.25% | 3.63 | 360 | 8.25% | 1,966.99 | 360 | 10.25% | 2,145.79 | 78 | 10.25% | 464.92 |
| 8/16/2005 | 26,328.95 | 5,250.43 | | | | 325 | 8.25% | 1,727.10 | 360 | 10.25% | 2,698.72 | 78 | 10.25% | 584.72 |
| 8/29/2005 | 13,838.00 | 2,737.33 | | | | 298 | 8.25% | 1,011.62 | 360 | 10.25% | 1,418.40 | 78 | 10.25% | 307.32 |
| 9/14/2005 | 35,390.61 | 6,830.39 | | | | 319 | 8.25% | 2,416.88 | 360 | 10.25% | 3,627.54 | 78 | 10.25% | 785.97 |
| 10/17/2005 | 32,684.52 | 6,060.94 | | | | 265 | 8.25% | 1,552.89 | 360 | 10.25% | 3,350.16 | 78 | 10.25% | 725.87 |
| 11/15/2005 | 28,588.11 | 5,117.87 | | | | 237 | 8.25% | 1,532.69 | 360 | 10.25% | 2,930.28 | 78 | 10.25% | 634.89 |
| 12/13/2005 | 17,198.04 | 2,968.45 | | | | 209 | 8.25% | 823.71 | 360 | 10.25% | 1,762.80 | 78 | 10.25% | 381.94 |
| 1/11/2006 | 27,605.34 | 4,507.66 | | | | 181 | 8.25% | 1,145.05 | 360 | 10.25% | 2,829.55 | 78 | 10.25% | 613.07 |
| 2/13/2006 | 25,575.84 | 4,062.83 | | | | 149 | 8.25% | 873.31 | 360 | 10.25% | 2,621.52 | 78 | 10.25% | 568.00 |
| 3/14/2006 | 25,631.06 | 3,889.52 | | | | 118 | 8.25% | 693.11 | 360 | 10.25% | 2,627.19 | 78 | 10.25% | 569.22 |
| 4/12/2006 | 5,969.16 | 867.52 | | | | 90 | 8.25% | 123.11 | 360 | 10.25% | 611.34 | 78 | 10.25% | 132.57 |
| 5/9/2006 | 19,058.01 | 2,651.84 | | | | 63 | 8.25% | 275.15 | 360 | 10.25% | 1,953.45 | 78 | 10.25% | 423.25 |
| 6/9/2006 | 3,313.61 | 438.29 | | | | 33 | 8.25% | 25.06 | 360 | 10.25% | 339.65 | 78 | 10.25% | 73.59 |
| | | | | | 10,693.60 | | | 40,844.13 | | | 61,500.00 | | | 13,325.00 |

| | Subsidy Amount | Total Interest | |
|---|---|---|---|
| Balance @ 9/30/07 | 600,000.00 | 126,362.73 | |
| Forgiven 9/30/07 | (23,829.41) | (6,170.59) | Salary |
| Balance @ 9/30/07 | 576,170.59 | 120,192.14 | |

**Exhibit 6**

**Stonewall Jackson Memorial Hospital**
**Dr. Watson Loan Calculation**
**10/1/07 - 3/31/09**

| Date | Subsidy Amount | Total Interest | No. of Days | Interest Rate | Total Forgiven |
|---|---|---|---|---|---|
| Balance @ 9/30/07 | 576,170.59 | 120,192.14 | | | |
| QE 12/31/07 | | 14,764.37 | 90 | 10.25% | |
| QE 3/31/08 | | 14,764.37 | 90 | 10.25% | |
| Pension Contribution | (1,241.10) | (258.90) | | | (1,500.00) |
| Balance 3/31/08 | 574,929.49 | 149,461.98 | | | |
| QE 6/30/08 | | 14,732.57 | 90 | 10.25% | |
| Pension Contribution | (1,190.57) | (309.43) | | | (1,500.00) |
| Balance 6/30/08 | 573,738.92 | 163,885.12 | | | |
| 7/1/08 thru 7/12/08 | | 1,960.27 | 12 | 10.25% | |
| 7/13/08 thru 9/30/08 | | 8,701.71 | 78 | 7.00% | |
| Pension Contribution | (1,166.78) | (333.22) | | | (1,500.00) |
| Salary | (23,335.40) | (6,664.60) | | | (30,000.00) |
| Balance 9/30/08 (before forgiveness) | 572,572.14 | 174,213.88 | | | |
| 25% forgiven | (143,143.04) | (43,553.47) | | | (186,696.50) |
| Balance 9/30/08 | 429,429.11 | 130,660.41 | | | |
| QE 12/31/08 | | 7,515.01 | 90 | 7.00% | |
| Pension Contribution | (1,150.07) | (349.93) | | | (1,500.00) |
| Balance 12/31/08 | 428,279.04 | 137,825.49 | | | |
| QE 3/31/09 | | 7,494.88 | 90 | 7.00% | |
| Pension Contribution | (1,134.81) | (365.19) | | | (1,500.00) |
| Balance 3/31/09 | 427,144.23 | 144,955.18 | | | |
| TOTAL AMOUNT DUE 3/31/09 | 572,099.41 | | | | |

Exhibit 6



Clarksburg, WV 26302-2190

(304) 624-8000   (304) 624-8183 Fax (304) 624-8152

www.steptoe-johnson.com

*EX 4*

Writer's Contact Information

Walter.Williams@steptoe-johnson.com

April 6, 2010

(E-MAIL and REGULAR MAIL)
Drew M. Capuder, Esquire
Capuder Fantasia PLLC
1543 Fairmont Avenue, Suite 207
Fairmont, WV 26554

Re:  Dr. Watson

Dear Drew:

As a follow up to our meeting on March 26th, this letter will outline some general terms of a settlement proposal to resolve the various contract and related issues between Stonewall Jackson Memorial Hospital Company and Dr. Watson.  Stonewall is willing to accept, in full satisfaction of its contract claims, two (2) years of the principal ($320,358.17), plus the accrued interest allocable thereto at the contract rate, and continuing until payment.  If requested by Dr. Watson, the agreed figure could be paid in monthly installments of principal and interest, payable over a period not to exceed five (5) years pursuant to a negotiable promissory note with interest at the same contract rate and with security to be agreed upon.  This settlement proposal further includes and is subject to the following general conditions:

1.      The execution of acceptable settlement documents addressing the matters set forth herein and with other appropriate terms and provisions, including a mutual release of all claims arising out of or relating to the employment agreement, Dr. Watson's employment and separation therefrom, and the income guarantee and related agreements (expressly exclusive of rights of the parties with respect to any malpractice claims that might be asserted);

2.      Dr. Watson continuing to practice in the geographic area served by Stonewall for the balance of the term of the income guarantee and generally consistent therewith; and

3.      Approval of any settlement by the Board of Stonewall.



Exhibit 6

Drew M. Capuder, Esquire
No. 116, 2010
Document    Page 86 of 89
NaptiL0,-20f00109    Doc 1    Filed 08/10/10    Entered 08/10/10 14:10:00    Page 17 of 19
Page 2

Obviously, the details need to be worked out in acceptable agreements to create any binding obligation, but we hope this is at least a framework in moving forward. Thank you for your attention to this matter.

Very truly yours,

Walter L. Williams

WLW/jmg
cc:    Mr. David D. Shaffer, CEO
       Ms. Debbie Corder, Risk Manager
       Ms. Avah Stalnaker, Associate Administrator

Exhibit 6



Writer's Contact Information

Clarksburg, WV 26302-2190

(304) 624-8000    (304) 624-8183 Fax

www.steptoe-johnson.com

Walter.Williams@steptoe-johnson.com

June 2, 2010

Drew M. Capuder, Esquire
Capuder Fantasia PLLC
1543 Fairmont Avenue, Suite 207
Fairmont, WV 26554

Re: Dr. Watson

Dear Drew:

This will acknowledge receipt of your letter dated May 28, 2010. Dr. Watson's proposed settlement offer increasing the amount he is willing to repay Stonewall by $2,000 and providing an additional year to pay is unacceptable and rejected.

As I indicated before, we need to move this matter to conclusion, and, given Dr. Watson's rejection of arbitration and the Hospital's April 6, 2010, settlement proposal (in essence, repayment by Dr. Watson of $320,358.17, plus allocable interest at the contract rate continuing until payment), and Dr. Watson's latest proposal, it appears that the parties are too far apart to justify continuing voluntary settlement discussions between the parties. Accordingly, the Hospital proposes submitting this matter to mediation. If, however, mediation is not accepted within ten (10) days from the date of the letter, including the establishment of a structure and prompt time frame acceptable to Stonewall, the Hospital will formally terminate the income guarantee agreement under Section 7B(ix) and other applicable provisions, which will result in a claim of "all supplements and other amounts" paid under the income guarantee, plus interest, and will proceed with a demand for payment and enforcement.

We look forward to your response.

Very truly yours,

Walter L. Williams

WLW/jmg
cc: Mr. David D. Shaffer, CEO

P.S. I reviewed two opinions in the Benson case you cited, and they support Stonewall's case in that the court will enforce the plain terms of an agreement even if it produces a harsh result.

5406612

Clarksburg, WV • Charleston, WV • Morgantown, WV • Martinsburg, WV • Wheeling, WV
Huntington, WV • Columbus, OH



Exhibit 6

**STEPTOE & JOHNSON** PLLC
ATTORNEYS AT LAW

Chase Tower, Sixth Floor
P.O. Box 2190
Clarksburg, WV 26302-2190

(304) 624-8000   (304) 624-8183 Fax

www.steptoe-johnson.com

Writer's Contact Information
(304) 624-8184
susan.deniker@steptoe-johnson.com

June 25, 2010

*Via Certified Mail – Return Receipt Requested*
Drew M. Capuder, Esquire
Capuder Fantasia PLLC
1543 Fairmont Avenue, Suite 207
Fairmont, WV 26554

Re:   **Dr. David Watson**

Dear Drew:

On behalf of Stonewall Jackson Memorial Hospital Company (the "Hospital"), I am providing notice to Dr. Watson through this letter that the Hospital hereby terminates the Income Guarantee Agreement between the Hospital and David Watson, M.D. dated June 10, 2004, as well as the Addendum to Income Guarantee Agreement dated October 14, 2004 (hereinafter collectively referred to as the "Agreement"). In particular, the Hospital is exercising its rights under Paragraph 7.B.(ix) for immediate termination of the Agreement on the basis that Dr. Watson has failed to meet his obligation to practice medicine in Lewis County, West Virginia during the required term of, and otherwise in accordance with, the Agreement.

Further, the Hospital hereby demands immediate payment of the amount due under the Agreement and Promissory Note executed by Dr. Watson on June 10, 2004 (and the Addendum to the Promissory Note dated October 14, 2004), together with interest as provided in the Agreement and the Promissory Note. As of the date of this letter, Dr. Watson owes the Hospital $600,000.00, plus interest at the rate set forth in Paragraph 1.E of the Agreement and the Promissory Note.

If you do not represent Dr. Watson with regard to this matter and cannot accept this notice on his behalf, please advise immediately so that I can forward this notice to Dr. Watson directly.

Thank you for your attention to this matter.

Very truly yours,

*Susan L. Deniker*

Susan L. Deniker

SLD/eyw

cc:   David D. Shaffer

5420704

West Virginia  •  Ohio  •  Kentucky

Exhibit 6

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re | Bky No. 15-42460 |
| Paul Hansmeier, | Chapter 7 |
| *Debtor.* | |
| ------------------------------------------------------- | |
| Paul Hansmeier, | |
| *Plaintiff.* | ADV No. 17-4076 |
| v. | |
| Dan Booth; Paul Godfread; and Jason Sweet, | |
| *Defendants.* | |

### UNSWORN CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2017, I caused the following documents:

*Reply Brief, Second Declaration of Paul Hansmeier and attached exhibits*

To be served on the following via First Class U.S. Mail, postage prepaid.


Paul Godfread
6043 Hudson Road, Suite 305
Woodbury, MN 55125

Jason Sweet                          Dan Booth
32 Essex Street                      32 Essex Street
Studio 1A                            Studio 1A
Cambridge, MA 02139                  Cambridge, MN 02139